UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VALVETECH, INC.,

                                Plaintiff,

v.

AEROJET ROCKETDYNE, INC.,

                                Defendant.

Case # 17-CV-6788-FPG

DECISION AND ORDER

## INTRODUCTION

Beginning in 2013, Defendant Aerojet Rocketdyne, Inc., entered into a series of agreements with Plaintiff ValveTech, Inc., under which ValveTech would provide particular valves for thrusters Aerojet was designing for a spacecraft. *See* ECF No. 1-3 ¶ 4. After the business relationship soured, ValveTech demanded the return of its proprietary information regarding the design and development of the valves. *Id.* ¶¶ 13-16. When Aerojet seemingly refused and began to develop the valves internally, ValveTech sued Aerojet in New York State Supreme Court. *See* ECF No. 1-3. The Complaint contained seven claims, all centering around the alleged misuse of ValveTech's proprietary information: (1) breach of contract, (2) unjust enrichment, (3) trade secret misappropriation, (4) unfair competition, (5) conversion, (6) replevin, and (7) a requested accounting. *See id.* Aerojet removed the case to this Court, *see* ECF No. 1, and moved to dismiss all of ValveTech's claims. *See* ECF Nos. 20-21. ValveTech does not oppose Aerojet's motion as to the fifth and seventh claims, ECF No. 23 at 5 n.1, so the Court considers Aerojet's motion as to the remaining five claims and grants it in part.

## BACKGROUND

As explained above, ValveTech entered into a series of agreements with Aerojet beginning in 2013 in which ValveTech agreed it would develop valves for Aerojet. *See* ECF No. 1-3 ¶¶ 3-4. The development process entailed designing the valves, testing them, analyzing the test results, and manufacturing them, among other tasks. *See id.* ¶ 4.

As part of their business relationship, the parties also signed a series of non-disclosure agreements (NDAs) in which Aerojet agreed that all proprietary information ValveTech provided to Aerojet would remain ValveTech's property and would be returned to it or destroyed at its request. *Id.* ¶ 6. The purpose of the NDAs was to facilitate discussion between the parties regarding ValveTech's development process for the valves. *See id.* ¶ 5.

Under the purchase orders signed by both parties, ValveTech was to provide the valves to Aerojet, but ValveTech's proprietary information was not purchased by Aerojet. *See id.* ¶ 8-11. Moreover, Aerojet never purchased a license from ValveTech to use the proprietary information. *See id.* ¶ 16.

ValveTech eventually provided Aerojet with valves and related testing results. *See id.* ¶ 12. In response, however, Aerojet provided written notice to ValveTech on July 17, 2017, that it was terminating the business relationship and would begin to develop the requisite valves internally. *See id.* ¶ 13.

ValveTech thus requested that Aerojet return ValveTech's proprietary information. *See id.* ¶ 15. Aerojet refused, used ValveTech's proprietary information to begin development of its own valves internally, and shared the information with third parties. *See id.* ¶ 15-18. This lawsuit followed.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 678.

In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

When deciding a Rule 12(b)(6) motion, a court ordinarily may not rely on matters outside the complaint unless it treats the motion as one for summary judgment under Rule 56 and gives the parties a reasonable opportunity to present relevant evidence. Fed. R. Civ. P. 12(d). However, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation marks and citations omitted). With respect to documents that are deemed "integral" to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). To reiterate, "a plaintiff's reliance on the

terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

**DISCUSSION**

**I.     Choice of Law**

The Court must first determine whether to construe ValveTech's claims under California or New York law.[1] *See Eastern Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, No. 2:17-cv-01034 (ADS)(AYS), 2017 WL 4162309, at *3 (E.D.N.Y. Sept. 19, 2017). A federal court sitting in diversity, as the Court is here, must apply the choice-of-law rules of the state in which the court sits. *Licci ex rel. Licci v. Lebanese Canadian Bank*, *SAL*, 672 F.3d 155, 157 (2d Cir. 2012). Consequently, the Court will apply New York choice-of-law rules. *See id.*

