UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VALVETECH, INC.,

                                        Plaintiff,                    DECISION AND ORDER
                                                                      17-CV-6788-FPG-MJP
                      -vs-

AEROJET ROCKETDYNE, INC.,

                                        Defendant.

_____

**Pedersen, M.J.** Plaintiff ValveTech, Inc. ("Plaintiff") commenced an

action in 2017, in New York State Supreme Court against defendant, Aerojet

Rocketdyne, Inc. ("Defendant"), alleging various claims, the vast majority of

which have been dismissed. Defendant removed the case to federal court in

December 2017. (ECF[1] No. 1.) Presently before the Court are the following: (1)

Defendant's motion for a protective order (ECF No. 114); (2) Defendant's

motion to seal Exhibits G and H attached to the Declaration of Michael

Eisenberg in support of Defendant's motion for a protective order, and a short

excerpt of Defendant's memorandum of law in support of its motion for a

protective order, which refers to Exhibit H. (ECF No. 118; ECF No. 130)[2]; (3)

---

[1] "ECF" stands for Electronic Case Files, which is the Court's filing system. The system
assigns a document number to most filings. The Court will use the ECF number to refer to the
filed documents in the decision.

[2] Defendant initially sought to file under seal its entire memorandum of law in support
of its motion for a protective order, and Exhibits G, H, and I attached to the Declaration of
Michael Eisenberg (ECF No. 115). However, given that the documents sought to be sealed are
Plaintiff's documents, at the request of the Court, Plaintiff's counsel later provided a
declaration in support of sealing the documents Defendant earlier requested be sealed, but

Plaintiff's motion to seal Exhibits 1 and 13 attached to the Declaration of Kevin J. Patariu filed in opposition to Defendant's motion for a protective order (ECF No. 122; ECF No. 130)[3]; (4) Defendant's motion to seal Exhibits N and O attached to the Declaration of Michael Eisenberg in reply in further support of its motion for a protective order (ECF No. 125; ECF No. 130 at 6); and (5) Plaintiff's motion for discovery (ECF No. 116). The Court will also address the parties' dispute relating to civility between the parties' counsel.

For the reasons discussed below, Defendant's motion for a protective order is denied, the parties' motions to seal are granted to the extent limited by this Decision and Order, and Plaintiff's motion for discovery is granted in part and denied in part, as explained below.

## FACTUAL BACKGROUND

Both the Court and the parties are fully familiar with the facts of this case and, therefore, only a brief recitation of the facts is contained herein. Plaintiff engineers, designs, develops, and manufactures commercial valves for many uses, including in connection with aerospace manufacturing. (Amended Compl. at ¶ 20, ECF No. 48.) In 2013, Plaintiff contracted via purchase order with Defendant's predecessor to provide services relating to the manufacturing and integration of a certain valve in connection with the Orbital Maneuvering

---

limited the request to Exhibits G and H, and the one excerpt in Defendant's memorandum of law referring to Exhibit H. (ECF No. 130 at 4.)

[3] Plaintiff initially moved to seal Exhibits 1–2, 5–6, 10, and 12–14 attached to the Declaration of Kevin J. Patariu filed in opposition to Defendant's motion for a protective order (ECF No. 122), but later revised this request. (ECF No. 130 at 5–6.)

and Control ("OMAC") Program. (*Id.* ¶ 21.) Plaintiff and Defendant also entered into two Non-Disclosure Agreements ("NDAs") relating to the exchange of what Plaintiff alleges was "Proprietary Information" between the parties in connection with the OMAC program. (*Id.* at 23.)

On July 17, 2017, Defendant informed Plaintiff that it intended to develop the valve for the OMAC program itself and terminated the parties' contract. (*Id.* ¶ 40.) Plaintiff thereafter requested a return of the propriety information it shared with Defendant for purposes of the OMAC program and Defendant refused to comply or enter into any license agreement that would permit Defendant to utilize Plaintiff's proprietary information. (*Id.* ¶ 44–45.) As a result, Plaintiff commenced this action on November 15, 2017. (ECF No. 1-3.)

On July 2, 2020, Plaintiff served a notice of deposition on each of the following individuals: (1) Matthew Barber; (2) Martin Bleck; (3) Andy Krochmalny; (4) Alfred Little; (5) Earl Peterson; (6) Janet Putz; and (7) Jesse Ramos. (Def.'s Mem. of Law at 1, ECF No. 117.) On July 23, 2020, Defendant filed a motion for a protective order seeking to bar the depositions of Mr. Barber, Mr. Krochmalny, Mr. Peterson, Ms. Putz, and Mr. Ramos. (ECF Nos. 114, 115 & 117.) On that same date, Defendant filed a motion to seal certain documents in connection with its motion for a protective order. (Def.'s Jul. 23, 2020 Mot. to Seal, ECF No. 118.) Plaintiff filed its opposition to the motion for a protective order on July 30, 2013 (ECF Nos. 120–121) and also

