UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VALVETECH, INC., :

    Plaintiff, :

v. :

        Case No. 6:17-cv-06788-FPG-MWP

AEROJET ROCKETDYNE, INC., :

    Defendant. :

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF REGARDING
TWO ISSUES IMPACTING THE APPROPRIATE SCOPE OF
<u>THE DEPOSITION OF MR. JOEL LANDAU</u>**

## **TABLE OF CONTENTS**

Page

A.     Aerojet Has Not Identified a Valid Reason for the Court to Reject the *Tailored Lighting* Decision ................................................................................... 1

B.     The Common Interest Exception Does Not Apply to Mr. Landau's Communications with Boeing about the OMAC Program Because Boeing Does Not Agree There Is a Comment Interest ....................................................... 6

        1.     Legal Standard and Burden of Proof ........................................................ 7

        2.     Aerojet Has Not Met Its Burden ............................................................... 9

               a.     Aerojet has not shown that Mr. Landau's communications are privileged or protected work product ........................................ 9

               b.     Aerojet cannot prove that it had an agreement with Boeing to pursue a joint legal strategy when Boeing itself disagrees ...... 10

               c.     Aerojet cannot show that the parties understood that the information Mr. Landau disclosed to Boeing was given confidentially to further their joint legal strategy ......................... 13

# **TABLE OF AUTHORITIES**

**CASES** **PAGE**

*Abbot Labs. V. Alpha Therapeutic Corp.*,
 200 F.R.D. 401 (N.D. Ill. 2001)......................................................................................10

*Alcon Labs., Inc. v. Pharmacia Corp.*,
 225 F. Supp. 2d 340 (S.D.N.Y. 2002)...............................................................................4

*American Eagle Outfitters, Inc. v Payless Shosource, Inc.*,
 No. 07-1675, 2009 WL 3786210 (E.D.N.Y. Nov. 12, 2009) .........................................11

*Baxter Int'l, Inc. v. AXA Versicherung*,
 224 F. Supp. 3d 648 (N.D. Ill. 2016) ..............................................................................10

*Callwave Communications, LLC v. Wavemarket, Inc.*,
 No. C 14-80112, 2015 WL 831539 (N.D. Cal. Feb. 23, 2015) ......................................10

*Denney v. Jenkens & Gilchrist*,
 362 F. Supp. 2d 407 (S.D.N.Y. 2004)..................................................................8, 9, 10, 13

*Fish v. Air & Liquid Sys. Corp., No. CV GLR-16-496*,
 2017 WL 697663 (D. Md. Feb. 21, 2017) ........................................................................4

*Goldberg v. Dufour*,
 No. 16-21301, 2020 WL 373206 (D. Vt. Jan. 23, 2020) ..................................................3

*Grae v. Corr. Corp. of Am.*,
 No. 3:16-CV-02267, 2020 WL 6750806 (M.D. Tenn. Nov. 2, 2020) ..............................4

*Hybrid Athletics, LLC v. Hylete*,
 No. 3:17-cv-1767, 2019 WL 4127377 (D. Conn. Aug. 30, 2019)..................................10

*In re Subpoena Issued to Dennis Friedman*,
 350 F.3d 65 (2d Cir. 2003)...................................................................................3, 4, 5, 6

*ITT Corp. v. Travelers Cas. & Sur. Co.*,
 No. 3:12 CV 38 (JAM), 2017 WL 589192 (D. Conn. Feb. 14, 2017).............................3

*Jansson v. Stamford Health*,
 312 F. Supp. 3d 289 (D. Conn. 2018).................................................................8, 9, 10, 13

*Johnson v. City of New York*,
 No. 16 Civ. 6426, 2018 WL 6727329 (E.D.N.Y. Dec. 21, 2018) .................................2, 6

*Lislewood Corp. v. AT&T Corp.*,
 No. 13-cv-1418, 2015 WL 1539051 (N.D. Ill. Mar. 31, 2015) ......................................10

*Lugosch v. Congel*,
 219 F.R.D. 220 (N.D.N.Y. 2003) .................................................................................8, 9

