UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VALVETECH, INC.,

                            Plaintiff,

              -vs-

AEROJET ROCKETDYNE, INC.,

                        Defendant.

DECISION AND ORDER
17-CV-6788-FPG-MJP

**Pedersen, M.J.** Plaintiff ValveTech, Inc. ("Plaintiff") commenced an action in 2017 in New York State Supreme Court against defendant, Aerojet Rocketdyne, Inc., ("Defendant"), alleging various claims, the vast majority of which have been dismissed. Defendant removed the case to federal court in December 2017. (ECF[1] No. 1.)

On January 13, 2021, Plaintiff electronically filed correspondence addressed to the Court wherein Plaintiff's counsel vaguely listed several discovery disputes between the parties. (ECF No. 150.)[2] On January 27, 2021,

---

[1] "ECF" stands for Electronic Case Files, which is the Court's filing system. The system assigns a document number to most filings. In this Decision and Order, the Court will use the ECF number to refer to the filed documents.

[2] While Plaintiff labeled its letter a "Motion for Discovery" (ECF No. 150), Plaintiff did not comply with Rule 7 of the Local Rules of Civil Procedure for the Western District of New York, which provides, in part, that "[a] notice of motion is required for all motions, and must state: the relief sought, the grounds for the request, the papers submitted in support, and the return date for the motion, if known. A moving party who intends to file and serve reply papers must so state in the notice of motion." W.D.N.Y. Loc. R. Civ. P. 7(a)(1). In addition, Plaintiff is required to file a memorandum of law. W.D.N.Y. Loc. R. Civ. P. 7(a)(2)(A). The motion should also be accompanied by an attorney affirmation or declaration, if necessary. W.D.N.Y. Loc. R. Civ. P. 7(a)(3). Plaintiff is cautioned to comply with these rules moving forward.

Defendant emailed a response to Plaintiff's correspondence, in which Defendant provided detail regarding the parties' discovery disputes. During a Zoom conference with the Court on January 27, 2021, the parties elaborated on the discovery disputes and several of the issues were resolved. (ECF No. 156.) However, two issues remained outstanding, both addressing the scope of the deposition of Defendant's in-house counsel, Joel Landau, as follows:

1. Whether *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340 (W.D.N.Y. 2009) ("*Tailored Lighting*") applies to this case regarding the scope and procedure of Plaintiff's noticed deposition of Mr. Landau; and

2. Whether a common interest exists between Defendant and third party Boeing Co. ("Boeing"), to determine whether communications between Mr. Landau and Boeing regarding the Orbital Maneuvering and Control ("OMAC") program are protected by the common interest exception to the attorney-client privilege.

The Court set a briefing schedule with respect to the forgoing issues and both parties have submitted their briefs. Defendant filed its brief in support of its position on February 3, 2021. (Def.'s Mem. of Law, ECF No. 160.) Plaintiff filed its brief in opposition to Defendant's position on the two issues on February 5, 2021 (Pl.'s Mem. of Law, ECF No. 162) and Plaintiff's counsel filed a declaration in support of Plaintiff's opposition (Esterhay Decl., ECF No. 163.) In addition, Plaintiff filed a motion seeking leave to file under seal Exhibits 1,

3, and 5 attached to the Declaration of John D. Esterhay filed in support of Plaintiff's Response to Defendant's Brief regarding Two Issues Impacting the Appropriate Scope of the Deposition of Mr. Joel Landau. (ECF No. 164.)

For the reasons discussed below the Court finds that *Tailored Lighting* is applicable to this case regarding the scope and procedure of the noticed deposition of Defendant's in-house counsel, Joel Landau. The Court further finds that Defendant has failed to satisfy its burden of demonstrating that the common interest exception to the attorney-client privilege protects communications between Defendant and Boeing regarding the OMAC program. Finally, the Court denies Plaintiff's motion to seal.

## STANDARD OF LAW

The scope of discovery permitted under the Federal Rules of Civil Procedures is set forth in Rule 26(b)(1): "Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is [1] relevant to any party's claim or defense and [2] proportional to the needs of the case." *Id.* "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Walker v. City of New York*, No. 14-CV-680 (WFK) (PK), 2018 WL 1686102, at *2 (E.D.N.Y. Mar. 30, 2018) (quoting *Vaigasi v. Solow Mgmt. Corp.*, 11 Civ. 5088 (RMB)(HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016)).

