UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VALVETECH, INC.,

                                        Plaintiff,                    Case # 17-CV-6788-FPG

v.
                                                                      DECISION AND ORDER

AEROJET ROCKETDYNE, INC.,

                                        Defendant.

## INTRODUCTION

On September 26, 2019, the Court entered a Decision and Order dismissing several claims from Plaintiff ValveTech, Inc.'s ("Plaintiff") Amended Complaint against Defendant Aerojet Rocketdyne, Inc. ("Defendant"). ECF No. 71. Plaintiff subsequently filed a motion seeking leave to file a Second Amended Complaint ("SAC"), which United States Magistrate Judge Mark W. Pedersen granted on April 6, 2020. ECF Nos. 95, 105.

The SAC contains four claims: one for breach of contract, two for trade secret misappropriation (one under federal law and one under California law), and replevin. ECF No. 48. Defendant now moves for summary judgment on Plaintiff's contract and trade secret claims and moves for dismissal of Plaintiff's replevin claim based upon mootness. ECF No. 189 at 11-29. For the reasons that follow, the Motion for Summary Judgment, ECF No. 184, is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted. Where disputed, the facts are taken in the light most favorable to Plaintiff.

Plaintiff engineers, designs, develops, and manufactures valves for use in aerospace manufacturing. ECF No. 106 ¶ 20. Defendant was hired to design and develop a propulsion system for the Boeing/NASA Commercial Crew Program. ECF No. 189 at 5. This system required the use of different kinds of valves, so Defendant, rather than produce all the valves in-house, sought proposals from, and engaged in discussions with, vendors. *Id.* As a part of those dealings, Defendant entered into non-disclosure agreements ("NDA") with potential vendors. *Id.*

One such vendor was Plaintiff, from which Defendant specifically sought a proposal related to a propellant isolation valve to be used in in an Orbital Maneuver and Control Program ("OMAC"). *Id.* On August 31, 2011, the parties entered into an NDA related to that proposal (the "2011 NDA"), which marked the beginning of a multi-year course of dealing, governed by the additional agreements discussed below. ECF No. 201-1 ¶ 1; ECF No. 106-4.

In March 2013, "Plaintiff was selected to develop, test, and manufacture the propellant isolation valve," and the parties subsequently executed purchase order 4410009820 (the "441 P.O."). ECF No. 189 at 5. Performance of the work under the 441 P.O. did not call for Plaintiff to deliver hardware to Defendant. ECF No. 201-1 ¶ 29. Rather, the work called for the hardware to "be designed, analyzed, manufactured, and tested in support of development." *Id.* ¶ 29.

In April 2015, Plaintiff and Defendant entered into Purchase Order 200033660 (the "200 P.O.") which "called for the delivery of propellant isolation valve hardware in early 2016." ECF No. 189 at 7; ECF No. 201-1 ¶¶ 88-91. Under the 200 P.O., Plaintiff shipped seventeen 12255-SMHFT valves for $50,495.00 each.[1] ECF No. 201-1 ¶ 116.

---

[1] SMHFT is an acronym for "service module hot fire test." ECF No. 201-1 ¶ 126.

After the seventeen 12255-SMHFT valves called for under the 200 P.O. were received by Defendant, they were "delivered to Boeing for use in a service module hot fire test . . . and a pad abort test ("PAT")."  ECF No. 201-1 ¶ 125.

Effective May 2017, the parties entered into another non-disclosure agreement, the "2017 NDA."  ECF No. 201-2 at 20.  The 2017 NDA, like the 2011 NDA, included language concerning the use of Plaintiff's proprietary information:

> A Party receiving Proprietary Information from the other in support of the Purpose defined above, agrees to treat such Proprietary Information as proprietary for the duration of the Protection Period, and will handle such Proprietary Information with the same degree of care, but no less, than a reasonable degree of care, that it uses to handle its own proprietary information of alike nature. Such information shall not be disclosed, duplicated, or used in analysis, design, processes, production or otherwise, in whole or in part, other than for the Purpose noted above or as otherwise contemplated by this Agreement, and then only by those employees, consultants and contract labor of the Receiving Party who have a need-to-know and have been placed under a duty of confidentiality and limited use consistent with this Agreement.
>
> All Proprietary Information furnished hereunder (including copies, abstracts, or derivatives thereat) shall remain the property of the disclosing Party, and shall be returned to it or promptly destroyed by the receiving Party at the disclosing Party's request, except that the receiving Party may keep one copy in the files of its internal Legal Department (or. if the receiving Party has no such department staffed by one or more attorneys, in the files of its outside attorneys) to be used solely for purposes of documenting compliance with the terms of this Agreement.

ECF No. 201-10 at 4-7.

Plaintiff asserts that Defendant began surreptitiously pursuing its own internal design for the main valve "in parallel" with Plaintiff's contracted-for design in February 2017—a fact which Defendant disputes as based upon inadmissible evidence and "vague and confusing."  ECF No. 202-1 at 15.  Plaintiff further contends that, in July 2017, Defendant informed Plaintiff that it was terminating Plaintiff from further involvement in the OMAC program.  ECF No. 106 at 8; ECF No. 201-2 at 9.  Defendant disputes this fact as well.  ECF No. 202-1 at 21.

**LEGAL STANDARD**

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

**DISCUSSION**

**I.    Choice of Law**

In its prior Decision and Order, the Court determined that California law applies to all of Plaintiff's claims except its replevin claim, to which New York law applies. ECF No. 25 at 4-8, 13.

**II.   First Claim: Breach of Contract**

The first cause of action in Plaintiff's SAC is breach of contract. ECF No. 106 at 10-14. Defendant moves for summary judgment on Plaintiff's breach of contract claims. ECF No. 189 at 14-17.