First, if the parties agree that a given jurisdiction's law controls, even impliedly in a brief, that is "sufficient to establish choice of law." *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)). If there is no agreement, then the next step under New York's rules is to determine whether there is an actual conflict between the laws of the different jurisdictions. *See id.* (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006)). A conflict exists if the pertinent law contains different substantive rules, those rules are relevant to the germane issue, and "have a significant *possible* effect on the outcome of trial." *SourceOne Dental, Inc., v. Patterson Cos.*, 310 F. Supp. 3d 346,

---

[1] Aerojet points out that some district courts within the Second Circuit have concluded that a court must conduct a choice-of-law analysis before considering a motion to dismiss, while others have found it inappropriate to conduct the inquiry at the motion-to-dismiss stage. ECF No. 21 at 4-5 (citing *E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, No. 2:17-cv-01034 (ADS)(AYS), 2017 WL 4162309, at *3 (E.D.N.Y. Sept. 19, 2017) and *West v. eBay, Inc.*, No. 1:17-cv-285 (MAD/CFH), 2017 WL 5991749, at *3 (N.D.N.Y. Dec. 1, 2017)). In the interest of judicial economy, the Court decides to conduct the inquiry here.

366 (S.D.N.Y. 2018) (quoting *First Hill Partners, LLC v. BlueCrest Capital Mgmt. Ltd.*, 52 F. Supp. 3d 625, 632 (S.D.N.Y. 2014)) (emphasis in original). If no conflict exists, the court applies New York law. *Id.*

If there is a conflict, the court must next "conduct an 'interest analysis' and apply the law of the jurisdiction with the greatest interest in the litigation." *Id.* (citing *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)). The interest analysis takes a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Licci*, 672 F.3d at 157-58 (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005), *cert. denied*, 548 U.S. 904 (2006)) (quotation marks omitted).

Under New York law, the interest analysis is applied differently depending on whether the relevant rules are conduct-regulating or loss-allocating. *See id.* at 158. "Conduct-regulating rules are those that 'people use as a guide to governing their primary conduct,'" *id.* (quoting *K.T. v. Dash*, 827 N.Y.S.2d 112, 117 (1st Dep't 2006), while "[l]oss allocating rules . . . are laws that prohibit, assign, or limit liability after the tort occurs," *id.* (quoting *DeMasi v. Rogers*, 826 N.Y.S.2d 106, 108 (2d Dep't 2006) (alteration in quotation).

"If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.* (quoting *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006)) (quotation marks omitted).

Here, California law applies to all of ValveTech's claims except one. First, ValveTech consents to the application of California law, either directly or indirectly, for all of its claims except

its unfair competition and replevin claims. *See* ECF No. 23 at 7-11 (declining to argue that New York law applies to ValveTech's breach of contract claim); *id.* at 11-14 (applying California law and declining to argue that New York law applies to ValveTech's unjust enrichment claim); *id.* at 14 (acknowledging that California law applies to ValveTech's trade secret claim).

Second, California law applies to ValveTech's unfair competition claim because there is a conflict between the relevant law in California and New York, the relevant rules are conduct-regulating, and the tort occurred in California. In New York, a plaintiff must show that the defendant wrongfully diverted plaintiff's business to itself to allege unfair competition. *See CSI Grp., LLP v. Harper*, 61 N.Y.S.3d 592, 598 (2d Dep't 2017). In California, there are two sources of an unfair competition claim: common law and statute. Under the common law, a plaintiff alleges unfair competition when she shows that the defendant exploited her reputation in the market by passing off her goods as defendants' own. *Celebrity Chefs Tour, LLC v. Macy's Inc.*, 16 F. Supp. 3d 1123, 1138 (S.D. Cal. 2014) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997)); *see also Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1032 (C.D. Cal. 2011) ("The decisive test of common law unfair competition is whether the public is likely to be deceived about the source of goods or services by the defendant's conduct."). Under Cal. Bus. & Prof. § 17200, "a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising." *See Irigaray Dairy v. Dairy Emps. Union Local No. 17*, 153 F. Supp. 3d 1217, 1255-56 (E.D. Cal. 2015) (quoting *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003)).