3

filed a motion to seal certain documents in connection with the motion (Pl.'s Jul. 30, 2020 Mot. to Seal, ECF No. 122). Defendant filed its reply in further support of its motion on August 6, 2020 (Def.'s Reply Mem. of Law, ECF No. 123–124) and a motion to seal certain documents in connection with that motion. (Def.'s Aug. 6, 2020 Mot. to Seal, ECF No. 125.) On August 19, 2020, Defendant's counsel filed a declaration for the purpose of providing justification for sealing a document it created, but that Plaintiff had previously sought to seal with its July 30, 2013 motion. (Eisenberg Decl. in Supp. of Sealing, ECF No. 128.) Further, on August 20, 2020, Plaintiff's counsel filed a declaration in support of sealing certain documents that Plaintiff and Defendant previously moved to file under seal, and which clarified and limited the number of documents the parties have requested be sealed. (Patariu Decl., ECF No. 130.)

Finally, on July 23, 2020, Plaintiff filed a motion for discovery, which was a letter outlining discovery disputes between the parties. (Pl.'s Mot. for Disc., ECF No. 116.) Defendant has not provided any written response to the letter, but did address the issues raised in the letter during oral argument held on August 13, 2020, and September 10, 2020.

## DISCUSSION

### *Defendant has not established its entitlement to a protective order*

The Federal Rules set very liberal limits on the scope of discovery. Rule 26 of the Federal Rules of Civil Procedure provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). While "[p]roportionality has assumed greater importance in discovery disputes since the recent amendments to Rule 26 of the Federal Rules of Civil Procedure . . . Under the amended Rule, relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Sarkees v. E. I. DuPont de Nemours & Co.*, No. 17-CV-651V, 2019 WL 1375088, at *2 (W.D.N.Y. Mar. 27, 2019) (quotations and citations omitted); *Johnson v. Doty*, No. 15-CV-7823(KMK)(JCM), 2020 WL 1244236, at *1 (S.D.N.Y. Mar. 16, 2020) (Information is "relevant if it has any tendency to make a fact more or less probable and the fact is of consequence in determining the action.") (internal quotations and citations omitted).

Rule 30 of the Federal Rules of Civil Procedure provides: "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)." Fed. R. Civ. P. 30(a)(1). "[T]he party seeking discovery is not required to establish that the person whose deposition it seeks has information about which he or she could testify at the trial . . .

Indeed, one important purpose of discovery is to ascertain who has such information." 8A Charles Alan Wright, Arthur Miller, and Richard L. Marcus, Federal Practice & Procedure, Civil § 2102 (3d ed.).

> Rule 26 also provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery.

Fed. R. Civ. P. 26(c)(1).

The "Court has broad discretion in issuing [a] protective order." *Patton v. Ford Motor Co.*, No. 14-CV-308A, 2015 WL 2454000, at *4 (W.D.N.Y. May 22, 2015) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). "[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004).

Defendant seeks a protective order barring the depositions of Matthew Barber, Andy Krochmalny, Earl Peterson, Janet Putz, and Jesse Ramos. (Def.'s Mot. for Protective Order at 1, ECF No. 114.) Defendant asserts that the depositions of the foregoing individuals are not relevant to Plaintiff's claims nor proportional to the needs of this case. (Def.'s Mem. of Law at 4–5.) Defendant submitted declarations from each of the five individuals in support

of its motion to bar their depositions. (Eisenberg Decl. at 1–3 & Exs. 1–5, 10–12, ECF No. 115.)

Conversely, Plaintiff asserts that the depositions of the five individuals are "critically important to resolving issues in this lawsuit" because the individuals are Defendant's engineers and/or supply chain procurers and because they visited Plaintiff's facility on many occasions. (Pl.'s Mem. of Law at 2, 7, ECF No. 120.)

At the outset, the Court notes that Defendant's counsel has not complied with Rule 26(c)(1) of the Federal Rules of Civil Procedure, which provides that the party moving for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." It is within the Court's discretion to deny Plaintiff's motion on this basis alone. *Garner v. City of New York*, 17-CV-843 (JGK)(KNF), 2018 WL 5818109, at *4 (S.D.N.Y. Oct. 17, 2018) ("failure to include the certification [required by Rule 26(c)(1)] makes the motion susceptible to dismissal"); *Trella v. Wal-Mart Stores, Inc.*, No. 15-CV-01211(AWT), 2017 WL 5160686, at *2 (D. Conn. Nov. 7, 2017) ("Failure to comply with the procedural requirements of Federal Rule 26(c)(1) and Local Rule 37(a) is sufficient grounds to deny a motion for protective order.") (citing *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 192 n.9 (S.D.N.Y. 2012) (holding that when a movant has not included a certification of a good faith effort to confer, the movant "does not meet the

procedural prerequisites to obtain a protective order under Rule 26[ ]"). Nevertheless, the Court will address this motion on the merits and cautions Defendant to fully comply with Rule 26(c)(1) in the future. *Freydl v. Meringolo*, No. 09-CV-07196 (BSJ)(KNF), 2011 WL 134972, at *3 (S.D.N.Y. Jan. 7, 2011) (considering a motion for a protective order on its merits, despite lack of certification from the moving party that it attempted in good faith to informally resolve a discovery dispute, where the failure to do so could unduly prejudice the movant.).