*Mackenzie Architects, P.C. v. VLG Real Estates Developers, LLC*,
  No. 115CV1105TJMDJS, 2017 WL 4898743 (N.D.N.Y. Mar. 3, 2017) .................................. 3

*Noval Williams Films LLC v Branca*,
  14-cv-4711, 2016 WL 7238960 (S.D.N.Y. Dec. 14, 2016) ............................................... 10, 12

*SEC v. Rashid*,
  No. 17-cv-8223, 2018 WL 6573451 (S.D.N.Y. Dec. 13, 2018) ........................................ 10, 13

*Serrano v., Chesapeake Appalachia, LLC*,
  298 F.R.D. 271 (W.D. Pa. 2014) ............................................................................................. 10

*Sokol v. Wyeth, Inc.*,
  No. 07-civ-8442, 2008 WL 3166662 (S.D.N.Y. Aug. 4, 2008) ........................................ 7, 8, 9

*Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.*,
  255 F.R.D. 340 (W.D.N.Y. 2009) ...................................................................................... passim

*U.S. v. Schwimmer*,
  892 F.2d 237 (2d Cir. 1989) ....................................................................................................... 8

*U.S. v. Weismann*,
  195 F.3d 96 (2d Cir. 1999) .............................................................................................. 8, 9, 13

*United States v. Krug*,
  868 F.3d 82 (2d Cir. 2017) ......................................................................................................... 9

*United States v. Maxwell*,
  No. 05-20571, 2006 WL 8439795 (S.D. Fla. Oct. 4, 2006) ..................................................... 10

*Winfield v. City of New York*,
  No. 15CV05236LTSKHP, 2018 WL 840085 (S.D.N.Y. Feb. 12, 2018) .................................. 4

**OTHER AUTHORITIES**

255 F.R.D at 344 ................................................................................................................................ 4

255 F.R.D at 345-46 ....................................................................................................................... 4, 5

Pursuant to the Court's Order at the January 27, 2021 discovery status conference (Dkt. 156), Plaintiff ValveTech, Inc. ("ValveTech") hereby responds and opposes Defendant Aerojet Rocketdyne, Inc.'s ("Aerojet") brief addressing two outstanding issues impacting the appropriate scope of the deposition of Mr. Joel Landau.  As acknowledged in Aerojet's January 27, 2021 letter, and again by Aerojet's counsel during the January 27 status conference, Aerojet "did not refuse to provide Mr. Landau for deposition" and "is prepared to have Mr. Landau appear."  The two outstanding issues only impact the scope of Mr. Landau's deposition, not whether the deposition should occur, and thus ValveTech respectfully requests the Court compel Aerojet to make Mr. Landau available for deposition no later than February 19[1] on the following topics:

(1)　identifying the information provided to and relied upon by Mr. Landau, whether through communications with individuals or review of documents, in answering the interrogatories and requests for admission;

(2)　identifying the particular source (person or record) of that information;

(3)　non-privileged communications between Mr. Landau and his human sources about that information that occurred in the course of investigating and answering the interrogatories and requests for admission;[2] and

(4)　Mr. Landau's communications with Boeing regarding the OMAC program.

**A.    Aerojet Has Not Identified a Valid Reason for the Court to Reject the *Tailored Lighting* Decision.**

Other than Mr. Landau's communications with Boeing about the OMAC program addressed in the next section, it is undisputed that ValveTech is only seeking to depose Mr. Landau on the same three categories of information allowed in U.S. Magistrate Judge Marion

---

[1] ValveTech requests this deadline due to the close of fact discovery being February 12, ValveTech's opening expert reports being due March 16 (Dkt. No. 149 ¶¶ 3-4), and several other discovery items already being pushed past February 12 including the Court-ordered deposition of Ms. Janet Putz, and Aerojet's Court-ordered substantive response to ValveTech's Interrogatory No. 12.  (Dkt No. 158.)