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that

is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial." *Walker*, 2018 WL 1686102, at *2.

"[P]roportionality focuses on the 'marginal utility of the discovery sought' and requires a balancing of the multiple factors set forth in [Rule] 26(b)(1)." *Equal Employment Opportunity Comm'n v. Staffing Sols. of WNY, Inc.*, No. 18-CV-562-LJV-JJM, 2020 WL 7407736, at *2 (W.D.N.Y. Oct. 16, 2020) (quoting *Vaigasi*, 2016 WL 616386, at *14). Those factors include:

> [i] the importance of the issues at stake in the action, [ii] the amount in controversy, [iii] the parties' relative access to relevant information, [iv] the parties' resources, [v] the importance of the discovery in resolving the issues, and [vi] whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Rule 26 vests the trial judge with broad discretion over making these determinations. *Woelfle v. Black & Decker (U.S.) Inc.*, No. 1:18-CV-486, 2020 WL 1180749, at *5 (W.D.N.Y. Mar. 12, 2020) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

## ANALYSIS

### *Tailored Lighting is applicable to the scope and procedure of Mr. Landau's deposition.*

In contending that *Tailored Lighting* is not applicable to this case, Defendant argues that the relevance standard under Rule 26 of the Federal Rules of Civil Procedure has changed since the issuance of *Tailored Lighting*, stating that the current discovery standard "differs markedly." (Def.'s Mem. of Law at 1, Feb. 3, 2021, ECF No. 160.) This is not accurate.

4

Rule 26(b) was amended in 2015 to relocate the proportionality language and place it prominently with relevance as defining the scope of discovery. *See Black v. Buffalo Meat Serv., Inc.*, No. 15-CV-49S, 2016 WL 4363506, at *6 (W.D.N.Y. Aug. 16, 2016). The 2015 amendments, however, did not establish a new limit on discovery; rather they merely relocated the limitation from Rule 26(b)(2)(C)(iii) to Rule 26(b)(1). *Robertson v. People Magazine*, 14-CV-6759 (PAC), 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015) (noting that proportionality has been a limit on discovery since the 1983 amendments to Rule 26); Advisory Committee Notes to the 2015 Amendments to Rule 26 ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality ...."); *see also Sibley v. Choice Hotels Int'l*, CV-14-634(JS)(AYS), 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015). The change was intended to "reinforce[] the Rule 26(g) obligation of the parties to consider [the proportionality factors] in making discovery requests, responses, or objections." Advisory Committee Notes to the 2015 Amendments to Rule 26. Thus, the 2015 Amendments constitute a reemphasis on the importance of proportionality in discovery but not a substantive change in the law. *Robertson*, 2015 WL 9077111, at *2 ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exactingly.").

Based upon the forgoing, proportionality was always meant to be part of the calculation in determining the scope of discovery and, thus, Defendant's attempt to distinguish *Tailored Lighting* on this basis is not persuasive. However, even if the standard was markedly different now, this Court finds the Honorable Marian W. Payson's reasoning in that decision applicable here as the discovery sought by Plaintiff is not disproportionate to the needs of the case. Indeed, as referenced by the undersigned in a prior decision in this case, "[p]rotection of trade secrets is a very important societal issue as it was recognized by our founding fathers in the United States Constitution, which provides that Congress has the power '[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their perspective Writings and Discoveries. U.S. Const. art. 1, § 8, cl. 8.'" *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, No. 17-CV-6788-FPG-MJP, 2020 WL 6120348, at *2 (W.D.N.Y. Oct. 16, 2020).

In addition, as addressed in the aforementioned case, Defendant admits that this case could involve "in the hundreds of thousands of dollars" or "a few million" based upon Plaintiff's claims. *Id.* Further, Defendant has access to much greater resources than does Plaintiff and information that could be relevant to Plaintiff's claims, particularly given Plaintiff's representation that it seeks to depose Mr. Landau because the "information [he] relied on in making his verifications is crucial to **understanding** [Defendant's] discovery responses." (Pl.'s Mem. of Law at 3 (emphasis in original.)) Finally, the Court

does not find that the cost of one additional deposition would be disproportionate to the needs of the case, especially given Defendant's resources. Based upon the forgoing, the Court finds that *Tailored Lighting* applies in this case.