**A.  Agreements not Pled in SAC**

In response to Defendant's motion for summary judgment, Plaintiff attempts to rely on three contracts which were not pled in the SAC: the 200 P.O., 2016 NDA, and the so-called

4

Valvetech Terms & Conditions ("Valvetech T&Cs").  *See* ECF No. 201-2 at 13-20.  Plaintiff asserts that Defendant "omit[ted]" these "key contracts" from its summary judgment motion.  *Id.* at 13.  In its reply brief, Defendant argues that it is "[P]laintiff's obligation to plead its claim" and, as such, Plaintiff's attempt to now claim breaches of "up to six overlapping contracts" is improper.  ECF No. 202 at 5 (emphasis omitted).  Defendant requests that the Court "reject these new and improper theories" and solely consider the "three pleaded contracts."  *Id.* at 6 (internal quotation marks omitted).

"[T]he complaint must identify the specific provision of the contract allegedly breached by the defendant."  *Misha Consulting Group, Inc. v. Core Education and Consulting Solutions, Inc.*, No. C–13–04262–RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013).  While "[i]dentifying the specific provision of the contract allegedly breached by the defendant does not require the plaintiff to attach the contract or recite the contract's terms verbatim," it is necessary that "the plaintiff . . . identify with specificity the contractual obligations allegedly breached by the defendant."  *Id* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Moreover, "[a] complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion."  *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 CV 10452(GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004).

Here, the SAC specifically alleged breaches of the 441 P.O. (referred to in the SAC as the "2014 Purchase Order"), 2011 NDA, and 2017 NDA.  ECF No. 106 at 11-14.  Though Plaintiff's opposition brief asserts that Defendant's memorandum of law in support of summary judgment "omits several key contracts," it is *Plaintiff* who must specifically allege in its complaint the contracts, and specific contractual provisions, which give rise to the obligations allegedly breached

by Defendant.  *See Misha Consulting Group, Inc.*, 2013 WL 6073362, at *1.  Moreover, Plaintiff cannot amend the SAC by raising "new facts and theories"—*i.e.*, additional contracts and contractual provisions which were allegedly breached—in its opposition papers.  *See Southwick Clothing LLC*, 2004 WL 2914093, at *6.

Plaintiff attempts to circumvent these principles in several ways.  First, it argues with respect to the 200 P.O. that Defendant "concedes [it] is a valid contract."  ECF No. 201-2 at 17.  However, Defendant cites the 200 P.O. primarily to argue that that agreement's integration clause precludes reliance on any contemporaneous NDAs as sources of contractual rights and obligations—an argument which the Court addresses below.  ECF No. 189 at 11-12.  In fact, in the section of Defendant's brief where it specifically argues that summary judgment is warranted on Plaintiff's breach of contract claim, Defendant, understandably, seeks summary judgment only as to those contracts that are pled in the SAC: the 441 P.O., 2011 NDA, and 2017 NDA.  *See* ECF No. 189 at 14-17.

Second, regarding the unpled Valvetech T&Cs, Plaintiff argues that Defendant's memorandum in support of summary judgment "completely ignores" these terms despite the fact that they were "identified in [Plaintiff's] discovery responses."  ECF No. 201-2 at 20.  Additionally, Plaintiff argues that Defendant "was specifically aware of these provisions at the time it misappropriated [Plaintiff's] designs."  *Id.*  Nonetheless, it remains *Plaintiff's* obligation to plead the contracts and specific provisions which were allegedly breached.  *See Misha Consulting Group, Inc.*, 2013 WL 6073362, at *1.  Thus, this argument is unavailing.

Third, Plaintiff argues that it should be permitted to rely on the 2016 NDA as a source of breach at this juncture for two reasons.  In the first instance, Plaintiff notes that the SAC "referred generally to 'NDAs' in recognition that additional relevant contracts might be identified during

discovery." ECF No. 201-2 at 19.  In support of this, Plaintiff cites Paragraph 58 of the SAC, which states that "[Plaintiff] has at all times complied with its obligations under the NDAs and under the parties' contracts." ECF No. 106 at 11.  The Court does not read this paragraph as asserting that "additional relevant contracts might be identified during discovery," and even if it did, Plaintiff should have moved to amend the operative complaint once it identified additional agreements as a source of contractual obligations at issue, since it is Plaintiff that must plead the contracts and specific provisions which were allegedly breached. *See Misha Consulting Group, Inc.*, 2013 WL 6073362, at *1.

Plaintiff also argues that, because Paragraph 59 of the SAC stated that "Defendant has breached provisions of the contracts repeatedly, *including at least* the examples provided as follows," Plaintiff argues that its allegations "were non-limiting to the contracts specifically identified at that time." ECF No. 106 at 11; ECF No. 201-2 at 19.  Regardless of whether it was Plaintiff's intention for the SAC's allegations to be "non-limiting" as to which contracts Defendant allegedly breached, it was still Plaintiff's responsibility to plausibly allege sufficient facts to establish a breach of contract claim as to each contract that Defendant allegedly breached—or timely move to amend pursuant to the Court's scheduling orders and Federal Rule of Civil Procedure 16.[2] *See Misha Consulting Group, Inc.*, 2013 WL 6073362, at *1.  Plaintiff's mere allusion to other contracts does not meet that standard.

Accordingly, for all of the reasons stated above, Defendant's motion for summary judgment is GRANTED as to the 200 P.O., 2016 NDA, and Valvetech T&Cs because Plaintiff

---

[2] Indeed, in keeping with this pattern, Plaintiff's opposition brief attempts to leave the door open to the identification of additional breaches with respect to the 2011 NDA, asserting that "[Defendant] breached *at least* the following provision." ECF No. 201-2 at 19 (emphasis added).  Plaintiff cites no legal authority that renders it entitled, without leave of court, to raise new theories of breach after discovery and summary judgment has passed.

may not rely on unpled agreements as sources of rights and obligations.[3]   The Court turns next to the remaining agreements which were properly pled in the SAC.