The substantive rules of unfair competition in New York and California conflict, but only as to New York's common law and California's statutory claims. As mentioned, a plaintiff must show that a defendant wrongfully diverted plaintiff's business to itself in New York. The same is

true under California common law: a plaintiff pleads unfair competition when she shows that a defendant deceived consumers as to the *source* of the goods or services plaintiff provides.

The same cannot be said of California's statutory unfair competition claim, which is broader in scope. Section 17200 provides "three varieties of unfair competition—acts or practices which are unlawful, unfair, or fraudulent." *Lippitt*, 340 F.3d at 1043 (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999)). "Unlawful" practices are any forbidden by law, "unfair" means "any practice whose harm to the victim outweighs the benefits," and "fraudulent" means a practice that is likely to deceive the public. *Saunders v. Superior Court*, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994). Indeed, "the statutory definition of 'unfair competition' cannot be equated with the common law definition[.]" *Bank of the West v. Superior Court*, 833 P.2d 545, 551 (Cal. 1992).

Based on that precedent, the substantive rules of New York common law unfair competition and California statutory unfair competition conflict, they are obviously relevant to the germane issue—whether Aerojet violated either source of law—and have a significant, possible effect on the outcome of trial.

The next inquiry is whether California's statutory unfair competition law is conduct-regulating or loss-allocating. Based on the law's language, the Court finds that it is conduct-regulating. *But cf. Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994) (explaining that charitable immunity statutes, wrongful death statutes, and vicarious liability statutes are examples of loss-allocating laws). Specifically, the statute makes clear that it influences conduct to prevent injuries from occurring and not simply to allocate loss after the fact.

Therefore, since the alleged unfair competition occurred in California, *see* ECF No. 1-3 ¶¶ 40-45 (explaining that Aerojet, which is based in California, used ValveTech's proprietary

information to design and develop a valve internally), § 17200 applies to ValveTech's unfair competition claim.

As for replevin, New York contains a common-law cause of action, while California has a common-law cause of action and a statutory scheme in which an individual may apply for a writ. C*ompare Khoury v. Khoury*, 912 N.Y.S.2d 235, 237 (2d Dep't 2010) ("To state a cause of action for replevin, a plaintiff must allege that he or she owns specified property, or is lawfully entitled to possess it, and that the defendant has unlawfully withheld the property from the plaintiff[.]"), *with Ponvanit v. Superior Court of California*, No. CV 17-4054-FMO (JEM), 2018 WL 1135380, at *9-10 (C.D. Cal. Jan. 31, 2018) ("In California, a secured party wishing to repossess by judicial action, can bring an action in replevin *or* proceed under the statutory successor to replevin, an action of claim and delivery." (quoting *Simms v. NPCK Enters., Inc.*, 134 Cal. Rptr. 2d 557, 562 (Ct. App. 2003) (alteration and quotation marks omitted) (emphasis added)). New York and California common law and California statutory law contain similar requirements for a replevin claim: the plaintiff must be the lawful owner of personal property and the defendant must wrongfully possess it. *See Khoury*, 912 N.Y.S.2d at 237; *see also Stockton Morris Plan v. Mariposa Cty.*, 221 P.2d 232, 234 (Ct. App. 1950); Cal. Civ. Proc. § 512.010. Because there is no conflict, New York law applies.

## II. Aerojet's Motion Is Granted as to ValveTech's First Claim Since ValveTech Did Not Allege the Specific Provisions of the Contract that Aerojet Purportedly Breached

Under California law, a court "must ascertain the parties' intent" from the contract itself, if possible. *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116-17 (N.D. Cal. 2011) (quoting *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 (9th Cir. 1996)). Consequently, a plaintiff "must allege the specific provisions in the contract" that the defendant allegedly breached. *Id.* at 1117 (citing *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) (memorandum)).