In addition, the Court also notes that neither party addresses the legal standard for determining whether a protective order is warranted. In other words, Defendant has not explicitly stated what constitutes the "good cause" necessary to grant its motion.  Instead, the parties focus solely on the dual considerations under Rule 26 of relevancy and proportionality, which, of course, are only part of the analysis. Again, in the interest of resolving Defendant's motion on its merits, the Court has reviewed all of the documents submitted in support of and in opposition to the motion and determined that Defendant has failed to demonstrate good cause for entitlement to a protective order.

### *Matthew Barber and Earl Peterson*

Mr. Barber and Mr. Peterson are both engineers for Defendant who Plaintiff asserts worked on the OMAC valves with Plaintiff and visited Plaintiff's facilities on multiple occasions. (Pl.'s Mem. of Law at 9 & 10.)

Plaintiff asserts that Mr. Barber worked with Plaintiff to create the Acceptance Test Procedure for the valves, which gave Mr. Barber access to the data Plaintiff claims was misappropriated in violation of the NDAs. (*Id.* at 9.) Plaintiff contends that Mr. Peterson prepared a 590-page "Qualification Test Final Report" for Defendant's internally-developed OMAC valve, which demonstrates that Mr. Peterson was very involved in the design and development of Defendant's OMAC valve. (*Id.* at 11.)

In support of its motion, Defendant submitted declarations from both Mr. Barber and Mr. Peterson in which they assert that they were not involved in the design or development of Defendant's isolation valve for the OMAC system and, further, that they provided no input during the design or development of that valve. (Eisenberg Decl., Ex. A at 1 & Ex. B at 1, ECF No. 115-1.)

### Andy Krochmalny, Janet Putz, and Jesse Ramos

Plaintiff asserts that Andy Krochmalny was not only involved in procurement of components for Defendant, but that he was involved in Plaintiff's design of its OMAC valve and, based upon emails received through the discovery process, "had some level of technical approval over the Acceptance Test Procedure." (Pl.'s Mem. of Law at 12.) He also visited Plaintiff's facility eleven times, which Plaintiff contends demonstrates that Mr. Krochmalny was involved in more than simply contractual aspects of the parties' relationship. (*Id.*) Further, Plaintiff asserts that Mr. Krochmalny was

involved with contracting and, given that the parties have "diametrically opposed" interpretations of the contracts and Plaintiff has asserted a claim for breach of contract, Mr. Krochmalny's deposition is necessary. (*Id.*)

With respect to Ms. Putz, Plaintiff asserts that she also worked on Plaintiff's OMAC valves and made multiple visits to Plaintiff's facility. (*Id.* at 13.) Plaintiff further contends that, despite a claim in Ms. Putz's declaration to the contrary (Putz Decl., Jul. 23, 2020 at 1, ECF No. 115-4), she was "the primary Aerojet employee responsible for 'the negotiation and entry of' the 2017 NDA." (Pl.'s Mem. of Law at 13–14.)[4]

Plaintiff contends that Mr. Ramos worked with the OMAC valves and made multiple visits to Plaintiff's facility. (*Id.* at 4) In addition, Plaintiff asserts that Mr. Ramos represented Defendant in discussions and negotiations after Defendant terminated its contract with Plaintiff and, therefore, that his testimony is necessary to determine if Defendant intentionally misled Plaintiff regarding Defendant's alleged continued use of Plaintiff's confidential information and data after termination. (*Id.*)

Defendant contends that Mr. Krochmalny, Ms. Putz, and Mr. Ramos were "only involved in procurement."[5] (Def.'s Mem. of Law at 5.) In support of

---

[4] Ms. Putz later submitted a second Declaration in which she clarified that she did have some involvement in entering into the 2017 NDA between the parties. (Putz Decl., Aug. 4, 2020 at 2, ECF No. 124-1.)

[5] The declarations for each of the three individuals states "[a]s a member of Aerojet Rocketdyne's supply chain team, my role primarily involves contracting for the procurement of components." (Eisenberg Decl. at Ex. C at 1, Ex. D at 1, & Ex. E at 1.)

this claim, Defendant submitted very similar declarations from these three individuals, which, in sum and substance, indicate that these individuals also do not possess knowledge relevant to the claims at issue in this matter. (*Id.*; Eisenberg Decl. at Ex. C, Ex. D, & Ex. E.)

Based upon the foregoing, the Court finds that the five individuals at issue may be in possession of unique information relevant to Plaintiff's claims. The Court further finds upon consideration of the factors provided in Rule 26(b)(1) that permitting their depositions is proportionate to the needs of the case. Protection of trade secrets is a very important societal issue as it was recognized by our founding fathers in the United States Constitution, which provides that Congress has the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their perspective Writings and Discoveries." U.S. Const. art. 1, § 8, cl. 8.