[2] *See Tailored Lighting, Inc. v. Osram Sylvania Prod., Inc.*, 255 F.R.D. 340, 346 (W.D.N.Y. 2009).

1

Payson's decision in the *Tailored Lighting* case and listed above, which also concerned the deposition of an in-house counsel who verified interrogatory responses.[3]

Aerojet argues in response that *Tailored Lighting* should not apply here, and that the deposition of Mr. Landau should be limited to "provid[ing] a list of people who provided factual information in support of the interrogatory responses verified by Mr. Landau," which *Tailored Lighting* explicitly found to be insufficient. 255 F.R.D. at 344 (compelling deposition even though defendant had "provided a written list identifying, for each interrogatory, those individuals who assisted [in-house counsel] in answering"). Aerojet provides no valid reason why Judge Payson's decision should be overturned for this case. Critically, Aerojet was unable to find a ***single case contrary*** to *Tailored Lighting* that prevented a party from taking a deposition of the opposing party's in-house attorney who verified discovery responses.[4]

Aerojet first argues that *Tailored Lighting* has been effectively abrogated by the addition in 2016 of a proportionality requirement to Rule 26(b)(1)'s definition of the scope of discovery (Br. at 1-2), but Aerojet was unable to locate a single case supporting this argument, and in fact the opposite is true, as courts in the Second Circuit have continued to allow limited-scope

---

[3] Mr. Landau has also verified all of Aerojet's responses to ValveTech's requests for admission which should be subject to the *Tailored Lighting* analysis for the same reasons as interrogatories. Aerojet's opposition does not distinguish requests for admission from interrogatories, and therefore concedes this point. Aerojet's statement that it is incorrect that Mr. Landau has verified all interrogatory responses and responses to requests for admission (Br. at 1 n.1) fails to clarify that Mr. Landau has verified all but one of Aerojet's sets of interrogatory responses (five out of six) and all of Aerojet's responses to requests for admission. The sole set of responses that Mr. Landau did not verify would obviously be excluded from his deposition.

[4] ***None*** of Aerojet's cited cases concern a deposition of an attorney who verified discovery responses, and only ***one*** of Aerojet's cited cases concerns attorney depositions at all, *Johnson v. City of New York*, No. 16 Civ. 6426, 2018 WL 6727329 (E.D.N.Y. Dec. 21, 2018), which is inapposite for reasons discussed below.

depositions of attorneys by weighing the *Friedman* factors,[5] as the *Tailored Lighting* decision did on the specific issue of attorney verifications of discovery responses, like in this case. *See Tailored Lighting,* 255 F.R.D at 346 (compelling the deposition of in-house counsel on discovery response verifications after "[b]alancing the *Friedman* factors"); *see also Goldberg v. Dufour*, No. 16-21301, 2020 WL 373206, at *7 (D. Vt. Jan. 23, 2020); *Mackenzie Architects, P.C. v. VLG Real Estates Developers, LLC*, No. 115CV1105TJMDJS, 2017 WL 4898743, at *4 (N.D.N.Y. Mar. 3, 2017); *ITT Corp. v. Travelers Cas. & Sur. Co.*, No. 3:12 CV 38 (JAM), 2017 WL 589192, at *3 (D. Conn. Feb. 14, 2017) (courts in Second Circuit continuing to allow depositions of attorneys based on *Friedman* factors after 2016 rules change).

Second, Aerojet argues against "discovery on discovery" by citing to a series of cases that have nothing to do with depositions of attorneys, never mind attorneys who verified discovery responses (Br. at 2), but regardless ValveTech is not seeking "discovery on discovery" because the information Mr. Landau relied on in making his verifications is crucial to **understanding** Aerojet's discovery responses, many of which appear to be materially wrong or incomplete based on the case evidence. As just one of numerous examples, many of ValveTech's Requests for Admission concern direct quotes from Aerojet presentations made to Boeing about the OMAC program (*e.g.*, Ex. 1 at 13-19)—that were introduced as exhibits during the Boeing deposition that Mr. Landau himself attended and observed—so Mr. Landau's repeated denials of those direct quotes is a proper topic of discovery, as ValveTech needs to understand what information underlies Aerojet's belief that it can now contradict what it