With respect to Defendant's argument regarding "discovery on discovery" the Court finds that the discovery sought by Plaintiff is not "collateral to the relevant issues," but rather directly relevant to Plaintiff's claims. (Def.'s Mem. of Law at 2); *see Winfield v. City of New York,* No. 15-CV-05236, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018)). Accordingly, the Court is not persuaded by this argument.

Finally, both parties appear to agree that a weighing of the factors discussed *In re Friedman*, 350 F.3d 65 (2d Cir. 2003), and utilized in *Tailored Lighting*, should guide a court's decision on whether to permit the deposition of in-house counsel. (Def.'s Mem. of Law at 4; Pl.'s Mem. of Law at 2–3.) These factors include:

> the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*In re Friedman,* 350 F.3d at 72.

The first factor, the need to depose the lawyer, weighs in favor of Plaintiff. Defendant asserts that Plaintiff failed to articulate a need to depose Mr. Landau, but Plaintiff specifically argues that Mr. Landau's deposition is necessary because he appears to be the only individual who could testify as to

the "myriad bases" for Defendant's responses to Plaintiff's interrogatories and requests for admission.[3] (Pl.'s Mem. of law at 4–5.) In addition, as Judge Payson found in *Tailored Lighting*, the timing of Mr. Landau's deposition vis à vis the deadline for discovery would effectively preclude Plaintiff from conducting any follow-up discovery, including further depositions, regarding information Plaintiff may garner during that deposition. *See Tailored Lighting*, 255 F.R.D. at 345.

The second *Friedman*, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the Court finds that this factor also weighs in Plaintiff's favor. Defendant is correct that this factor must also be balanced with the third *Friedman* factor, the risk of encountering privilege and work-product issues. Defendant asserts that these factors weigh against deposing Mr. Landau because he is leading Defendant's defense in this matter and is involved in all decision-making, which would render implicating attorney-client or work-product protected information "inescapable." (Def.'s Mem. of law at 4.) However, in *Tailored Lighting*, the attorney also played a central role in discovery and, acknowledging the risk of the potential disclosure of privileged information, Judge Payson narrowly-circumscribed the scope of the attorney's deposition to balance the second and

---

[3] Plaintiff concedes that Mr. Landau verified five out of six of Defendant's sets of interrogatory responses, and that it would not depose Mr. Landau regarding the one set of interrogatories he did not verify. (Pl.'s Mem. of Law at 2, n.3.)

third *Friedman* factors. The Court finds that the same circumscriptions will help balance those two factors here.

Finally, with respect to the fourth *Friedman* factor, the extent of discovery already conducted, Defendant asserts that Plaintiff has already conducted the depositions of many of its employees during which Plaintiff had the opportunity to ask about the facts underlying the interrogatory responses. (Def.'s Mem. of Law at 4.) In addition, Defendant contends that Plaintiff specifically listed the topic, "Your responses to ValveTech's Interrogatories," as an area in which Defendant's Federal Rule of Civil Procedure 30(b)(6) deponent would be questioned. (*Id.* at 4–5.) However, Plaintiff counters that the 30(b)(6) deposition has already taken place and Defendant's representative did not provide the requested information, providing an example of how Defendant's counsel specifically instructed the deponent not to answer questions regarding two of Plaintiff's affirmative defenses, about which Plaintiff had asked in its interrogatories. (Pl.'s Mem. of Law at 5–6.) The Court finds this factor also weighs in favor of Plaintiff because it already attempted to obtain responses to certain questions posed to the 30(b)(6) deponent regarding certain interrogatories and was unsuccessful. Further, while Defendant contends that its responses to the interrogatories were specifically listed as a topic for Defendant's 30(b)(6) deponent, it does not indicate whether that deponent provided a response to that topic. As noted above, Plaintiff's representations suggest otherwise. In sum, given the "flexible approach to lawyer depositions

9

whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship," *Friedman*, 350 F.3d at 72, the Court finds that a limited-scope deposition of Mr. Landau is appropriate in this case.