### B.  2011 NDA

The first agreement the parties entered into was the 2011 NDA on August 31, 2011 (the "2011 NDA").  ECF No. 201-1 ¶ 1; ECF No. 106 ¶¶ 71-72, 76.  Plaintiff alleges that Defendant breached paragraphs 1(a) and 1(c) of the 2011 NDA.  ECF No. 106 at 12-13.  Paragraph 1(a) is a "safeguarding" provision which states that:

> A party receiving Proprietary Information from the other agrees to treat such Proprietary Information as proprietary for the duration of the Protection Period, and will handle such Proprietary Information with the same degree of care, but no less than a reasonable degree of care, that it uses to handle its own proprietary information of a like nature.  Such information shall not be disclosed, duplicated, or used in analysis, design, processes, production or otherwise, in whole or in part, other than for the purposes noted above or as otherwise contemplated by this Agreement, and then only by those employees and agents of the Receiving Party who have a 'need to know' and have been placed under a duty of confidentiality and limited use consistent with this Agreement.  The receiving Party shall not be responsible, however, for unauthorized disclosures of Proprietary Information by persons who are or have been in its employ unless such Party failed to treat such Proprietary Information as proprietary and handle it with the required degree of care.

ECF No. 106-4 at 3.

Paragraph 1(c) is a provision entitled "control" which provides that:

> All Proprietary Information furnished hereunder (including copies or abstracts thereof) shall remain the property of the disclosing Party, and shall be returned to it or promptly destroyed by the receiving Party at the disclosing Party's request, except that the receiving Party may keep one copy in the filed of its internal Legal Department (or, if the receiving has no such department staffed by one or more attorneys, in the files of its outside attorneys) to be used solely for purposes of documenting compliance with the terms of this Agreement.

---

[3] As Judge Pedersen noted in his July 13, 2020 scheduling order, "the time to amend the pleadings has passed."  ECF No. 183 at 1.  Indeed, the last deadline to amend pleadings in this case was February 7, 2020.  *See* ECF No. 83 at 2. Of course, Plaintiff is free to move for leave to amend under Federal Rules of Civil Procedure 15, but Plaintiff would have to demonstrate why it should receive an extension of the prior deadline under Federal Rule of Civil Procedure 16, and Defendant would be entitled to an opportunity to articulate how it would be prejudiced if such an amendment were permitted.

*Id.*

The 2011 NDA defines "Proprietary Information" to include the following:

(i) in the case of written, digitized or recorded information, the disclosing Party designates as proprietary by appropriate stamp or legend at the time of first disclosure, and (ii) in the case of information which is orally or visually disclosed to the receiving Party, is identified as proprietary at the time of disclosure, is reduced to or identified in writing and marked as proprietary, and forwarded to the receiving Party within 30 days of its first oral or visual disclosure.

*Id.* ¶ 8.  It also delineates what "Proprietary Information" does *not* include, stating:

Proprietary Information shall not include information: a. Which was known to the receiving Party prior to its receipt from the disclosing Party; or b. Which was independently developed by an employee of the receiving Party who did not have access to the disclosing Party's information or any materials derived therefrom; or c. Which is or becomes public knowledge without the fault of the receiving Party; or d. Which is or becomes available to a third party from the disclosing Party on an unrestricted basis; or e. Which has been lawfully obtained by a Party, from a source other than the other Party, without restrictions on disclosure.

*Id.*

Defendant advances several grounds upon which it believes that summary judgment is warranted as to any alleged breach of the 2011 NDA.  The Court considers these arguments in turn in the subsections below.

### 1. Integration

First, Defendant argues that, "as a matter of contract interpretation, the 2011 NDA has no relevance to the issues in dispute."  ECF No. 189 at 13, 16.  This is so, Defendant contends, because the 441 P.O. and 200 P.O. "each . . . included an integration clause."  *Id.*  Thus, it is Defendant's position that "[a]s a matter of law, the 2011 NDA can have no relevance to the obligations imposed and rights granted in those purchase orders" and cannot be relied upon "to alter the parties' rights and obligations."  *Id.*

In response, Plaintiff argues that Defendant's theory is "completely at odds with the General Provisions incorporated by reference into [the P.O.'s] that specifically ***require*** a concurrent 'proprietary information or nondisclosure agreement' alongside [P.O.'s] to govern the exchange of proprietary information, rather than extinguish them." ECF No. 201-2 at 14 (emphasis in original).  The Court agrees with Plaintiff.

In interpreting a contract, "a court reads a contract's language to understand its plain meaning as a layperson ordinarily would," absent some "technical or special" meaning intended by the parties. *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 955 (E.D. Cal. 2016).  Moreover, "[l]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 977 (E.D. Cal. 2018).

As a general rule, "a contract's written terms alone control its interpretation." *Lennar Mare Island, LLC*, 176 F. Supp. 3d at 962.  Thus, "when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing." *Copart, Inc.*, 339 F. Supp. 3d at 977.  This so-called "parol evidence rule" is one "of substantive law, not of procedure" and is "founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement." *Id.*

However, the parol evidence rule "applies only to an integrated written agreement." *Id.* To determine whether a written agreement is "integrated," courts consider whether it is "a complete and final embodiment of the terms of an agreement or in other words, if it is intended by the parties as a final expression of their agreement." *Lennar Mare Island, LLC*, 176 F. Supp. 3d at 962 (citations & internal quotation marks omitted).  "Whether a written contract is an integration is a question of law." *Id.*

Courts look to the following factors in analyzing whether an agreement is integrated:

> (1) the presence of an integration clause; (2) the contract's language and apparent completeness or incompleteness; (3) if a party argues another contract exists, whether that agreement's terms contradict those of the written contract; (4) whether the alleged additional agreement would naturally be made as a separate agreement; and (5) whether extrinsic evidence might confuse the jury.

*Id.* at 962-63.

Here, Defendant is correct that the 441 P.O. and 200 P.O. each contained an integration clause. There were several versions of the 441 P.O. The operative version of 441 P.O. includes the following clause which Defendants point to as that agreement's "integration clause":

> Any terms proposed in Supplier's acceptance of Buyer's offer or in any other form of Supplier that add to or differ from the terms herein are hereby objected to. Any such proposed terms shall be void and the terms of this order shall constitute the complete and exclusive statement of the terms of the contract. If this order has been issued by Buyer in response to an offer and if any of the terms herein are additional to or different from any terms of such offer, then the issuance of this order by Buyer shall constitute an acceptance of such offer subject to the express conditions that Supplier assent to such additional and different terms herein and acknowledge that this order constitutes the entire agreement between the parties and Supplier shall be deemed to have so assented and acknowledged unless Supplier notifies Buyer in writing to the contrary within thirty(30) calendar days of receipt of this order.