Here, ValveTech has failed to allege what specific provisions of what contract Aerojet breached. Indeed, as Aerojet argues, it is unclear to the Court exactly what agreement Aerojet breached at all. ValveTech mentions, at various points in its Complaint, purchase orders and NDAs entered into by the parties. *See* ECF No. 1-3 ¶¶ 4, 5, 8-11, 12-14, 15, 17. None of these allegations, however, show what provisions of these agreements Aerojet breached. ValveTech does allege how Aerojet breached the terms of an NDA generally, but it does not explain how the NDA was breached with sufficient particularity. *See id.* ¶¶ 15-18. Accordingly, the claim must be dismissed.

### III. Aerojet's Motion Is Granted as to ValveTech's Second Claim Because Unjust Enrichment Is Not Cognizable Under California Law

ValveTech cites an unpublished decision from the Ninth Circuit stating that unjust enrichment is a standalone cause of action under California law despite prior case law that was uncertain and inconsistent as to that point. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (memorandum). That decision in turn cites a 2015 decision from the Supreme Court of California in which that court found that a standalone claim for unjust enrichment could proceed in an insurance dispute. *See Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 353 P.3d 319, 323-24 (Cal. 2015).

This Court declines to follow the Ninth Circuit's conclusion for two reasons. First, the Supreme Court of California specifically limited its holding in that case to the facts and procedural history at bar. *See id.* at 326 ("We emphasize that our conclusion hinges on the particular facts and procedural history of this litigation."); *see also Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2015 WL 5569161, at *1 (N.D. Cal. Sept. 21, 2015) ("The only aspect of the [*Hartford*] opinion that could be portrayed as a 'change' of law is narrowly confined to the question of the

unjust enrichment of insureds' counsel when counsel's fees are excessive and not incurred for the benefit of the insured.").

Second, intermediate appellate courts in California have not only avoided citation of *Hartford* for the principle that unjust enrichment is a standalone claim under California law, but have held the opposite. *See, e.g., De Havilland v. FX Networks, LLC*, 230 Cal. Rptr. 3d 625, 646 (Ct. App. 2018) ("Unjust enrichment is not a cause of action."); *Daniel v. Wayans*, 213 Cal. Rptr. 3d 865, 891-92 (Ct. App. 2017) (same); *Bank of N.Y. Mellon v. Citibank, N.A.*, 214 Cal. Rptr. 3d 504, 520 (Ct. App. 2017) (same). Some district court judges have followed suit post-*Bruton*. *See, e.g., Goldman v. Bayer AG*, No. 17-cv-0647-PJH, 2017 WL 3168525, at *8 (N.D. Cal. July 26, 2017) ("Not all courts are in accord, but the majority rule in California is that there is no standalone cause of action for 'unjust enrichment[.]'"); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2017 WL 3977385, at *5 (N.D. Cal. Sept. 11, 2017) ("California does not recognize an independent cause of action for unjust enrichment."). This Court will go along with the substantial precedent finding that no cause of action for unjust enrichment exists in California.

**IV.     Aerojet's Motion Is Granted as to ValveTech's Third Claim Since ValveTech Failed to Identify the Misappropriated Trade Secrets with Sufficient Particularity**

As a preliminary matter, the Court will not consider any documents associated with the temporary restraining order[2] sought by ValveTech in this case in determining how to rule on Aerojet's motion. None of the documents mentioned by Aerojet and ValveTech in their briefs are attached to the Complaint, incorporated by reference in it, or integral to it. Indeed, ValveTech

---

[2] ValveTech moved for and was granted a temporary restraining order in state court. ECF No. 7-1 at 24-26. It then moved for another temporary restraining order before this Court after Aerojet removed the case. ECF No. 7. In support of both motions, ValveTech attached a number of exhibits, which included contracts and invoices at issue in this action. *See* ECF Nos. 1-6, 1-7, 7-1.

could not do so; it sought the temporary restraining order from this Court after it filed its Complaint.  *See* ECF Nos. 1-3, 1-5, 1-7.