Further, the parties differ greatly on the amount in controversy, with Defendant asserting that this is not a case where "tens or hundreds of millions of dollars [are] at issue." (Def.'s Mem. of Law at 6–7.) However, Defendant acknowledges that the amount in controversy could be "in the hundreds of thousands of dollars" . . . or "a few million" based upon Plaintiff's claims. (*Id.* at 6.) Permitting five depositions in a case where the amount in controversy is even in the ballpark of hundreds of thousands of dollars does not seem disproportionate to the needs of the case.

Additionally, the Court agrees with Plaintiff that Defendant has the advantage in terms of access to information relevant to Plaintiff's claims and in terms of resources, as Defendant is a much larger company enjoying greatly disproportionate resources to that of Plaintiff. (Pl.'s Mem. of Law at 8.) Further, it is possible that, to the extent Plaintiff's claims have merit, Defendant could be solely in possession of relevant information. The Court also finds the benefit for Plaintiff to have the opportunity to determine what knowledge the five individuals may or may not have outweighs the burden or expense of conducting their depositions because this case involves claims of possibly hundreds of thousands of dollars.

Moreover, Defendant has failed to meet its burden of demonstrating the requisite good cause required for the issuance of a protective order. Fed. R. Civ. P. 26(c)(1). Defendant asserts that these depositions should not be permitted because none of the five individuals Plaintiff seeks to depose possesses relevant information that is proportional to the needs of this case and has submitted sparse declarations from each of the witnesses in support of this claim. (Def.'s Mem. of Law at 5, 7–8; Eisenberg Decl. at Ex. A, Ex. B, Ex. C, Ex. D and Ex. E.) However, "[a] professed lack of knowledge typically does not constitute good cause and is insufficient to warrant [issuing a protective order for] a deposition." *Kamps, v. Fried, Frank, Harris, Shriver & Jacobson, L.L.P.,* No 9-CV-10392(RMB)(KNF), 2010 WL 5158183, at *3 (S.D.N.Y. Decl. 9, 2010) (citing *Alexander v. F.B.I.,* 186 F.R.D. 60, 64 (D.D.C.1998); *Naftchi v. New York Univ.*

*Med. Ctr.,* 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[I]n ordinary circumstances, [it] does [not] matter that the proposed witness is a busy person or professes lack of knowledge of the matters at issue, as the party seeking the discovery is entitled to test the asserted lack of knowledge."); 8A Charles Alan Wright, Arthur Miller, and Richard L. Marcus, Federal Practice & Procedure, Civil § 2037 (3d ed.) ("A witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge."). Accordingly, the Court denies Defendant's motion for a protective order.

### *The parties' motions to seal*

Presently before the Court are four motions to seal. (ECF Nos. 118, 122, 125 & 128.) Neither party challenges the sealing of the documents that are the subject of the sealing motions.

#### *Defendant's motions to seal (ECF Nos. 118, 125, & 128)*

Defendant made a motion to seal on July 23, 2020, in connection with its motion for a protective order. (Def.'s Jul. 23, 2020 Mot. to Seal, ECF No. 118). Defendant initially sought to file under seal its entire memorandum of law in support of its motion for a protective order, and Exhibits G, H, and I attached to the Declaration of Michael Eisenberg. (*Id.*) Defendant sought to seal the exhibits to comply with Plaintiff's designation of the documents as "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL." (*Id.* at 2.) Defendant sought to seal its entire memorandum of law because it referred to Exhibit H

(*see* Def.'s Mem. of Law in Support of Mot. for Protective Order at 4, ECF No. 117.)

However, Plaintiff's counsel later provided a declaration in support of Defendant's motion, which clarified and limited the documents sought to be sealed to Exhibits G and H, and a very short excerpt of Defendant's memorandum of law referring to Exhibit H. (Patariu Decl. at 1, 4, ECF No. 130.) Plaintiff's counsel provided this declaration because the documents Defendant sought to seal are Plaintiff's documents. Exhibits G and H are Plaintiff's responses to Defendant's interrogatories, which describe Plaintiff's trade secrets that are the subject of this lawsuit. (*Id.* at 4.) Given that the parties have both requested that this information be sealed, the Court grants Defendant's motion to seal (Def.'s Jul. 23, 2020 Mot. to Seal) as limited by Plaintiff's counsel's declaration (Patariu Decl.), and orders that Exhibits G and H to the Declaration of Michael Eisenberg, dated July 23, 2020 (Eisenberg Decl., ECF No. 115) and Defendant's memorandum of law in support of its motion for a protective order (ECF No. 117) be sealed.[6]

Defendant also filed a motion to seal Exhibits N and O attached to the Declaration of Michael B. Eisenberg in Support of Defendant's Reply Motion for [a] Protective Order. (Def.'s Aug. 6, 2020 Mot. to Seal, ECF No. 125.) Plaintiff's counsel supports Defendant's motion to seal these documents.

---

[6] While Plaintiff limited its sealing request to just the short excerpt of Defendant's memorandum of law in support of its motion for a protective order, the Court will direct the Clerk's Office to file the entire memorandum of law under seal as Defendant has already electronically filed a redacted version of the memorandum of law. (ECF No. 117.)