---

[5] Aerojet's brief equivocates on whether it believes the Second Circuit's *Friedman* decision still applies to attorney depositions (Br. at 2-3 n.2), but does not offer an alternative framework, and Second Circuit cases on attorney depositions continue to rely on *Friedman* as noted above.

previously told Boeing when litigation was not contemplated. This is not "discovery on discovery" in the vein of the cases cited by Aerojet.[6]

Third, Aerojet misleadingly (and incompletely) quotes *Tailored Lighting* to argue it shifted the burden on attorney depositions (Br. at 3), but *Tailored Lighting* did nothing of the sort (although, even if it had, it allowed a deposition of in-house counsel in remarkably similar circumstances). In fact, the Second Circuit's *Friedman* decision on which *Tailored Lighting* relied was careful to note that "the rules generally do not place any initial burden on parties to justify their deposition." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003). Furthermore, Aerojet fails to acknowledge that *Alcon Labs* decision quoted by *Tailored Lighting* stated "seeking discovery from **adversary** counsel is disfavored" (emphasis added) and dealt with a subpoena on "lead trial counsel" which creates issues that do not exist with a deposition of in-house counsel who will not be trying the case. *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002). Indeed, *Tailored Lighting* acknowledged this distinction while still applying the *Friedman* factors in coming to the conclusion the deposition should be permitted. 255 F.R.D at 344.

Aerojet's purported analysis of the *Friedman* factors fares no better, as it basically ignores *Tailored Lighting's* analysis of the same factors to determine a deposition should be allowed in these circumstances. For the first factor regarding the "need" to depose Mr. Landau, like in *Tailored Lighting*, Mr. Landau "appears to be the only witness who could testify to the myriad bases for [Aerojet's] interrogatory [and request for admission] responses." 255 F.R.D at

---

[6] *Winfield v. City of New York*, No. 15CV05236LTSKHP, 2018 WL 840085, at *6-7 (S.D.N.Y. Feb. 12, 2018) concerned a deposition of "data systems witnesses" and that deposition was ***allowed***, refuting Aerojet's argument. *Fish v. Air & Liquid Sys. Corp., No. CV GLR-16-496*, 2017 WL 697663, at *15 (D. Md. Feb. 21, 2017) concerned document collection and retention, which is not at issue here. *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-02267, 2020 WL 6750806, at *7 (M.D. Tenn. Nov. 2, 2020) did not concern depositions at all, but instead supplemental interrogatory responses which were ***compelled***, not denied.

345.  Like in *Tailored Lighting*, a list of everyone on whom Mr. Landau relied is not sufficient, because of the limited time left in fact discovery (not to mention the limitation on the number of depositions which will be reached with Mr. Landau's deposition) that would prevent ValveTech from deposing every one of Mr. Landau's sources.[7]  Rather than address these concerns, Aerojet mocks ValveTech for needing Mr. Landau's testimony on all of his responses (Br. at 4), but that is precisely why he is needed, as ValveTech has no other way to get that information given his singular responsibility in verifying those responses.

Aerojet's discussion of the second and third *Friedman* factors (the lawyer's role and the risk of encountering privilege) simply ignores the *Tailored Lighting* decision which held that the in-house counsel "role was central to the matter about which discovery is sought—the bases for the company's answers to interrogatories" and "that issue is a proper subject of discovery."  255 F.R.D at 345.  While it is true that *Tailored Lighting* held that issues of privilege created "a strong need to carefully and cautiously circumscribe any permissible areas of testimony" (*id.*), that ***is precisely what the court did*** in limiting the scope of the deposition to the three topics noted above, which is all ValveTech is seeking, instead of an open-ended deposition.  Aerojet does not identify any reason why the topics should be further limited in this case based on fundamentally similar facts.