Defendant requests the Court direct that Mr. Landau's deposition be conducted by "narrowly subscribed written questions," citing *Johnson v. City of New York*, No. 16 Civ. 6426, 2018 WL 6727329 (E.D.N.Y. Dec. 21, 2018), in support of the request. (Def.'s Mem. of Law at 5.) The Court agrees with Plaintiff that this case is distinguishable from *Johnson* and that a limited-scope deposition, rather than written questions, is appropriate in this case. (*See* Pl.'s Mem. of Law at 6.)

Based upon the forgoing, the Court orders that Plaintiff may conduct a limited-scope deposition of Mr. Landau on the following issues:

> (1) identifying the information provided to and relied upon by Mr. Landau, whether through communications with individuals or review of documents, in answering the interrogatories and requests for admission;
>
> (2) identifying the source (person or record) of that information; and
>
> (3) non-privileged communications between Mr. Landau and his human sources about that information that occurred while investigating and answering the interrogatories and requests for admission.

10

***The common interest exception does not apply to communications between Defendant and Boeing regarding the OMAC program.***

The dispute between the parties on this issue involves conversations between Mr. Landau and Boeing's former in-house counsel, Dionne Hamilton. Defendant asserts that such communications are protected by the "common interest privilege"[4] and, therefore, are not subject to discovery. (Def.'s Mem. of Law at 5–6.) Defendant contends that it and Boeing share a common interest due to the existence of an indemnification provision in the contract between them. (*Id*. at 5.) Defendant refers to a "cease and desist" letter sent by Plaintiff's counsel to Boeing's counsel after commencement of this litigation, which informed Boeing that "any use or dissemination of ValveTech Proprietary Information is in violation of ValveTech's enforceable legal rights, including without limitation, copyright infringement, trade secret theft and/or misappropriation, and patent infringement." (*Id*., Ex. B at 2, ECF No. 160-2.)

In general, the exception to the attorney client privilege applies to protect confidential communications to third parties where the third party and a party share a common legal interest. *Marciano v. Atl. Med. Specialities, Inc.*, No. 08-CV-305-JTC, 2011 WL 294487, at *3 (W.D.N.Y. Jan. 27, 2011).

> [T]he common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating: (1) have a common legal, rather than

---

[4] As Plaintiff correctly contends, at issue is the common interest exception to waiver of the attorney-client privilege, not, as Defendant calls it, the "common interest privilege." (Pl.'s Mem. of Law at 7.) *Hopkins v. Booth*, No. 16-CV-1020V(F), 2019 WL 4941863, at *2 (W.D.N.Y. Oct. 8, 2019).

commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy.

*Id.* "The burden of establishing the attorney-client privilege, in all its elements, always rests upon the person asserting it." *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989). Further, "[t]here must be a substantial showing by parties attempting to invoke the protections of the privilege of the need for a common defense as opposed to the mere existence of a common problem." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 434 (S.D.N.Y. 2013); *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 415 (S.D.N.Y. 2004) ("The party asserting the common interest rule bears the burden of showing that there was an agreement, though not necessarily in writing, embodying a cooperative and common enterprise towards an identical legal strategy .... Some form of joint strategy is necessary to establish a [joint defense agreement], rather than merely the impression of one side.") (internal quotations and citation omitted).

Defendant has not satisfied its burden of demonstrating that an agreement exists between it and Boeing such that the common interest exception applies to the communications between Mr. Landau and Boeing's former in-house counsel. Defendant has failed to submit any proof of such an agreement. On the contrary, Plaintiff has submitted proof that Boeing denied it had an agreement with Defendant to engage in a joint legal strategy. (Esterhay Decl. at Ex. 4.) Boeing's counsel specifically referenced the indemnity clause that Defendant relies on to establish the existence of a common interest. In relevant part, that clause provides:

> Boeing's contract with AJR, which governs the Starliner project, includes a "patent, trademark, and copyright" indemnity provision, which could apply to any *future action* filed by ValveTech against Boeing in connection with Boeing's alleged "use" of ValveTech's "proprietary information" and under which AJR could be required to "indemnify, defend, and hold harmless" Boeing. Boeing understands that an indemnification agreement, under certain circumstances, could give rise to a common-interest relationship.

(*Id.*) (emphasis added).

The Court finds that communications between Mr. Landau and Boeing's former in-house counsel regarding the OMAC program are not protected by any common interest between Defendant and Boeing at this time.