ECF No. 189 at 12 (citing ECF No. 190 at 8).[4] The Court reads the plain language of this provision to be limited to terms proposed in the Supplier's *acceptance* that add or differ from the terms of the General Provisions—not to prior NDAs. More importantly, as Plaintiff argues, the General Provisions also contain the following clause:

> Seller shall not provide any proprietary information of Seller or any third party to Aerojet Rocketdyne, Inc. without prior execution of a proprietary information or nondisclosure agreement by the parties. Any knowledge or information that Seller has disclosed or may disclose to Aerojet Rocketdyne, Inc. incident to the award of this Contract or the performance of the Contract shall not, unless otherwise agreed in writing by Aerojet Rocketdyne, Inc., be considered confidential or proprietary to Seller and shall be acquired free from any restriction other than restrictions that

---

[4] Plaintiff attached Version 3 to its SAC but Version 4 is the version that was ultimately countersigned. ECF No. 189 at 7; ECF No. 190 at 8.

may be imposed by intellectual property considerations such as patent rights, copyrights, and trademarks.

ECF No. 201-2 at 14 (citing ECF No. 201-36 at 3).  Thus, the 441 P.O. expressly contemplated that an NDA would be in place notwithstanding the purported integration clause.  The plain language of this provision manifests the parties' intention to permit (and, indeed, encourage) the execution of a separate nondisclosure agreement relating to any proprietary information disclosed in connection with the award of the contract.  Defendant offers no alternative interpretation of this provision, and the general language from the purported "integration" clause that Defendant cites cannot be read to supersede or conflict with this unambiguous statement of intent relating to the existence and continuing validity of any separate nondisclosure agreement.

Accordingly, Defendant's motion for summary judgment as to the 2011 NDA on the basis of this purported integration clause in the 441 P.O. is DENIED.

In addition, the General Provisions, incorporated by reference into the 200 P.O. and 441 P.O. contained the following integration clause:[5]

> The Contract constitutes the entire agreement of the parties and integrates, merges, and supersedes all prior offers, negotiations, agreements, understandings, and arrangements between the parties related to the subject matter of the Contract.  The Parties agree that this Contract has been drafted by both.

ECF No. 190 ¶ 100.  While this clause is certainly more emphatic than the narrower clause discussed with respect to the 441 P.O., the 200 P.O.'s General Provisions also contained the following clause:

> Seller shall not provide any proprietary information of Seller or any third party to Aerojet Rocketdyne, Inc. without prior execution of a proprietary information or nondisclosure agreement by the parties.  Any knowledge or information that Seller has disclosed or may disclose to Aerojet Rocketdyne, Inc. incident to the award of this Contract or the performance of the Contract shall not, unless otherwise agreed

---

[5] Defendant only raises this clause with respect to the 200 P.O. but it appears in the General Provisions incorporated into the 441 P.O. as well.  *See* ECF No. 189 at 12; ECF No. 201-36 at 3.  The Court's reasoning below with respect to this language applies with equal force to the 441 P.O. and its General Provisions.

> in writing by Aerojet Rocketdyne, Inc., be considered confidential or proprietary to Seller and shall be acquired free from any restriction other than restrictions that may be imposed by intellectual property considerations such as patent rights, copyrights, and trademarks.

ECF No. 201-37 at 5. Thus, even though the integration clause in the General Provisions. contains a more unambiguous integration clause, it, like the 441 P.O. integration clause discussed above, expressly contemplated that the parties could execute and maintain separate nondisclosure agreements relating to proprietary information disclosed in connection with the purchase contract. Reading this provision together with the integration clause, it is clear that the parties intended to treat the issue of nondisclosure of proprietary information as a distinct "subject matter" that would not be governed by the 200 P.O. or its integration clause. ECF No. 190 ¶ 100. Instead, any such rights or duties relating to nondisclosure would be governed, if at all, by a separate "proprietary information or nondisclosure agreement." ECF No. 201-37 at 5. Again, Defendant offers no alternative interpretation of this provision.

Because the integration clause in the General Provisions incorporated into the 200 P.O. does not extinguish the 2011 NDA, Defendant's motion for summary judgment as to the 2011 NDA on the basis of the integration clause in the 200 P.O. is DENIED.

### 2. Scope

Next, Defendant raises arguments related to the scope of the 2011 NDA. First, it argues that the 2011 NDA is "irrelevant" because it "stated that the 'Purpose' of making disclosures [was] [t]o support discussions regarding Requests for Information, Requests of Quotation, Requests of Proposal, and/or purchase of components, systems and/or engineering services." ECF No. 189 at 13 (emphasis in original). In other words, Defendant asserts that the 2011 NDA simply governed "discussions" during the request for proposal process and did not "cover everything provided during performance of the [P.O.'s]." ECF No. 202 at 8 (emphasis in original). Thus, Defendant

contends, the 2011 NDA was not "terminated" by the P.O.'s, rather it "cover[ed] the parties' <u>discussions</u>, which may result in purchase orders." *Id.* (emphasis in original).

This argument fails. While Defendant is correct with respect to how the 2011 NDA defines its "purpose," nothing in the operative language of the 2011 NDA limits its protection only to disclosures occurring during "discussions" prior to performance.

The 2011 NDA defines "Proprietary Information" as:

> [I]nformation disclosed by Aerojet in the Aerojet Field or by Company in the Company Field, that the disclosing Party desires to protect against unrestricted disclosure and unauthorized use and which (i) in the case of written, digitized or recorded information, the disclosing Party designates as proprietary by appropriate stamp or legend at the time of first disclosure, and (ii) in the case of information which is orally or visually disclosed to the receiving Party, is identified as proprietary at the time of disclosure, is reduced to or identified in writing and marked as proprietary, and forwarded to the receiving Party within 30 days of its first oral or visual disclosure.