In California, a claim for misappropriation of trade secrets is brought under statute.  *See* Civ. Proc. § 2019.210.  Under the statutory scheme, a plaintiff is required "to identify or designate the trade secrets at issue with 'sufficient particularity[.]'"  *See Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1111 (N.D. Cal. 2016).  There is no "bright-line rule governing the level of particularity required by § 2019.210."  *Id.*  Courts generally agree, however, that "a party alleging misappropriation need not define every minute detail of its claimed trade secret at the outset of the litigation, but nevertheless must make some showing that is reasonable, i.e., fair, proper, just and rational."  *Id.* at 1111-12 (quoting *Advanced Modular Sputtering, Inc. v. Superior Court*, 33 Cal. Rptr. 3d 901, 908 (Ct. App. 2005)).  The level of particularity also depends on the complexity and level of specialization of the trade secrets.  *See id.* at 1112.

Additionally, while neither is required, publicly identifying trade secrets—in other words, not identifying them under seal—is an indicator that the trade secrets are not identified with sufficient particularity, as is the failure to file declarations by expert witnesses "that attempt to distinguish the alleged trade secrets from information already known in the field."  *See Loop AI Labs*, 195 F. Supp. 3d at 1113.

Finally, listing categories of trade secrets in broad terms is insufficient to allege them with particularity as required by § 2019.210.  *Compare Loop AI Labs*, 195 F. Supp. 3d at 1114 (finding lists of categories of alleged trade secrets in broad terms insufficient), *with Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1044-45 (S.D. Cal. 2017) (holding the description of trade secrets was sufficiently particular where plaintiff explained "various attributes of its concept," including changes in design of particular parts of its product).

Here, ValveTech has failed to identify the trade secrets Aerojet allegedly misappropriated with sufficient particularity. Not only has ValveTech filed its description of the trade secrets publicly and declined to include a declaration by an expert witness distinguishing its trade secrets from others known in the field, but it describes them in the broad terms that the Court in *Loop AI Labs* found insufficient. *See* ECF No. 1-3 ¶ 30 ("ValveTech owns the rights to protectable trade secrets relating to its schematics, research and development information, sketches, prototypes, data, exemplars, designs, drawings, and other proprietary information developed by ValveTech in connection with its propellant isolation valve."). This Court agrees with the *Loop AI Labs* Court's assessment. It may appear to ValveTech that California law requires form over substance, but, in reality, it requires the substance of ValveTech's trade secrets so that the Court may analyze the remaining elements of ValveTech's claim and frame the scope of discovery, among other benefits. *See Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 171 Cal. Rptr. 714, 727-28 (Ct. App. 2014).

V. **Aerojet's Motion Is Granted as to ValveTech's Fourth Claim Because the California Uniform Trade Secrets Act (CUTSA) Preempts All Claims Based on the Same Facts as Trade Secret Misappropriation**

In its memorandum of law in opposition to Aerojet's Motion, ValveTech asserts that it has properly alleged both a common law and statutory claim for unfair competition under California law. *See* ECF No. 23 at 20. Of course, the claim is buoyed by the same facts as all of ValveTech's claims: by using and refusing to return or destroy ValveTech's proprietary information, Aerojet is injuring ValveTech. It is precisely because ValveTech's unfair competition claim is based on these facts that it must fail. CUTSA demands that a trade secret appropriation claim preempt all "claims—including [§] 17200 claims—based on the same nucleus of facts as trade secret misappropriation." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017); *see also* Cal. Civ. Code § 3426.7.

**VI.   Aerojet's Motion Is Denied as to ValveTech's Sixth Claim Because It Has Plausibly Alleged a Replevin Claim Under New York Law**

As explained above, a plaintiff adequately pleads a replevin claim under New York law where she alleges that the defendant wrongfully possesses personal property that she owns. *Khoury*, 912 N.Y.S.2d at 237. That is exactly what ValveTech has pleaded here: ValveTech owns its proprietary information, Aerojet wrongfully possess, and—what's more—Aerojet refused to return ValveTech's proprietary information to it upon request. Accordingly, this claim survives.

## CONCLUSION

For the foregoing reasons, Aerojet's Motion to Dismiss, ECF No. 20, is GRANTED IN PART AND DENIED IN PART. Claims one through four, five, and seven are DISMISSED; however, ValveTech's sixth claim—a replevin claim under New York law—survives. By separate order, the Court will refer this case to a United States Magistrate Judge for pretrial proceedings.

IT IS SO ORDERED.

Dated: September 28, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court