(Patariu Decl. at 6.)   Further, a review of Exhibits N and O, both Plaintiff's documents and both designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," reveals that they appear to contain propriety and sensitive technical information relating to Plaintiff's OMAC valve. For these reasons, the Court grants Defendant's motion to seal (ECF No. 125) in its entirety.

Finally, with respect to ECF No. 128, on August 19, 2020, Defendant filed the Declaration of Michael B. Eisenberg in Support of Aerojet Rocketdyne's Response in Support of ValveTech's Motion to File Under Seal. (Eisenberg Decl. in Support of Sealing, ECF No. 128.) Initially, Plaintiff sought to seal Exhibit 12, designated as "CONFIDENTIAL – SUBJECT TO EXPORT ADMINISTRATION REGULATIONS," attached to the July 30, 2020 Declaration of Kevin J. Patariu in Support of Plaintiff's Response to Defendant's Motion for Protective Order, which is Defendant's "OMAC Propellant Isolation Valve Qualification Test Final Report." (Pl.'s Jul. 30, 2020 Mot. to Seal, ECF No. 122.) At the August 13, 2020 case management conference the Court directed Defendant to provide justification for sealing Exhibit 12 as Defendant is the party interested in keeping its contents confidential. In his declaration, Mr. Eisenberg indicated that Exhibit 12 was prepared by Defendant for Boeing and contains sensitive and technical information that is controlled under the Export Administration Regulations, 15 C.F.R., parts 730–74. (Eisenberg Decl. in Support of Sealing at 2.) Plaintiff

has lodged no objection to filing Exhibit 12 under seal. Accordingly, the Court orders the filing of Exhibit 12 under seal.

### *Plaintiff's motion to seal (ECF No. 122)*

On July 30, 2020, Plaintiff filed a motion to seal documents in connection with Plaintiff's opposition to Defendant's motion for a protective order. (Pl.'s Jul. 30, 2020 Mot. to Seal.) With that motion, Plaintiff sought to seal Exhibits 1–2, 5–6, 10, and 12–14 attached to the Declaration of Kevin J. Patariu submitted in support of Plaintiff's opposition to Defendant's motion. (*Id.*) Plaintiff later clarified and limited the documents it sought to seal to only Exhibits 1 and 13. (Patariu Decl. at 1, 5.) Defendant has not filed any opposition to this motion.

Exhibit 1, designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," are Plaintiff's visitor logs from 2011 through 2017, which contain identifying information for third-party individuals and companies that are not connected to this litigation and with whom Plaintiff has confidentiality obligations. (Patariu Decl. at 5.) Plaintiff has narrowly tailored the information sought to be sealed and filed a version of the exhibit redacting only the names and dates of the third-party individuals and companies that visited Plaintiff's facilities, and did not redact entries related to Defendant. (*Id.*) Plaintiff's Exhibit 13, designated as "CONFIDENTIAL," contains sensitive technical information regarding the design, development, testing and qualification of Plaintiff's OMAC valve.

Based upon the foregoing, the Court grants Plaintiff's motion to seal (ECF No. 122) as limited by Plaintiff's counsel's August 20, 2020, declaration in support of sealing exhibits (Patariu Decl.) and because Defendant has not filed any opposition to this motion. The motion is further granted because a review of the documents reveals that they arguably contain Plaintiff's sensitive and/or proprietary information.

### *Plaintiff's motion for discovery*

The scope of discovery permitted under the Federal Rules of Civil Procedures is set forth in Rule 26(b)(1): "Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is [1] relevant to any party's claim or defense and [2] proportional to the needs of the case." *Id.* "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Kozak v. Office Depot, Inc.*, No. 16-CV-00943 (LJV)(JJM), 2020 WL 5757183, at *2 (W.D.N.Y. Sept. 28, 2020) (citations omitted).

Information is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial." *Walker v. City of New York*, 14-CV-680(WFK)(PK), 2018 WL 1686102, at *2 (E.D.N.Y. Mar. 30, 2018) "[P]roportionality focuses on the 'marginal utility of the discovery sought' and requires a balancing of the multiple factors set forth in [Rule] 26(b)(1)." *Id.* (quoting *Vaigasi v. Solow Management Corp.*, 11-CV-5088, 2016 WL 616386, at *14 (Feb. 16, 2016). Those factors include:

> [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

On July 23, 2020, Plaintiff filed a letter detailing three disputed areas of discovery, asserting that Defendant has failed to produce this discovery as follows:

> (1) E-mail and other ESI from Defendant's employees involved with the OMAC valve (Pl.'s Mot. for Disc. at 2–3, ECF No. 116.)[7];
>
> (2) Financial information relating to compensation from Boeing to Defendant for the OMAC valves, which Plaintiff asserts is responsive

---

[7] Plaintiff's letter was filed as a "Motion for Discovery," but was not a true motion in the sense that Plaintiff did not file a notice of motion and no formal response was provided nor required from Defendant. (Pl.'s Mot. for Disc.)

to Interrogatory Number 12, as well as Plaintiff's Requests for Production Numbers 35 and 37[8] (*Id.* at 4–5); and

(3) Interim testing and qualification of Defendant's OMAC valves in response to Plaintiff's Interrogatory Numbers 13 and 14, and potential penalties to Defendant for any delay in qualifying its OMAC valves in response to Interrogatory Number 15. (*Id.* at 5–6.)