With regard to the final *Friedman* factor (discovery already conducted), Judge Payson held the factor as neutral although it did way in favor of the deposition that "TLI serv[ing] its notice at the end of discovery refutes any contention by Sylvania that the notice is premature and should await the completion of other discovery means."  255 F.R.D at 345-46.  Rather than

---

[7] Judge Payson emphasized that the deposition notice "was served no more than twenty days before the discovery deadline, thus effectively precluding TLI from conducting any follow-up discovery" which is the same as here, where the notice on Mr. Landau was served only one month before the fact discovery deadline.  255 F.R.D at 345.  Nowhere does Aerojet address this.

-5-

address this, Aerojet simply argues that ValveTech could get the same information from Aerojet's 30(b)(6) deponent, but that deposition already occurred and ValveTech was unable to do so. For example, ValveTech's Interrogatory Nos. 17 and 18 concern two of Aerojet's affirmative defenses. (Ex. 2 at 10-16.) But when ValveTech tried to question Aerojet's 30(b)(6) deponent on the bases for these defenses, Aerojet's counsel **instructed him not to answer**. (Ex. 3 at 55:17-66:6.) Given that ValveTech was unable to obtain 30(b)(6) testimony on these and other interrogatory responses and responses to requests for admission, ValveTech must be permitted to obtain it from Mr. Landau.

Finally, as an alternative, Aerojet argues Mr. Landau's deposition should be conducted in writing, rather than orally, based on *Johnson v. City of New York*, No. 16 Civ. 6426, 2018 WL 6727329 (E.D.N.Y. Dec. 21, 2018). But that case is distinguishable from this case and *Tailored Lighting* for two reasons. First, that case concerned a deposition of plaintiff's lead trial attorney (*id.* at *1), which creates additional concerns not present with in-house counsel, namely "forcing another party's trial counsel to testify as a witness. *Friedman*, 350 F.3d at 70. Second, *Johnson* concerned *only* the identity of "alleged sources for [a news] Article," 2018 WL 672732 at *2, which was much more easily obtained from written deposition, than the information needed here and in *Tailored Lighting*, which will require the ability to ask follow-up and clarifying questions in a live deposition. Thus, the Court should follow Judge Payson's decision and order the scope of Mr. Landau's deposition to include the first three topics noted above.

> **B.    The Common Interest Exception Does Not Apply to Mr. Landau's Communications with Boeing about the OMAC Program Because Boeing Does Not Agree There Is a Comment Interest.**

Mr. Landau's deposition should also be permitted to cover his communications with Boeing about the OMAC program as noted in the fourth topic above. These communications are not privileged because they were made with a third party, Boeing.

-6-

Aerojet's argument that such communications are protected by what Aerojet erroneously refers to as the "common interest privilege" (actually the common interest *exception* to waiver of attorney-client privilege) is remarkable in that Aerojet has no evidence whatsoever that Boeing ever assented to such a common interest. In fact, the one time it was asked by anyone, Boeing was clear that "Boeing is not aware of having a 'common interest' or 'joint defense' agreement with AJR relating to the above-captioned lawsuit filed by ValveTech against AJR." (Ex. 4.) Aerojet's argument that Boeing's counsel was unaware of an indemnity obligation is wrong because the same e-mail noted: "That said, Boeing's contract with AJR, which governs the Starliner project, includes a 'patent, trademark, and copyright' indemnity provision, which could apply to any *future* action filed by ValveTech against Boeing." (*Id.* (emphasis added).) But that indemnity provision is notably limited to "patent, trademark, and copyright," which ValveTech has never asserted against Aerojet, never mind Boeing. As a result, Boeing's counsel was simply acknowledging there could be some future common interest to arise from such a hypothetical lawsuit, but the bottom line is Boeing does not believe there is any common interest related to this lawsuit, and Boeing's lack of consent to such a common interest precludes the common interest exception from applying to Mr. Landau's communications.