### *Plaintiff's motion to seal.*

On February 5, 2021, Plaintiff made a motion pursuant to Rule 5.3 of the Local Civil Rules of the Western District of New York seeking leave to seal Exhibits 1, 3, and 5 to Plaintiff's Response to Defendant's Brief Regarding Two Issues Impacting the Appropriate Scope of the Deposition of Mr. Joel Landau and attached to the Declaration of John D. Esterhay. (Pl.'s Mot. to Seal, ECF No. 164.) The three exhibits Plaintiff seeks to seal have been designated by Defendant and/or third party Boeing as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the parties' Stipulated Protective Order. (*Id.* 2.)

The Supreme Court has held that the First Amendment presumptive right of access applies to all criminal trials. *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163–64 (2d Cir. 2013) (citing *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580 (1980)). The Second Circuit has extended that

principle, holding that the First Amendment right applies "to civil trials and to their related proceedings and records." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012). In so holding, the Second Circuit noted that the First Amendment "does not distinguish between criminal and civil proceedings," but rather "protects the public against the government's arbitrary interference with access to important information." *Id.* (internal quotation marks omitted). Based on this logic, the Second Circuit has held that the First Amendment right applies to pretrial motions and written documents submitted in connection with them. *In re New York Times Co.,* 828 F.2d 110, 114 (2d Cir. 1987).

The Local Rules of Civil Procedure explain that "there is a presumption that Court documents are accessible to the public and that a substantial showing is necessary to restrict access." W.D.N.Y. Loc. R. Civ. P. 5.3(a); *see also In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) ("[C]ourts have recognized a strong presumption of public access to court records. This preference for public access is rooted in the public's first amendment right to know about the administration of justice.") (citation omitted). If a party makes a "proper showing," the Court may seal the case in its entirety or seal specific documents. W.D.N.Y. Loc. R. Civ. P. 5.3(b); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) ("sealing of [such] documents may be justified only with specific, on-the-record findings that sealing is necessary

14

to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.").

The Second Circuit "has emphasized that a district court 'must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need' to seal court records." *Wheeler-Whichard v. Doe*, No. 10-CV-0358S, 2010 WL 3395288, at \*5 (W.D.N.Y. Aug. 25, 2010) (quoting *Orion Pictures*, 21 F.3d at 27) (internal citation omitted).

Plaintiff has failed to meet the above standard, offering no explanation or justification for its request to seal other than that the exhibits it seeks to seal "may contain information considered sensitive" to Defendant and/or Boeing. (Esterhay Decl. at 1–2, Feb. 5, 2021, ECF No. 164-1.) Accordingly, Plaintiff's motion to seal is denied without prejudice. Plaintiff has ten days from the date of the filing of this decision and order to renew its motion, and, if no motion is made, the documents sought to be filed under seal will be electronically filed and available to the public.

## CONCLUSION

For the reasons discussed above, the Court finds that *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340 (W.D.N.Y. 2009) applies to this case regarding the scope and procedure of Plaintiff's noticed deposition of Mr. Landau, such that Plaintiff is permitted to conduct a limited-scope deposition of Mr. Landau on the following issues:

> (1) identifying the information provided to and relied upon by Mr. Landau, whether through communications with individuals or

15

review of documents, in answering the interrogatories and requests for admission;

(2) identifying the source (person or record) of that information; and

(3) non-privileged communications between Mr. Landau and his human sources about that information that occurred while investigating and answering the interrogatories and requests for admission.

The Court also finds that the common interest exception to the attorney-client privilege does not apply to communications between Mr. Landau and Boeing's former in-house counsel, thus permitting Plaintiff to depose Mr. Landau regarding their communications regarding the OMAC program.

Finally, the Court denies without prejudice Plaintiff's motion to seal Exhibits 1, 3, and 5 to Plaintiff's Response to Defendant's Brief Regarding Two Issues Impacting the Appropriate Scope of the Deposition of Mr. Joel Landau and attached to the Declaration of John D. Esterhay. (ECF No. 164.) Plaintiff has ten days after the filing of this decision and order to renew its motion, after which time, if no motion is made, the documents sought to be filed under seal will be electronically filed and available to the public.

**IT IS SO ORDERED.**

DATED:     February 17, 2021
           Rochester, New York

/s/  Mark W. Pedersen
MARK W. PEDERSEN
United States Magistrate Judge

16