ECF No. 106-4 at 2. It also delineates what "Proprietary Information" does *not* include, stating:

> Proprietary Information shall not include information: a. Which was known to the receiving Party prior to its receipt from the disclosing Party; or b. Which was independently developed by an employee of the receiving Party who did not have access to the disclosing Party's information or any materials derived therefrom; or c. Which is or becomes public knowledge without the fault of the receiving Party; or d. Which is or becomes available to a third party from the disclosing Party on an unrestricted basis; or e. Which has been lawfully obtained by a Party, from a source other than the other Party, without restrictions on disclosure.

*Id.* Moreover, the 2011 NDA defines the "Company Field" of disclosure as: "Technical and business information in support of Requests for Information, Requests of Quotation, Requests for Proposal, *and/or purchase of components, systems, and/or engineering services.*" *Id.* (emphasis added). The 2011 NDA set forth a Protection Period of 10 years from the date following the expiration or termination of its 5-year Term, for a total period of protection of 15 years (barring termination). *See* ECF No. 106 at 2.

Thus, the plain meaning of the 2011 NDA is unambiguous in that it is not limited to disclosures occurring prior to performance. For one thing, the 2011 NDA expressly continued for a fifteen-year period, far beyond the period of the parties' pre-performance "discussions." Moreover, "Proprietary Information" was defined to include "Technical and business" information disclosed not only in connection with pre-purchase discussions—*i.e.*, "Requests for Information, . . . Quotation, . . . [or] Proposal,"—but also in connection with purchase and performance—*i.e.*, "purchase of components, systems, and/or engineering services." *See* ECF No. 106-4 at 1. Contrary to Defendant's argument, the agreement did not limit the scope of the Proprietary Information to the defined "purpose" of the agreement. Thus, Defendant's motion for summary judgment on this basis is DENIED.[6]

### 3. Timing of Disclosure

Finally, Defendant argues that "the 2011 NDA expressly excludes information already 'known to the receiving Party'; that 'becomes public knowledge with the fault of the receiving

---

[6] The Court agrees with Defendant that the 2011 NDA does not cover *all* information that Plaintiff simply views as confidential or proprietary. *See* ECF No. 189 at 14 ("ValveTech's position that the 2011 NDA applies regardless of the form of the disclosure and regardless of whether a proprietary notice was provided is untenable."). Information is only considered proprietary, and thus covered by the 2011 NDA, if it is properly identified as such at the time of disclosure. *See* ECF No. 106-4 at 2. Even granting that, however, Defendant has failed to articulate why a "later-sold physical product[]" could not come within the scope of the 2011 NDA, so long as it is properly identified as proprietary. ECF No. 189 at 14. A physical item, just like a schematic or blueprint, is capable of "visually disclos[ing]" information that "the disclosing Party desires to protect against unrestricted disclosure and unauthorized use." ECF No. 106-4 at 2. Defendant admits as much. *See* ECF No. 202 at 12 (noting that "trade secrets" may be "revealed by opening up the purchased valves").

The only information that Defendant expressly argues were not properly marked are the "Packing List and Acceptance Data Package . . . sent with Shipment No. 32290," the package sent with "Shipment No. 32556," and two valves set as a part of Shipment No. 32290. ECF No. 201-1 at 32, 34. Plaintiff responds that the cover page of the packages incorporated by reference Plaintiff's "Terms & Conditions," which made clear that all of Plaintiff's "Intellectual Property rights" constitute "Confidential Information" under applicable nondisclosure agreements. ECF No. 201-9 at 9; *see also* ECF No. 192-26 at 2. Although Defendant argues that it never "agreed" to those Terms & Conditions, the relevant question, for purposes of determining the applicability of the 2011 NDA, is simply whether such incorporation by reference sufficiently "designates" or "identifies" the information in the package as proprietary. Defendant does not develop any argument on that issue, and the Court need not do so on its behalf. *See United States v. Zannino*, 895 F.3d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

party,'" ECF No. 189 at 14, and that there was a "gap" in NDA protection "between the 2011 NDA's expiration in August of 2016 and the 2017 NDA's execution in May of 2017." ECF No. 189 at 16. In response, Plaintiff argues that 2011 NDA's Protection Period remains in effect today and that no gap existed. ECF No. 201-2 at 15. The Court agrees.

Though the stated Term of the 2011 NDA is "5 year(s) following the Effective Date," which is August 31, 2011, the Protection Period of the agreement is "10 years following the expiration or termination of the Term." Accordingly, the plan language of the 2011 NDA indicates that the protection period extends through August 31, 2026. Thus, Defendant's motion for summary judgment based upon this argument is DENIED.

### C. 441 P.O.

Plaintiff alleges in the SAC that Defendant breached the provision that "proprietary data cannot be distributed without the written consent of [Plaintiff]" when Defendant "sent [Plaintiff's] valve to Boeing without seeking permission of [Plaintiff] before doing so." ECF No. 106 at 11. Defendant moves for summary judgment on this "sole act of breach under the 441 P.O. alleged in the SAC." ECF No. 189 at 14. Defendant argues that Plaintiff has failed to allege a cognizable breach of the 441 P.O., arguing, *inter alia*, that "the 441 P.O. was directed solely to design and development," thus "[n]o hardware was delivered under that purchase order." ECF No. 189 at 14.

In response, Plaintiff agrees with Defendant that the 441 P.O. "'had no deliverable hardware to the Buyer' and 'was directed to an earlier stage' of development." ECF No. 201-2 at 15. In fact, Plaintiff asserts that "[r]elatively little information (and none of the finalized valve designs or acceptance data packages) was exchanged under the [441 P.O.] before the [200 P.O.] was entered in 2015." *Id.*

16

As Defendant asserts in its reply, these admissions "substantially vitiates [Plaintiff's pleaded claims." ECF No. 202 at 8 (emphasis in original). Though Plaintiff argues against Defendant's interpretation of the grant of rights from the 441 P.O., *see* ECF No. 201-2 at 16, that argument does not solve the key issue identified by Defendant: it is Plaintiff that "must show a legally cognizable breach of an obligation owed to [it]." ECF No. 202 at 9 (emphasis in original). Thus, as Defendant contends, the fact that Defendant argues that certain contractual language "negat[es] an alleged breach" does not shift the burden that Plaintiff must allege a cognizable breach in the first place. ECF No. 202 at 9.