The Court addresses each of these issues below.

### *Email and Other Electronically-Stored Information from Defendant's employees involved with the OMAC valve*

Plaintiff's Request for Production of Electronically-Stored Information ("ESI"), dated June 2, 2020, sought ESI from ten custodians for the time period of August 31, 2011, to the present. (ECF No. 116-1.) During the August 13, 2020 case management conference, defense counsel represented that Defendant objected to the search terms included in Plaintiff's request. (Tr.[9] Aug. 13, 2020 oral argument at 25:14–20, ECF No. 137.) After hearing both sides on this issue, the undersigned directed Defendant to conduct a search of the ten custodians where the terms "test" and "ValveTech" appeared in the

---

[8] Plaintiff's letter docketed as ECF No. 116 indicates that Defendant has failed to produce documents in response to Requests 35 and 38 in its Request for Production, with Request 38 seeking "forecasts" of financial information. (ECF No. 116 at 5.) In a previous email addressed to the undersigned, dated August 18, 2020, Plaintiff's counsel indicated that the dispute was related to Requests 35 and 37. A review of Plaintiff's Requests for Production demonstrates that Request 37 seeks forecasts related to Defendant's financial information, whereas Request 38 seeks documents related to Defendant's research and development costs in connection with its sales to Boeing. Accordingly, the Court interprets Plaintiff's dispute to be in connection with Request 37. (ECF No. 91-2 at 30.)

[9] "Tr." refers to the official transcript of oral proceedings.

same email message and report back on the number of emails that it returned. (*Id.* at 35:9–15.) In correspondence to the Court dated August 21, 2020, defense counsel represented that Defendant conducted a search in connection with each of the ten custodians at issue using the terms "test," "valvetech," "valve," and "tech," which resulted in 60,145 documents, excluding duplicates. (Correspondence from Michael Eisenberg to Judge Pedersen, dated Aug. 21, 2020.)

The Court finds that given that this is an intellectual property case, and such cases often involve large volumes of documentary discovery, 60,145 documents is not disproportionate to the needs of the case, especially given that the case involves an approximately nine-year relationship between the two parties. Accordingly, the Court directs Defendant to provide Plaintiff with the 60,145 search results. The Court is persuaded by Plaintiff's representation at the September 10, 2020 case management conference that this production should not be overly burdensome for Defendant to cull out privileged documents because the discussions were likely between engineers and did not involve lawyers. (Tr. Sept. 10, 2020 at 11:16–21, ECF No. 138.) Finally, in ordering Defendant to produce the 60,145 documents, the Court is mindful that Defendant has the protections provided for in Rule 26(B)(5)(b), as stated in the parties' stipulated protective order. (ECF No. 19-1 at ¶ 12.)

### *Defendant's financial information*

In its discovery motion, Plaintiff contends that Defendant has failed to respond to Interrogatory 12 served on Defendant on June 2, 2020. (Pl.'s Mot. for Disc. at 4.)[10] Interrogatory 12 requests that Defendant:

> Identify each individual valve created by Aerojet as part of the OMAC program, including the date of creation, whether such a valve was provided to Boeing (as part of an engine, or independently) or remains in Aerojet's possession, the date it was shipped to Boeing (as part of an engine, or independently), and the amount Aerojet was provided in monetary compensation for that valve (as part of an engine, or independently).

(Pl.'s Second Set of Interrog. to Def. at 2, ECF No. 116-4.)

Defendant interposed numerous objections to this interrogatory and indicated that it would not respond to it because the information sought "has no apparent relevance to any issue in this litigation." (Def.'s Resp. to Pl.'s Second Set of Interrog. at 5–6, ECF No. 116-6.)

Plaintiff contends that the fact that Defendant "designed, tested, and qualified its own OMAC valve utilizing Plaintiff's trade secret and NDA-protected information [render(s)] the identity, destination, and payment for the valves . . . the most relevant information possible for this litigation." (Pl.'s Mot. for Disc. at 4.) At oral argument held on August 13, 2020, Plaintiff further

---

[10] Plaintiff also asserts that financial information regarding monetary compensation received by Defendant from Boeing in connection with the OMAC valves is responsive to Request 35 (requesting "[d]ocuments showing the sales volume, revenue, costs, abd [sic] profit, on a product-by-product and sale-by-sale basis, of all Aerojet products sold to Boeing for the OMAC program.") and Request 37 (requesting "[a]ll documents referring or relating to sales forecasts, profit forecasts, and market analyses regarding all AeroJet products sold to Boeing for the OMAC program.") contained in ValveTech Inc.'s First Set of Requests for Production of Documents and Things to Defendant Aerojet Rocketdyne, Inc. (ECF No. 116-5 at 8; Pl.'s Mot. for Disc. at 4.)

clarified that the requested financial information relates to damages for its claims for lost profits and unjust enrichment. (Tr. Aug. 13, 2020 at 36:16–23.) Plaintiff believes that Defendant tracked the cost of making the valves so that it could ascertain how much money it was making on them. (*Id.* at 36:24–37:7.) Plaintiff also argued that it is entitled to know how much Defendant was paid per engine. (*Id.* at 37:8–15.) Finally, Plaintiff sought financial information regarding the amount of money Defendant saved by utilizing Plaintiff's testing data to jump-start its testing and avoid penalties from Boeing. (*Id.* at 37:16–22.)