1. **Legal Standard and Burden of Proof.**

In the Second Circuit, there is no such thing as a "common interest privilege." *E.g. Sokol v. Wyeth, Inc.*, No. 07-civ-8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008). Rather, the common interest doctrine is a limited exception to the rule that attorney-client privilege or attorney work product protection is waived by disclosure to third parties other than the client and the lawyer, not an independent source of privilege. *See id.* As an exception to that rule, the common interest rule protects only those privileged communications "passing from one party to the attorney of another party where a joint defense effort or strategy has been decided upon and

undertaken by the parties and their respective counsel," *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). The common interest doctrine therefore is not a privilege in itself, and it only applies to those communications that are already privileged or protected work product. *Sokol*, 2008 WL 3166662, at *5. Therefore, a party seeking to apply the common interest doctrine must first show that the material it seeks to withhold are privileged or protected work product in the first place.

In addition to demonstrating that the communications it seeks to withhold are privileged or protected work product in the first place, the party seeking to invoke the common interest doctrine, must establish two elements:

*First*, it must show that it had a common legal interest and was pursuing a common legal strategy with the party it communicated with. "It is not enough" to merely show that they had "interests in common." *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004). "Nor is it sufficient to show that they had shared concerns about potential litigation." *Id.* Nor is it enough to show that the parties and their attorney were cooperating and sharing information. *See U.S. v. Weismann*, 195 F.3d 96, 99-100 (2d Cir. 1999). Instead, it requires admissible proof of an "some agreement, whether formal or informal, written or unwritten, to pursue a joint legal defense." *Denney*, 362 F. Supp. 2d at 415; *accord Jansson v. Stamford Health*, 312 F. Supp. 3d 289, 302 (D. Conn. 2018); *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003). And the agreement to pursue a joint legal strategy must be an actual agreement. The "impression of one side" that such an agreement exists or that the material is confidential is insufficient. *Weismann*, 195 F.3d at 100; *see also Denney*, 362 F. Supp. 2d at 415 (the party seeking to withhold discovery must show a "meeting of the minds" with the other party to pursue a common legal strategy).

*Second*, after establishing that an agreement to pursue a joint legal strategy existed, the party seeking to withhold information must also establish that the particular privileged information it seeks to withhold was disclosed in furtherance of the common legal strategy and that the parties understood that the information was confidentially provided in furtherance of their shared legal strategy. *E.g. id.*; *Sokol*, 2008 WL 3166662 at *5. Communications that merely convey information and do not seek advice from an attorney are not protected under the common interest doctrine. *E.g. United States v. Krug*, 868 F.3d 82, 86-87 (2d Cir. 2017).

It is Aerojet that bears the burden to establish that the information it seeks to withhold is privileged, and that both of the above elements are met. *See, e.g.*, *Lugosch*, 219 F.R.D. at 237. At a minimum, such a showing requires affidavits from the parties and their counsel, and may require an evidentiary hearing as well. *Jansson*, 312 F. Supp. 3d at 304. In deciding whether Aerojet has carried its burden, the Court should bear in mind the Second Circuit's instruction that, as an expansion of privilege, the common interest rule "should be narrowly construed." *Weismann*, 195 F.3d at 100.

### 2. Aerojet Has Not Met Its Burden.

Aerojet has not carried its burden.

#### a. Aerojet has not shown that Mr. Landau's communications are privileged or protected work product.

As an initial matter, Aerojet has made no effort to show that Mr. Landau's communications with Boeing that it seeks to withhold are privileged in the first place. It makes no attempt to show that they were disclosed to Boeing for the purpose of giving or seeking legal advice. Nor has it articulated an argument that they are protected work product. Merely asserting as a general proposition that communications with an indemnitor may be subject to work product protection when prepared in anticipation of litigation (*see* Br. at 6) does nothing to show that the particular communications sought in this case were protected.

-9-

### b.     Aerojet cannot prove that it had an agreement with Boeing to pursue a joint legal strategy when Boeing itself disagrees.