The sole breach of the 441 P.O. raised in the SAC—that Defendant "sent a [Plaintiff] valve to Boeing without seeking permission of [Plaintiff] before doing so"—is undermined by Plaintiff's admission that that the 441 P.O. "'had no deliverable hardware to the Buyer." ECF No. 201-2 at 15. Accordingly, Defendant's motion for summary judgment is GRANTED as to Plaintiff's breach of contract claim premised on a breach of the 441 P.O.[7]

### D. 2017 NDA

Defendant seeks summary judgment on any breach of contract claims arising under the 2017 NDA on the same grounds as the 2011 NDA. *See* ECF No. 189 at 14, 16-17. The Court's analysis with respect to the 2011 NDA applies with equal force to the 2017 NDA, thus summary judgment is DENIED as to breach of contract claims arising under the 2017 NDA on the same

---

[7] To the extent Plaintiff would argue that the "language added in Version 4 of the [441 P.O.]" which it asserts "does not give [Defendant] permission to use [Plaintiff's confidential information in the design of a competing valve," *see* ECF No. 201-2 at 16, is the source of Defendant's contractual obligations which Defendant breached, such an argument would fail. It is axiomatic that "[a] complaint cannot be amended merely by raising new facts and theories in plaintiff's opposition papers, and hence such new allegations and claims should not be considered in resolving the motion." *Southwick Clothing LLC*, 2004 WL 2914093, at *6; *see also Esebag v. Whaley*, No. LA CV18-08446, 2020 WL 7414734, at *7 (C.D. Cal. Sept. 8, 2020) ("Because summary judgment is not a procedural second chance to flesh out inadequate pleadings, . . . courts will not grant or deny summary judgment based on unpled theories or claims." (citation & internal quotation marks omitted)); *Muhammad v. Wal-Mart Stores East, L.P.*, No. 10–CV–6074–CJS, 2012 WL 3201668, at *7 (W.D.N.Y. Aug. 2, 2012).

grounds as Section I.A, *supra*.  However, Defendant raises one additional argument with respect to the 2017 NDA that requires further analysis.

Defendant argues that summary judgment is warranted as to breach of contract claims arising under the 2017 NDA because "[n]othing in the 2017 NDA states that its terms applied to previously executed purchase orders."  ECF No. 189 at 14.  In response, Plaintiff contends that it may maintain a breach of contract claim under the 2017 NDA because "[a]t a minimum, all of the valves used in the Boeing PAT test and their accompanying data packages were shipped after the execution of the 2017 NDA."  ECF No. 201-2 at 20 (citing ECF No. 201-46 at 4).  In its reply, Defendant does not dispute this assertion.  *See* ECF No. 202 at 7-8.  Thus, summary judgment is DENIED and Plaintiff may maintain its breach of contract claims arising under the 2017 NDA as to breaches that may have occurred after the execution of that agreement.

## II.    Second and Third Claims: Trade Secret Misappropriation

Plaintiff's second and third claims are for trade secret misappropriation: it brings one claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839, *et seq.*, and one under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426.1, *et seq.*

> The elements of a misappropriation of trade secrets claim under [DTSA] and [CUTSA] are essentially the same.  Under either statute, the owner of "information" that the owner has made "reasonable" efforts to keep secret and which derives independent economic value from not being generally known to other persons, must show the defendant's wrongful acquisition, disclosure, or use thereof.

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018) (quotation marks, alterations, and citations omitted).

Plaintiff specifically identified the alleged misappropriated trade secrets at issue in its "Trade Secret Disclosure Filed Under Seal."  ECF No. 74.  In that document, Plaintiff identified

trade secrets related to its main valve, latch solenoid, pilot valves, and bellows as the basis for its trade secret claims.  *See* ECF No. 74 at 2-4.

More specifically, Plaintiff identified the following trade secrets related to its main valve: (1) the primary design of Plaintiff's main valve; (2) "the process for configuring and stabilizing the Teflon within [the Teflon Seat Design] configuration" for the main valve; (3) the Poppet Tooth "configuration and/or design within the main valve" which is unique in its "tooth-like" design and configuration; (4) "the surface finish" which is "unique in its configuration and process"; and (5) the Retainer Seal, which is a "dynamic seal" and has a "design, placement, materials and functioning within the overall valve design [which] constitute[s] trade secrets".  *Id.* at 2-3.

With respect to the latch solenoid, Plaintiff identified the following trade secrets: (1) "a center guide which is integrated and made part of a Latch Solenoid, constituting a trade secret" because "[t]he design and functionality of the center guide is unique"; (2) "the combination of materials and heating are unique and are the only combination providing the necessary performance"; (3) the center guide's design is "unique in controlling positioning"; and (4) "[t]he method to maintain clearance is unique and its matching is unique and confidential."  *Id.* at 3-4.

Regarding the pilot valves, Plaintiff identified the following trade secrets: (1) "[t]he use of remote pilot valves in conjunction with the main valve constitutes a trade secret, as well as the interface between the pilot valve and main valve"; and (2) "the placement of the Teflon Seat . . . and Poppet Tooth configuration placement and use in the overall design is a trade secret."  *Id.* at 4.

As for the bellows, Plaintiff identified the following as its trade secrets: "[t]he use of the bellows within the valve and/or pilot valve system is a unique and confidential design," used solely by Plaintiff and designed "to meet compression requirements."  *Id.*

In addition to identifying its trade secrets which were allegedly misappropriated, Plaintiff attached an exhibit identifying approximately 475 documents "that Defendant possessed prior to being placed in escrow . . . which contain [the] trade secret information" set out in Plaintiff's trade secret disclosure.  ECF No. 74 at 6-39.