At oral argument, Defendant asserted it is not possible to "back-out" the value of the valves from the value of the engines sold to Boeing. (*Id.* at 41:2–6.) Defendant also claimed that it did not understand Plaintiff's argument that it has a pecuniary interest in avoiding delays in a contract between Defendant and Boeing. (*Id.* at 41:12–23.)

During oral argument on September 10, 2020, Plaintiff asserted that it received, through a subpoena to Boeing, a document called a "material cost estimate" that was created by Defendant. (Tr. Sept. 10, 2020 at 22:16–19.) Plaintiff contended that this document assigned a cost to every part in the system. (*Id.*)

Defense counsel countered that it was his understanding that the 2014 "material cost estimate" document being referred to during oral argument was a "fixed cost contract" between Defendant and Boeing, such that upon

execution of the contract the pricing did not change without a special request. (*Id.* at 29:17–25.) The Court asked Defendant to confer with Plaintiff regarding the "material cost estimate" documents and Defendant indicated that he would search for and produce any such documents that include updates or anything about the valve. (*Id.* at 33:4–34:1.)

Based upon the foregoing, the Court grants Plaintiff's request with respect to Interrogatory 12 such that Defendant is ordered to provide a substantive response to that interrogatory. However, the Court denies Plaintiff's requests for further responses to Requests 35 and 37 contained in Plaintiff's First Set of Requests for Production of Documents and Things without prejudice and subject to renewal after the completion of depositions, as they are overbroad and can be more properly addressed at a deposition.

### *Interrogatories seeking interim testing and qualification of Defendant's OMAC valves and potential penalties to Defendant for any delay in qualifying its OMAC valves*

Plaintiff asserts that Defendant has refused to provide information in response to Interrogatories 13, 14, and 15 of Plaintiff's Second Set of Interrogatories to Defendant, dated June 2, 2020. (Pl.'s Mot. for Disc. at 5–6; Pl.'s Second Set of Interrog. to Def. at 2, ECF No. 116-4.) Interrogatory 13 requests that Defendant:

> Explain and describe in detail the history of Aerojet's testing and qualification of its valves for the OMAC program, including the dates any testing was done, the dates any qualifications were approved by Boeing, any documents created as part of this process, and identification of the individuals with knowledge of those facts.

(Pl.'s Second Set of Interrog. to Def. at 2.)

> Interrogatory 14 requests that Defendant:
>
> Explain and describe in detail how ValveTech valves and/or ValveTech's testing or qualification data were used by Aerojet as part of its testing and qualification process with Boeing, including without limitation the "ongoing testing" identified in Aerojet's December 22, 2017 motion to dismiss (Dkt. No. 21 at 1).

(*Id.*)

> Interrogatory 15 requests that Defendant:
>
> Explain and describe in detail penalties described in contract, and/or threatened or actually imposed (whether or not the threatened or imposed penalty has a contractual basis) by Boeing on Aerojet for delays in the OMAC program, including the contractual language describing the penalty (if any), the date of the threat or actually-imposed penalty, the monetary amount of the penalty, and the individuals with knowledge of those facts.

(*Id.*)

In response to Interrogatory 13, Defendant asserted several objections and indicated that the information sought was neither relevant nor proportional to the needs of the case. (Def.'s Resp. to Pl.'s Second Set of Interrog. at 6–7.) Defendant also cited to a range of Bates stamped documents, which Plaintiff has indicated is the final testing and qualification report provided by Defendant to Boeing. (*Id.*; Pl.'s Mot. for Disc. at 5–6.) In response to Interrogatory 14, Defendant again asserted objections, stated that "no information regarding 'ValveTech valves' was used in the testing or qualification of Aerojet Rocketdyne's independently developed isolation valves," and again cited to the same Bates numbered documents. (Def.'s Resp.

to Pl.'s Second Set of Interrog. at 7–8.) Finally, in response to Interrogatory 15, Defendant asserted various objections and stated that since the requested information was not relevant, Defendant would not provide a response. (*Id.* at 8–9.)

With respect to Interrogatories 13 and 14, Plaintiff asserts that Defendant has produced "***final*** testing and qualification reports to Boeing, [but] not any of the interim data, nor any email communications surrounding that data that would provide content." (Pl.'s Mot. for Discovery at 5–6, emphasis in original.) Plaintiff asserts that it needs this information to demonstrate its claim that Defendant improperly relied upon Plaintiff's trade secret and NDA-protected information when conducting its interim testing and qualification of its valve. (*Id.)* In particular, Plaintiff contends that Defendant must have improperly utilized Plaintiff's NDA-protected information and data to complete the testing and qualification process as quickly as Defendant did. With respect to Interrogatory 15, Plaintiff believes any monetary penalties for delay by Defendant in providing the valves to Boeing is "***highly*** relevant" because Plaintiff believes Defendant relied upon Plaintiff's trade secret and NDA-protected information and data to avoid those penalties. (*Id.* at 6, emphasis in original.)