Even if Aerojet had shown that Mr. Landau's communications to Boeing were privileged or protected work product, Aerojet would then have to prove by admissible evidence that it had an agreement with Boeing to pursue a joint legal strategy. Submitting only "a brief of counsel," unsupported by affidavits from the parties "is not equal to the task." *Jansson*, 312 F. Supp. 3d at 304. Aerojet has failed to do so, and that failure is fatal to its position. *Hybrid Athletics, LLC v. Hylete*, No. 3:17-cv-1767, 2019 WL 4127377, at * 11 (D. Conn. Aug. 30, 2019); *Jansson*, 312 F. Supp. 3d at 304; *Denney*, 362 F. Supp. 2d at 415-16. In fact, not only is there no evidence of any such agreement, Boeing affirmatively denies that any such agreement ever existed (Ex. 4), and that denial is itself also fatal to Aerojet's position. *SEC v. Rashid*, No. 17-cv-8223, 2018 WL 6573451, at *1-2 (S.D.N.Y. Dec. 13, 2018); *cf. United States v. Maxwell*, No. 05-20571, 2006 WL 8439795, at *7 (S.D. Fla. Oct. 4, 2006).

Aerojet asserts that a duty to indemnify is "a well-supported basis for common interest privilege," but there are serious flaws with Aerojet's position.

In the first place, the mere existence of a duty to indemnify, standing alone, is not enough in the Second Circuit, to establish the kind of agreement to pursue a joint legal strategy necessary to invoke the common interest doctrine. *See Noval Williams Films LLC v Branca*, 14-cv-4711, 2016 WL 7238960, at *2-3 (S.D.N.Y. Dec. 14, 2016) (rejecting a defendant's attempt to invoke the common interest doctrine based solely on an indemnification provision in a commercial contract). In fact, in the only decision out of the Second Circuit that Aerojet even cites,[8] the

---

[8] The other decisions Aerojet cites were decided under Illinois state law (*Baxter Int'l, Inc. v. AXA Versicherung*, 224 F. Supp. 3d 648 (N.D. Ill. 2016); *Abbot Labs. V. Alpha Therapeutic Corp.*, 200 F.R.D. 401 (N.D. Ill. 2001)), Ninth Circuit precedent (*Callwave Communications, LLC v. Wavemarket, Inc.*, No. C 14-80112, 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015)), Pennsylvania state law (*Serrano v., Chesapeake Appalachia, LLC*, 298 F.R.D. 271 (W.D. Pa. 2014)), and Seventh Circuit precedent (*Lislewood Corp. v. AT&T Corp.*, No. 13-cv-1418, 2015

-10-

court—contrary to Aerojet's position—did not find that the common interest doctrine applied based solely on the existence of an indemnification agreement. *American Eagle Outfitters, Inc. v Payless Shosource, Inc.*, No. 07-1675, 2009 WL 3786210 (E.D.N.Y. Nov. 12, 2009). The parties in that case, unlike Aerojet and Boeing, had also entered into a joint defense agreement. *See id.* at *3. The court found that the indemnification provision merely "fortified" the parties' already existing common interest. *Id.* Aerojet has not pointed to a single decision out of the Second Circuit—and ValveTech has not found one either—that applied the common interest doctrine based solely on the existence of an indemnification provision, never mind where one of the supposed parties to the common interest denies that such a common interest ever existed. And it makes sense that a pre-existing indemnification agreement alone does not constitute a joint defense agreement, because the parties will have different interests as to the threshold question of whether the claim at issue is even within the scope of the indemnification provision to begin with.

And even if an indemnification provision in a commercial contract could be sufficient to create an agreement to pursue a common legal strategy, Aerojet has not proven such an agreement here. Aerojet does not even file a copy of the indemnification agreement with its brief, instead gesturing breezily toward an attachment to a letter it previously sent to the Court (but notably neglected to file with its brief). (*See* Br. at 5). And that attachment does not carry Aerojet's burden. The document is merely a two-page excerpt of a "memorandum of understanding" of unknown length that "summarizes" agreements between Boeing and Aerojet. (*See* Ex. 5.). Aerojet has not shown that the indemnification language in this "summary" of its agreements with Boeing is the same in all material respects as the operative agreements

---

WL 1539051 (N.D. Ill. Mar. 31, 2015)). Aerojet meticulously avoids the governing Second Circuit case law.