Defendant moves for summary judgment on Plaintiff's trade secret claims, raising several arguments which the Court considers in turn below.

### A.  Secrecy

Defendant argues that the "secrecy prong" of Plaintiff's trade secret claims "rel[y] upon the 2011 and 2017 NDAs" and, "under a proper interpretation of the parties' agreements, the 441 P.O. and the 200 P.O. each exclusively controls the rights and obligations between the parties thereunder."  ECF No. 189 at 18.  This argument fails because, as ruled in Sections II.B and II.D above, the plain language of the 441 P.O. and 200 P.O. each contemplates that an NDA would be in place alongside the purchase order.  Thus, Defendant's motion for summary judgment on Plaintiff's trade secret claims based upon the fact that such claims rely upon the 2011 and 2017 NDAs is DENIED.

Defendant's further press this issue, arguing that "even if the 2011 and 2017 NDAs apply (*i.e.*, despite the integration clauses contained in the 441 P.O. and the 200 P.O), [Plaintiff] waived secrecy over its alleged trade secrets by: (1) permitting the disclosure of its Critical Design Review (CDR) to Boeing; (2) selling valves to [Defendant] without restriction; and (3) placing its alleged trade secret information (*e.g.*, cross-sections of the seat design, center guide and dynamic seals) on the public docket."  ECF No. 189 at 18-19.  The Court considers each argument in turn.

In response to the first argument, Plaintiff contends that the 2013 CDR presentation to Boeing contained "only high-level information about certain aspects of the valve [Plaintiff] was

proposing in 2013, but the level of disclosure . . . is not nearly detailed enough to reproduce the full design as it existed in 2013 without the full set of more detailed drawings, the assembly instructions, and the materials."   ECF No. 201-2 at 24-25 (footnote omitted) (citing Timko Deposition, ECF No. 201-52).  Defendant does not meaningfully counter this argument in its reply. *See* ECF No. 202 at 12-13.  Accordingly, summary judgment based upon this argument is DENIED as Plaintiff has raised a genuine dispute of material fact.

"Defendant's second argument fails because, as the Court ruled above, an NDA remained in place despite the integration clause in the relevant purchase orders.  *See* Section II *supra*. Plaintiff claims that it sufficiently designated the valves as protected under the 2011 NDA by virtue of the Valvetech T&Cs accompanying the packages.  Since Defendant does not develop any argument as to why Plaintiff's action was insufficient to apply the NDA's protection, see note 6, *supra*, this argument is not grounds for judgment as a matter of law."  Finally, Defendant's third argument fails because Plaintiff's public disclosure occurred on April 4, 2020—thus, as Plaintiff contends, it "is irrelevant to misappropriation in 2016-17."  *See* ECF No. 201-2 at 25; *see also Cardio Vention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 835 (D. Minn. 2007) (applying California law and ruling that "information that become[s] publicly available after the time of the misappropriation is irrelevant to the existence of a trade secret at the time of the misappropriation.").  Accordingly, Defendant's motion for summary judgment is DENIED as to these arguments.

### B. Consent

In addition, Defendant argues that "[t]he 441 P.O. expressly granted consent to 'use, disclose and reproduce [Plaintiff's] Proprietary Information and Materials, and make derivative works thereof, to fulfill [Defendant's] obligations under contract[.]"  ECF No. 189 at 18; ECF No.

192-11 at 5.  Thus, according to Defendant, its "conduct . . . fails to meet the statutory definition of misappropriation, which requires a lack of consent."  *Id.* (citing Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839 (5)(B)).  Moreover, Defendant argues, "the completed sales of the 1255-SMHFT valves under the 200 P.O., which were made without restriction, provided consent to use, test, resell, etc. those valves.  As such, [Plaintiff's] misappropriation claim must fail."  ECF No. 189. These arguments fail.

The relevant provision in the 441 P.O. states that "Buyer and Seller shall each use Proprietary Information and Materials of the other only in the performance of and for the purpose of this contractor *Buyer's Prime Contract for the Commercial Crew Integrated Capability (CCiCap) Base Program*."  ECF No. 192-11 at 5 (emphasis added).  However, according to Plaintiff, it was the "CCtCap program, which covered delivery of all hardware and accompanying data."  ECF No. 201-2 at 18.  In addition, Defendant's argument that the 200 P.O.'s "completed sales" was without "restriction" fails to reconcile that the relevant NDA remained in place as set forth above.  And Defendant does not assert in its brief or statement of facts that the 200 P.O. or any of the provisions incorporated therein contained the same grant of rights that form the basis for its argument with respect to the 441 P.O.  *See generally* ECF No. 189; 190.  Accordingly, the Court cannot say as a matter of law that any grant of rights under the 200 P.O. was inconsistent with the protections provided in the NDA.  Thus, Defendant's argument for summary judgment on this basis is DENIED.

### C.  "General Knowledge"

Finally, Defendant argues that summary judgment is warranted because Plaintiff has failed to "sufficiently address its burden to establish that the alleged trade secrets are outside of the 'general knowledge.'"  ECF No. 189 at 19-21.  More specifically, Defendant asserts (1) that

Plaintiff obtained patents on at least two of its alleged trade secrets—the Teflon Seat and the Center Guide; and (2) that the use of dynamic seals is not a trade secret, as confirmed by Plaintiff's technical expert. *Id.*

In response, Plaintiff raises genuine issues of material fact by pointing to the expert report of Michael Timko. Specifically, Timko opined that Plaintiff's trade secrets are not generally known and have independent economic value. *See* ECF No. 201-15 at 23-26, 201-07. Indeed, Timko addresses in his report how the patents identified by Defendant that form the basis for its argument meaningfully differ from the trade secrets at issue with respect to both the Teflon Seat and Center Guide. *See* ECF No. 201-2 at 26 (citing ECF No. 201-15; ECF No. 201-51). Thus, there is a genuine dispute of material fact as to these issues and Defendant's motion for summary judgment on this basis is DENIED.