At oral argument held on August 13, 2020, Defendant argued that it has provided Plaintiff with the final report, which shows exactly what testing was done to demonstrate that the valve was flightworthy and upon which Boeing

relied when deciding to fly the valves into space. (Tr. at 49:19–50:7.) Defendant further asserted that to the extent Plaintiff seeks a timeline for the testing and qualification of the valve, Plaintiff has the opportunity to depose Alfred Little and Martin Bleck to obtain this information. (*Id.* at 50:8–11.)

Based upon the parties' representations, the Court finds that the information and documents requested in Interrogatories 13 and 14 are overbroad and denies them without prejudice subject to renewal after the completion of depositions.

With respect to Interrogatory 15, the Court grants Plaintiff's request to the extent that Defendant is ordered to disclose the terms of the contract between Defendant and Boeing addressing any penalty for payment due to a delay as the Court finds this information is relevant and proportional to the needs of this case.

### *The parties' civility disputes*

On August 18, 2020, the Court received correspondence from both parties' counsel containing accusations that false claims and/or statements had been made by opposing counsel. Local Rule 26(g) of the Western District of New York addresses "Cooperation Among Counsel in the Discovery Context," and contains a hyperlink to the Civility Principles and Guidelines of the United States District Court for the Western District of New York ("Civility Principles"). W.D.N.Y. Loc. Civ. R. 26(g). The Preamble of the Civility Principles states that "[a] lawyer's conduct should be characterized at all times

by personal courtesy and professional integrity in the fullest sense of those terms . . . . Conduct that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive impedes the fundamental goal of resolving disputes rationally, fairly, and efficiently. Such conduct tends to delay and often to deny justice." W.D.N.Y. Civility Principles at 1 (effective January 1, 2018).[11] The Civility Principles "are designed to encourage us, judges and lawyers, to meet our obligations to each other, to litigants and to the system of justice, and thereby achieve the twin goals of civility and professionalism, both of which are hallmarks of a learned profession dedicated to public service." *Id.*

After discussing this issue with counsel for both parties at the September 10, 2020 case management conference, the Court now issues an admonishment to both counsel to not engage in integrity attacks. Instead, counsel should refer to Federal Rule of Civil Procedure 11 and to act in accordance with the Civility Principles.

## CONCLUSION

For the reasons discussed above the Court:

1. denies Defendant's motion for a protective order (ECF No. 114) without prejudice;

2. grants Defendant's July 23, 2020 motion to seal (ECF No. 118) to the extent that it orders Exhibits G and H, and the unredacted version of

---

[11] The W.D.N.Y. Civility Principles can be accessed here: https://www.nywd.uscourts.gov/sites/nywd/files/WDNY%20Civility%20Principles%20Oath%20%28Final%20Version%29.pdf.)

the Memorandum of Law in Support of Aerojet Rocketdyne's Motion for [a] Protective Order be sealed;

3. grants Defendant's August 6, 2020 motion to seal (ECF No. 125) and orders that Exhibits N and O attached to the Declaration of Michael B. Eisenberg in Support of Defendant's Reply Motion for [a] Protective Order be sealed;

4. grants Defendant's request to seal Exhibit 12 (ECF No. 128) attached to the July 30, 2020 Declaration of Kevin J. Patariu in Support of Plaintiff's Response to Defendant's Motion for a Protective Order;

5. grants Plaintiff's July 30, 2020 motion to seal (ECF No. 122), as later limited by the August 20, 2020 Declaration of Kevin J. Patariu (ECF No. 130), and orders that Exhibits 1 and 13 to the Declaration of Kevin J. Patariu submitted in support of Plaintiff's opposition to Defendant's motion for a protective order be sealed;

6. With respect to Plaintiff's motion for discovery (ECF No. 116) the Court finds as follows:

   a. The Court grants Plaintiff's request for the production of ESI to the extent that it orders Defendant to produce to Plaintiff the 60,145 search results from utilizing the search terms "test," "valvetech," "valve," and "tech";

   b. The Court grants Plaintiff's request for a substantive response to Interrogatory 12 and orders Defendant to provide such a

response, but denies Plaintiff's request for substantive responses to Requests 35 and 37 without prejudice subject to renewal after the completion of depositions; and

    c. The Court denies Plaintiff's motion for substantive responses to Plaintiff's Interrogatories 13 and 14 without prejudice and subject to renewal upon the completion of depositions, and grants Plaintiff's request with respect to Interrogatory 15 to the extent that Defendant is ordered to disclose the terms of the contract between Defendant and Boeing that details a penalty for payment due to any delay.

**IT IS SO ORDERED.**

DATED:    October 16, 2020
              Rochester, New York

                                   MARK W. PEDERSEN
                                   United States Magistrate Judge