-11-

themselves. Nor has Aerojet submitted a signature page or affidavits, any other proof that the "summary" was accepted by both parties. And Aerojet has omitted the rest of the summary, making it impossible to see whether other sections limit or qualify the indemnification obligation. Such slim proof does not carry Aerojet's burden.

And perhaps worst of all, Aerojet has not even attempted to show that the indemnification provision covers the types of claims that it says were threatened in ValveTech's cease-and-desist letter. Aerojet seemingly wants the Court to decide that the mere existence of any indemnification agreement protects all communications so that it does not have to deal with the actual language of the indemnification provision that it refers to. But the memorandum of understanding limits the indemnification obligation to claims based on alleged infringement of "patent, trademark and copyright" (*see* Ex. 5 at 2), and this limitation was confirmed by Boeing's counsel when they acknowledged the nonexistence of any common interest related to this case. (Ex. 4.) Moreover, the gist of ValveTech's cease-and-desist letter, though it included a pro forma reservation of rights as to intellectual property, was raising concerns about trade secret and breach of contract, not patent, copyright, or trademark. (Dkt. No. 160-2.)

The memorandum of understanding also requires Boeing to duly notify Aerojet of any such subject to indemnification, and Aerojet has failed to submit any evidence that Boeing ever notified Aerojet that it believed ValveTech's letter raised any such claim. *Cf. See Noval Williams Films*, 2016 WL 7238960, at *2-3 (holding that lack of proof of written notification of the claim, as required by an indemnification provision, doomed any attempt to rely on the indemnification provision to prove an agreement to pursue a common legal strategy).

The apparent inapplicability of the indemnification provision may be the reason why Boeing never notified Aerojet of any claim, and expressly ***denies*** the existence of any common legal interest related to this lawsuit. (*See* Ex. 4.) But regardless of the reason, Boeing's denial of

-12-

any common legal interest with Aerojet is fatal to Aerojet's argument. *Rashid*, No. 17-cv-8223, 2018 WL 6573451, at *1-2. Put simply, the most Aerojet can show is that it alone had the impression that the information it shared with Boeing was related to their shared interests. But the "impression of one side" that an agreement exists is not enough. *Weismann*, 195 F.3d at 100.

### c. Aerojet cannot show that the parties understood that the information Mr. Landau disclosed to Boeing was given confidentially to further their joint legal strategy.

Finally, even if Aerojet did have a joint defense agreement with Boeing (and Boeing has confirmed it did not), Aerojet has failed to submit any evidence that the particular communications it seeks to withhold were understood by it and Boeing to have been confidential information—either privileged or protected work product—disclosed in furtherance of a joint legal strategy. Aerojet cannot carry its burden by mere assertion. At a minimum, it would have to submit affidavits from Boeing demonstrating that Boeing understood such communications to be made pursuant to their joint defense agreement. *Jansson*, 312 F. Supp. 3d at 304. And again, Boeing expressly denies that any communications with Aerojet were pursuant to a joint legal strategy. That denial is fatal. *Denney*, 362 F. Supp. 2d at 416.

Dated: February 5, 2021                        Respectfully submitted,


                                               By:*/ s/ John D. Esterhay*
                                                   Kevin J. Patariu
                                                   John D. Esterhay
                                                   Perkins Coie LLP
                                                   11452 El Camino Real, Suite 300
                                                   San Diego, CA  92130-2080
                                                   Telephone: (858) 720-5700
                                                   Fax: (858)720-5799
                                                   KPatariu@perkinscoie.com
                                                   JEsterhay@perkinscoie.com

                                                   Laurie A. Vahey
                                                   Vahey Getz LLP
                                                   144 Exchange Blvd., Suite 400
                                                   Rochester, New York 14614
                                                   Tel: 585-262-5130
                                                   lvahey@vaheygetz.com

                                               Attorneys for Plaintiff
                                               VALVETECH, INC.