## III. Damages

### A. Contract Damages

Defendant argues that Plaintiff's contract claim should be dismissed for failure to identify a legally cognizable damages theory. ECF No. 189 at 21. More specifically, Defendant contends that each of Plaintiff's three damages theories—expectation, reliance, and restitution—"comprises imaginary damages based on speculation divorced from any legally cognizable damages theory." *Id.* at 22.

#### 1. Expectation

Defendant argues that the expert report of Justin Blok, and his opinion that Plaintiff would have completed valve sales over the course of the next 60 years, but for Defendant's breach, is based upon Plaintiff's unilateral expectation and is fatally speculative. ECF No. 189 at 22-23 (citing ECF No. 192-39 at 47).

In response, Plaintiff asserts that Blok's determination relied on Timko's opinion "that the Boeing Starliner will have a life of 60 years—similar to the Russian Soyuz program." ECF No. 201-2 at 22 (internal citation omitted). Indeed, as Blok testified, based on Timko's report, it is not uncommon for qualified parts for human spaceflight to be used for decades. *See Id.* (citing ECF No. 201-48 at 5). Blok's testimony, coupled with Timko's report and expertise, thus raise a genuine dispute of material fact as to Plaintiff's expectation damages and summary judgment is therefore DENIED.

### 2. Reliance

Next, Defendant argues that summary judgment should be granted as to any theory of damages based upon reliance because Blok's calculation for Plaintiff's "loss" "failed to account for substantially all of the revenue that [Plaintiff] generated." ECF No. 189 at 23. In response, Plaintiff contends that this "*Daubert*-style argument" fails because against Blok's calculation of "costs that have not been reimbursed are net of any revenue or profits [that] have been realized." ECF No. 201-2 at 22 (citing ECF No. 201-48 at 13-14). Defendant does not specifically respond to this testimony in its reply. *See* ECF No. 202 at 13. The Court finds Blok's testimony is sufficient to raise a genuine dispute of material fact and summary judgment is therefore DENIED. Defendant's will have a further opportunity to challenge Blok's methodology *in limine* under *Daubert*.

### 3. Restitution

Finally, Defendant seeks summary judgment as to Plaintiff's "restitution" damages arguing, as a matter of law, that restitution is not a recoverable form of contract damages under California law. ECF No. 189 at 24. Plaintiff disputes this and asserts that California law permits

granting restitution as a remedy for breach of contract.  ECF No. 201-2 at 22.  The Court agrees with Plaintiff.

"The primary remedies for breach of contract include expectation damages and reliance damages, and when those are inadequate, restitution." *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 891 n. 7 (S.D. Cal. 2021).  "Thus, restitution merely represents a form of damages available to a plaintiff where the expectation and reliance interest prove inadequate." *Id.*

Accordingly, the Court cannot say as a matter of law that Plaintiff is precluded from recovering restitution in this case and a plaintiff may proceed to trial on multiple theories of recovery.  *See Nuwintore v. Mgmt. & Training Corp.*, No. 1:13-CV-967 AWI-JLT, 2018 WL 3491676, at *7 (E.D. Ca. July 19, 2018).  Therefore, summary judgment as to Plaintiff's restitituion damages is DENIED.

### B.  Trade Secret Damages

Defendant seeks summary judgment on Plaintiff's trade secret claims, arguing that "[t]he existence of damages is . . . a necessary element of a trade secret claims [sic]" and that Plaintiff fails "to present a cognizable damages theory."  ECF No. 189 at 24.  In response, Plaintiff asserts that "this Court in its prior ruling did not identify damages as a required element of a trade secret claim under either the CUTSA or the DTSA."  ECF No. 201-2 at 28.  Plaintiff further contends that, even if damages is an element of such claims, Defendant concedes that "actual" loss and "unjust enrichment" are available damages in trade secrets cases and that Blok calculated such damages.  *Id.*   Thus, argues Plaintiff, Defendant's arguments attacking Blok's damages calculations are "really *Daubert* arguments for a motion that [Defendant] has not made."  ECF No. 201-2 at 28.  In its reply, Defendant devotes three sentences to countering Plaintiff's damages arguments and simply reasserts that Plaintiff's "damages theories are not cognizable" and that the

availability of a future challenge to Block's methodology "does not preclude summary judgment." ECF No. 202 at 13.

The Court finds that Blok's proffered damages calculations are sufficient to raise a genuine dispute of material fact and, thus preclude summary judgment on the grounds that Plaintiff has failed to bring forth a damages theory on its trade secrets claims. Accordingly, Defendant's motion for summary judgment on this basis is DENIED.

## IV.    Fourth Claim: Replevin

Plaintiff's fourth and final cause of action is replevin. The Court previously ruled that New York law applies to this claim. To state a claim for replevin under New York law, "a plaintiff must allege that he or she owns specified property, or is lawfully entitled to possess it, and that the defendant has unlawfully withheld the property from the plaintiff[.]" *Khoury v. Khoury*, 912 N.Y.S.2d 235, 237 (2d Dep't 2010).

The thrust of Defendant's argument regarding summary judgment as to Plaintiff's replevin claim is that "the replevin claim assumes that the 2011 and 2017 NDAs, rather than the 441 P.O. and the 200 P.O., provide the return obligation, which is . . . false." ECF No. 189 at 29. However, as the Court denied Defendant's motion for summary judgment as to any breach of the 2011 NDA and 2017 NDA, Defendant's motion for summary judgment as to the replevin claim is also DENIED.[8]

### CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 184) is GRANTED IN PART and DENIED IN PART.

---

[8] The Court has also considered the various sub-arguments presented by Defendant and finds them to be either without merit or insufficiently raised to permit a ruling at this juncture. *See Zannino*, 895 F.3d at 17.

The following claims remain in this case: (1) breach of contract as to the 2011 NDA and 2017 NDA; (2) trade secret claims under CUTSA and DTSA; and (3) replevin.

IT IS SO ORDERED.

Dated: September 29, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York