UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VALVETECH, INC.,

    *Plaintiff*,

       v.

AEROJET ROCKETDYNE, INC.,

    *Defendant*.

Case No. 6:17-cv-06788-FPG

**DEFENDANT AEROJET ROCKETDYNE, INC.'S OPPOSITION TO
VALVETECH, INC.'S SUBMISSION OF UNRESOLVED OBJECTIONS
TO VIDEO DEPOSITIONS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A. ValveTech's Allegations of Misconduct Are at Best Misguided ...............................2

    B. ValveTech's Complaints Directed to Aerojet Rocketdyne's 401 and 403
       Objections Lack Merit .............................................................................................5

    C. ValveTech's Complaints Regarding Aerojet Rocketdyne's Hearsay
       Objections Lack Merit .............................................................................................7

    D. ValveTech's Complaints Regarding Aerojet Rocketdyne's Objections
       Under Rule 602 and 701/702 Lack Merit ...............................................................9

    E. ValveTech's Complaints Regarding Aerojet Rocketdyne's Privilege
       Objections Is Misplaced.........................................................................................17

    F. ValveTech's Complaints Regarding Aerojet Rocketdyne's Reliance on
       its Motion in Limine No. 2 Is Mistaken.................................................................19

    G. ValveTech's Complaints Regarding Aerojet Rocketdyne's Reliance on
       its Motion in Limine No. 4 Is Mistaken.................................................................19

    H. ValveTech's Mischaracterizes the Substance of Aerojet Rocketdyne's
       Motion in Limine No. 5 ..........................................................................................20

    I. ValveTech's Complaints Regarding Aerojet Rocketdyne's Reliance
       on its Motion in Limine No. 6 Is Mistaken............................................................21

    J. The Court Should Ignore ValveTech's Complaints Regarding Aerojet
       Rocketdyne's Mention of ValveTech Adding Additional Designations ..................21

    K. ValveTech's Criticism of Aerojet Rocketdyne's "legal conclusion"
       Objections Is Baseless............................................................................................22

    L. ValveTech's Criticisms of Aerojet Rocketdyne's Remaining
       Objections Are Baseless..........................................................................................22

    M. Counsel's Statement..............................................................................................23

III. CONCLUSION ................................................................................................................24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Richardson*,
No. 16-CV-410-WMC, 2019 WL 438386 (W.D. Wis. Feb. 4, 2019)....................................16

*Athena Cosms., Inc. v. AMN Distribution Inc.*,
No. 220CV05526SVWSHK, 2021 WL 9839091 (C.D. Cal. Nov. 16, 2021)........................16

*Cole v. Stephen Einstein & Assocs., P.C.*,
365 F. Supp. 3d 319 (W.D.N.Y. 2019)...................................................................................3

*Evans v. Port Authority of N.Y. & N.J.*,
192 F. Supp. 2d 247 (S.D.N.Y. 2002) ....................................................................................9

*Haddonfield Foods, Inc. v. S. Hens, Inc.*,
No. 2:20-CV-84-KS-MTP, 2023 WL 2355902 (S.D. Miss. Mar. 3, 2023) ...........................15

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543, 2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015)............................................17

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir.2001) (*en banc*) .....................................................................................8

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*,
434 F. Supp. 2d 810 (E.D. Cal. 2006) ..................................................................................17

*NeuroGrafix v. Brainlab, Inc.*,
No. 12 C 6075, 2021 WL 1057312 (N.D. Ill. Mar. 18, 2021)...............................................16

*Perez v. Fla. Pop, LLC*,
No. 20-14214-CV, 2022 WL 18023483 (S.D. Fla. Sept. 9, 2022)........................................15

*Rossbach v. Montefiore Med. Ctr.*,
No. 21-2084, __ F.4th __, 2023 WL 5519148 (2d Cir. Aug. 28, 2023)..................................3

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
No. 2:21-CV-00246-JRG, 2022 WL 19227587 (E.D. Tex. Sept. 1, 2022) ...........................15

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) ...................................................................................................5

*United States v. Gallego*,
913 F. Supp. 209 (S.D.N.Y. 1996), *aff'd*, 191 F.3d 156 (2d Cir. 1999)................................17

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*,
   948 F.2d 1338 (2d Cir. 1991) ..................................................................................3

*United States v. Int'l Bus. Machines Corp.*,
   90 F.R.D. 377 (S.D.N.Y. 1981).................................................................................8

*United States v. Jakits*,
   No. 2:22-CR-194, 2023 WL 3191567 (S.D. Ohio May 2, 2023)...........................15

*United States v. Tomaiolo*,
   249 F.2d 683 (2d Cir. 1957) ..................................................................................18

*Williams v. Sprint/United Management Co.*,
   464 F. Supp. 2d 1100 (D. Kan. 2006) ...................................................................17

*Wynn v. Henry Cnty. Sch. Dist.*,
   No. 1:18-CV-2638-CAP, 2021 WL 4817815 (N.D. Ga. Mar. 25, 2021)...............16

*Yue v. Chordiant Software, Inc.*,
   No. C 08-00019 JW, 2010 WL 11575579 (N.D. Cal. Apr. 22, 2010) ...................17

**Federal Statutes**

28 U.S.C. § 1927 ..........................................................................................................2,3,5

## I.     INTRODUCTION

ValveTech's motion, which is captioned a "Motion *in Limine* Submitting All Unresolved Objections to Video Deposition Testimony Pursuant to Local Rule 30(c)(4)," is confusing, unnecessary, and improper. According to ValveTech, the purpose of its submission was to comply with Local Rule 30(c)(4). That rule simply requires the party seeking to "use video deposition at trial" to "submit unresolved objections to the Court." Loc. R. Civ. P. 30(c)(4) (emphasis added). Rather than merely submitting unresolved objections, ValveTech filed an improper 22-page diatribe against its opposing counsel. The submission does not comply with the applicable rule, and therefore, should be rejected as procedurally improper.

There is no need to resolve the ultimate admissibility of the <u>hours</u> of testimony that ValveTech has designated at this stage, because ValveTech cannot feasibly or procedurally use them all during the currently scheduled trial. Instead, the objections should be relied upon as preservation for trial, with the opposing party objecting to admissibility in a timely manner (to be agreed upon by the parties with the Court's consent) before actual use. This is consistent with the statement in the notes to the Federal Rules of Civil Procedure that "[t]he listing of a potential objection <u>does not constitute the making of that objection</u> or require the court to rule on the objection; rather, it preserves the right of the party to make the objection when and as appropriate during trial." Fed. R. Civ. P. 26, notes of advisory committee on rules—1993 amendment (emphasis added), *but see id.* ("The court may, however, elect to treat the listing as a motion 'in limine' and rule upon the objections in advance of trial to the extent appropriate.").

Moreover, under the Court's Pretrial Order (Dkt. 296), the obligation to submit objections falls upon the "party that objects to the use of deposition testimony." *Id.* The Court is free to "regulate practice," *see* Fed. R. Civ. P. 83(b), and therefore, the controlling form of submission for <u>this case</u> should be based on the Court's order. It would make little sense for both the proffering

and objecting parties to submit the same objections in potentially competing forms. ValveTech's submission, therefore, appears doubly unnecessary.

The nature of ValveTech's substantive objections is also perplexing. For example, ValveTech complains that Aerojet Rocketdyne raised hearsay objections as to witnesses that it intends to call live at trial. Under Federal Rule of Civil Procedure 32, unavailability of a witness is generally a prerequisite for the use of deposition testimony during trial (albeit not for officers or for testimony under Federal Rule of Civil Procedure 30(b)(6)). Rule 32 is consistent with Federal Rule of Evidence 804, which defines when a witness is unavailable. Aerojet Rocketdyne's preservation of its objections was not remotely improper.

Next, as to the purported agreement between the parties to update their disclosures, no agreement was ever reached. And as the process of reviewing ValveTech's designations for a second time confirmed, doing so increased rather than minimized the burden.

Finally, rather than a true motion *in limine*, what ValveTech seeks is to impugn its opponent by presenting allegations of misconduct. ValveTech did not attempt to resolve its disagreements by seeking to meet and confer, instead presenting its misguided motion without notice. ValveTech's submission is not well taken. Rather than engage in an unseemly back and forth, the Court can decide for itself how to address either counsel's conduct as it deems fit.

## II.     ARGUMENT

### A.     ValveTech's Allegations of Misconduct Are at Best Misguided

ValveTech's analysis of 28 U.S.C. § 1927 begins by referring to "Aerojet's objections" and "Aerojet's actions." Dkt. No. 307 at 2-3. Rather than Aerojet Rocketdyne, the proper focus of a request for sanctions under Section 1972 is counsel, who is answerable for his or her own conduct. The undersigned counsel takes responsibility for the complained-of conduct and will address the alleged misdeeds as necessary. No repercussions should befall Aerojet Rocketdyne

even if the Court agrees with ValveTech's motion. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345-46 (2d Cir. 1991) ("§ 1927 applies only to counsel"). Indeed, the request to summarily reject Aerojet Rocketdyne's objections, regardless of their merit, would be an improper remedy for the alleged misconduct.

ValveTech's motion next presents a string of cases purporting to set out the standard for imposing sanctions. Tellingly, ValveTech failed to inform the Court (which no doubt is itself aware), that sanctions under Section 1927 or the Court's inherent powers requires an "express finding of bad faith." *Rossbach v. Montefiore Med. Ctr.*, No. 21-2084, __ F.4th __, 2023 WL 5519148, at *11 (2d Cir. Aug. 28, 2023). ValveTech also omitted the instruction that "[c]ourts in this [C]ircuit construe the statute 'narrowly and with great caution, <u>so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law</u>.'" *Cole v. Stephen Einstein & Assocs., P.C.*, 365 F. Supp. 3d 319, 336 (W.D.N.Y. 2019) (emphasis added). ValveTech did not and cannot establish that the alleged conduct resulted from bad faith rather than ordinary advocacy. And its failure to address the proper standard warrants rejection of the request.

Moreover, the underlying "purpose of this statute is 'to deter unnecessary <u>delays</u> in litigation.'" *Int'l Bhd. of Teamsters,* 948 F.2d at 1345 (2d Cir. 1991) (emphasis added) (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S. Code Cong. & Admin. News 2716, 2782). The complained-of conduct <u>caused no delay</u>. The very premise of ValveTech's motion is false. Moreover, ValveTech does not colorably argue that presenting objections "multiplie[d] the proceedings" at all, let alone "unreasonably and vexatiously."

As to the merits of ValveTech's allegations, no fair review of the record here indicates misconduct <u>by defense counsel</u>. The deposition designation process began when ValveTech served 62 pages of designations (<u>not</u> 62 pages of <u>testimony</u>, but tables of <u>page-and-line-number designations</u> extending for 62 pages). The sheer volume of designated testimony would have

3

largely disposed of the allotted time for trial without a single live witness having appeared on behalf of either party. The undersigned counsel reviewed and presented individualized objections to the designations based on the content then designated.

Unmentioned in ValveTech's submission is that, based on procedures used in prior cases before other courts, the undersigned counsel offered to simplify the process to the benefit of both parties. In particular, rather than seeking to resolve the potential admissibility of the many hundreds of separate designations out of context during pretrial, an offer was made to (with the Court's permission) disclose updated designations and objections once the proffering party has decided which portions it will actually use at trial in view of the availability of witnesses. In the undersigned counsel's experience, the many hours of deposition testimony initially designated generally result in less than an hour of actual use at trial (due in part to the availability of live witnesses and the jury's and court's preference therefor). Rather than a bad faith desire to impose burdens on the opposition (and the Court), the goal throughout has been to avoid unnecessary work, including objecting to testimony that is unlikely to see the light of day.

Indeed, the premise of ValveTech's argument – that the undersigned counsel intended for ValveTech to spend time drafting a "large omnibus motion" (ECF No. 307 at 4) – is simply wrong. As discussed in the introduction, the undersigned counsel believes ValveTech's submission was improper and unnecessary under both the Local Rules and the Pretrial Order in this case. But even if the motion itself is proper, the undersigned counsel did not and could not have foreseen the nature of ValveTech's submission or underlying effort. The local rule simply instructs that counsel should submit the objections, not a detailed motion objecting to the objections. And the Pretrial Order instructs that the objecting party (*i.e.*, Aerojet Rocketdyne) should submit the objections. Therefore, even if the Court determines that a more complicated motion was required (*i.e.*, that ValveTech's 22-page screed was somehow necessary), there can be no fair argument that the

4

undersigned counsel had a nefarious plan to impose a burden that he did not believe existed.

On this point, ValveTech's own case citations indicate the lack of merit to its argument. ValveTech did not identify a single case in which serving objections to deposition designations was deemed sanctionable conduct under Section 1927 or a court's inherent powers. In part, the disconnect appears to be ValveTech's misunderstanding of the nature of the objections, which would have been better addressed by meet and confer between the parties.

Finally, to the extent that imposing burdens on one's opponent were the intended outcome, then ValveTech's motion is a far better example than the disputed objections. In that regard, the undersigned counsel leaves it within the Court's sound discretion to address.

### B.     ValveTech's Complaints Directed to Aerojet Rocketdyne's 401 and 403 Objections Lack Merit

To the extent that ValveTech genuinely sought the reasons for Aerojet Rocketdyne's objections, the disputes regarding Federal Rules of Evidence 401 and 403 (and indeed the others addressed below) could have been addressed without resort to motion practice. Instead, ValveTech's motion is a transparent attempt to imply misconduct by its opponent. Tellingly, ValveTech complains that Aerojet Rocketdyne did not raise "contemporaneous objections to . . . relevancy . . . during the depositions." ECF No. 306 at 7. There is no requirement to preserve objections to relevance during depositions, and indeed, the need to interpose such objections would be untenable. The Federal Rules of Civil Procedure repeatedly distinguish between discoverability and admissibility. *See*, *e.g.*, Fed. R. Civ. P. 26(b)(1) ("Information within the scope of discovery need not be admissible in evidence to be discoverable."); *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("[I]t must be recognized that an abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power. The relevance or reliability of a statement or document generally cannot be determined

5

<u>until heard or read by counsel, and, if necessary, by the court or other judicial officer</u>. As a result, <u>the temptation to leave no stone unturned in the search for evidence material to a judicial proceeding turns up a vast amount of not only irrelevant but also unreliable material</u>.") (emphases added). The distinction is important here, as the scope of ValveTech's claims and evidence was materially narrowed at the summary-judgment and *in-limine* stages. Under ValveTech's view, Aerojet Rocketdyne was required to foresee which issues would remain for trial and object based on relevance to any question that could lead to testimony that would later be rendered irrelevant. That is not and cannot be the way to conduct litigation, else every question would potentially be subject to a relevance objection.[1]

As to the two specific examples given by ValveTech (ECF No. 306 at 7), a brief response should suffice.[2] With respect to Martin Bleck, ValveTech asserts that his testimony that "Aerojet's 'OMAC isolation valve design was designed to be a drop-in replacement of ValveTech's OMAC isolation valve'" must be admissible. Aerojet Rocketdyne disagrees. As has been clear throughout this litigation, ValveTech intends to try its case based on a perceived aura of misconduct rather than the merits of its remaining claims. More specifically, to the extent that ValveTech intends to imply that Aerojet Rocketdyne was precluded either by contract or by trade secret law from developing a replacement valve, the allegation would be irrelevant, and admission would be

---

[1]    In a footnote, ValveTech mistakenly asserts that Aerojet Rocketdyne's objections under Rule 403 all overlap with its objections under Rule 401. ECF No. 306 at 6 n.2. That footnote is provided to a sentence in which ValveTech concedes its falsity. To be sure, some of the passages were both irrelevant and unfairly prejudicial. However, some of the passages were merely irrelevant, whereas others were merely prejudicial. While not perfect, the undersigned counsel genuinely sought to present objections based on the content of the testimony despite the overwhelming volume of designations.

[2]    The two witnesses for whom ValveTech specifically raised its counter objection (*i.e.*, objection to Aerojet Rocketdyne's objection) are Alfred Little and Martin Bleck. Because Aerojet Rocketdyne intends to call both live during trial, the admissibility of their prior testimony is premature and likely to be moot.

prejudicial. Rather than the mere development of a replacement valve, ValveTech's <u>claims</u> require it to establish misappropriation or misuse of some aspect of ValveTech's design <u>that was protected</u> under (1) trade secret law or (2) a contract between the parties. It cannot do so based on the mere fact that Aerojet Rocketdyne developed a replacement.

Similarly, with respect to Alfred Little, ValveTech characterizes the disputed passage as showing "that he had access to ValveTech's OMAC isolation valve drawings." ECF No. 306 at 7. The specific lines identified in ValveTech's motion are not Mr. Little's testimony, but instead a question asked by counsel: "You – as your role as chief engineer on the Commercial Crew program, you had access to the drawings that ValveTech provided of its OMAC isolation valve, right?" ECF No. 307 at 84. Because that was likely in error, the answer to the identified question is addressed as well. Contrary to ValveTech paraphrase of Mr. Little's testimony, he did <u>not</u> state that he had access. Instead, he testified that he "<u>probably</u> had access to them if they were in the servers." ECF No. 307 at 84 (emphasis added). More importantly, whether Mr. Little had the access the information is not relevant. Again, as discussed above, the substantive issues presented are whether conduct by Aerojet Rocketdyne either breached a contract or misappropriated a trade secret. Theoretical access to information cannot support either claim.

### C.     ValveTech's Complaints Regarding Aerojet Rocketdyne's Hearsay Objections Lack Merit

ValveTech next complains of Aerojet Rocketdyne's hearsay objections. Here again, had ValveTech simply asked for the basis for Aerojet Rocketdyne's objections, both the parties' and the Court's time would have been far better served. Given that ValveTech chose instead to submit a motion for sanctions, the undersigned counsel will explain the bases for its hearsay objections.

As to Messrs. Bleck, Little, Ramos, and Landau, Aerojet Rocketdyne's objections were fundamentally based on the unavailability of deposition testimony in lieu of live testimony when

7

the witness is <u>available</u>. *See* Fed. R. Civ. P. 32. Although it should go without saying, hearsay is a statement that "the declarant does not make <u>while testifying at the current trial or hearing</u>" and is being used by "a party . . . to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801 (emphasis added). As discussed above, Aerojet Rocketdyne intends to present those witnesses live at trial, and therefore, they would not be unavailable under Federal Rule of Evidence 804. Moreover, playing their testimony instead of procuring their testimony live would be disruptive and confusing to the jury. The ordinary preference for live testimony, therefore, should prevail. Fed. R. Civ. P. 32(a)(4) (instructing courts to accord "due regard to the <u>importance of live testimony in open court</u>") (emphasis added); *see also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir.2001) (*en banc*) ("[L]ive testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor.") (citations and quotation marks omitted)); *United States v. Int'l Bus. Machines Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981) ("[t]here is a strong preference for live testimony, long recognized by the courts, as it provides the trier of fact the opportunity to observe the demeanor of the witness").

ValveTech asserts without explanation or support that recorded testimony may always be used for an opposing party's <u>employees</u>. ECF No. 306 at 8. What ValveTech suggests, however, would largely obviate Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804, with parties conducting trial by prerecorded deposition rather than live for the jury. No rational view of trial procedure supports that view. Moreover, Rule 32 conflicts with ValveTech's suggestion that the use of deposition testimony should turn on a witnesses' status as a mere employee. Fed. R. Civ. P. 32(a)(3) (explaining that unavailability requirement is obviated only for a "party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).").

ValveTech's error apparently flows from its mistaken belief that: (1) all of the depositions it took were of witnesses testifying on Aerojet Rocketdyne's behalf under Rule 30(b)(6); and/or

(2) that all questions posed (even of a witness so designated) would necessarily bind Aerojet Rocketdyne regardless of whether the testimony was properly elicited under that rule. Neither position has merit. Here, for example, Messrs. Bleck, Ramos, and Landau were deposed in their <u>personal capacities</u>. And although Aerojet Rocketdyne designated Mr. Little under Rule 30(b)(6), many of the questions posed exceeded the noticed topics, and therefore, were subjection to objection. A blanket ruling that all such testimony is admissible is unsupportable.

In contrast, as to witnesses who will be unavailable for trial, Aerojet Rocketdyne presented hearsay objections solely if the disputed testimony comprised hearsay within hearsay. Thus, the deposition testimony of a witness regarding a separate out-of-court statement (*e.g.*, a document or conversation) would not be admissible unless the underlying statement also falls within a hearsay exception. *See* Fed. R. Evid. 805. The burden is ValveTech's to establish admissibility, *Evans v. Port Authority of N.Y. & N.J.*, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) (explaining that the burden of establishing admissibility, including the applicability of a hearsay exception or exemption, is with the proponent of the evidence), which it has not done.

### D. ValveTech's Complaints Regarding Aerojet Rocketdyne's Objections Under Rule 602 and 701/702 Lack Merit

ValveTech next complains that Aerojet Rocketdyne objected to certain designations based on lack of personal knowledge and/or as eliciting opinion. ECF No. 306 at 9. Indeed, ValveTech asserts that "Aerojet has offered no basis for why it should get to make these types of objections at all against testimony from Aerojet's *own* witnesses, as these objections are supposed to be reserved for witnesses from the *opposing* party." *Id.* at 9-10 (emphasis in original). Tellingly, ValveTech failed to cite any statute, rule, or decision suggesting that a party cannot object to testimony elicited by questions posed to its own witnesses. Indeed, under ValveTech's view, the Court should not permit objections during cross-examination, as the questions are merely posed to

9

a party's own witness. Thus, even as to questions posed without proper foundation, or that require a fact witness to provide an opinion or speculate, under ValveTech's dubious view, objections are barred. No rational view of the Federal Rules supports that view.

Before addressing ValveTech's specific examples, a short review of the history here is warranted. As discussed above, the designation process began with ValveTech providing 62 pages of designations by page and line number. Those designations, many of which extended for multiple pages, were carefully objected to. Although ValveTech states that it narrowed its designations, that narrowing posed an additional burden on Aerojet Rocketdyne – trying to match up its original objections to passages that were different the second time around. ValveTech imposed those unnecessary burdens when both parties would have been better served preparing for trial.

The first passage cited by ValveTech is an example where its designation changes resulted in a mismatch between the objection and the designation. In its original set of designations, ValveTech identified the following testimony:

> A     I'm pausing because -- I -- I lost the screen. But I'm pausing because when you say "OMAC isolation valve," in the AR design, one valve actually has two valves built in series.  So there's two valves in series for fuel and two valves in series for oxidizer, a total of four valves.  But actually if you look at the valve, it's a single part of -- of one for fuel, one for oxidizer.
>
> Q     I think I understand.
>
> MR. PATARIU:  Can we mark what I uploaded as BOE020980 as Exhibit 5 and publish it to the chat room and share it on the screen, please?
>
> AV TECHNICIAN:  Everyone stand by.
>
> (Deposition Exhibit 5 was marked for identification.)
>
> AV TECHNICIAN:  This is a large one, so it's going to take a minute to hit the folder and the chat, but I'm going to share my screen.

> Okay.  And, Mr. Patariu, you have control of the document.
>
> Q     Maybe to talk about this first, we should go past the first couple of pages to the title page of Exhibit 5.
>
> MR. EISENBERG:  Is that a question or...
>
> MR. PATARIU:  It is not a question.
>
> MR. EISENBERG:  Okay.
>
> Q     Sorry.  There's a little bit of a lag here. But let's go to page 9, ending in -- it's BOE020988.
>
> You mentioned before you attended a delta critical design review for the CCtCap program, right?
>
> A     Yes.
>
> Q     And Exhibit 5 is -- is the -- the presentation materials for that program?

The undersigned counsel believed then (and still believes now) that the use of the term "OMAC isolation valve," and indeed how to count them, is confusing and a topic on which ValveTech did

not establish the proper foundation. For example, two main valves, two pilot valves, and two check valves provide a single "isolation valve." ValveTech subsequently changed the designation to encompass solely lines 11 through 13 from the second page. Although the undersigned counsel sought to revise the objections to correspond to the altered designations (while also preparing for the upcoming trial), the process was rendered difficult by the extent of the remaining designations and the significant modifications ValveTech made. This of course could have been addressed by a good faith attempt to resolve disagreements, an opportunity ValveTech chose not to pursue. Regardless, Aerojet Rocketdyne withdraws its objection to that designation as now presented.

Similarly, ValveTech presented the second passage (Martin Bleck Dep. Tr. at 154:16-19) as part of a larger portion of the transcript:

```
    A    Anything associated with that ValveTech valve.
I don't know whether or not their contract is there,
but I -- I'm not sure what all's in that folder.
    Q    Did you access --
    A    Or what was in it in 2013.
    Q    Okay.  Did you access that folder as part of
your work in the feed system for the Commercial Crew
program project?
    A    I am sure I opened that folder.
    Q    What did you go into that folder to retrieve?
    A    I can't recall at this time.
    Q    Would it have been drawings of ValveTech OMAC
valves?
    A    I don't recall.
    Q    Okay.  When's the last time you looked in that
```

```
folder?
    A    You know, again, I -- I don't know.
    Q    Who else --
    A    It was recently.
```

Importantly, in the passage as originally presented, Mr. Bleck repeatedly testified to his lack of recollection. ValveTech did not present anything to refresh Mr. Bleck's recollection, and indeed, the full passage, which indicated the tenuous nature of his recall, was the proper way to present the testimony rather than out of context. *See* Fed. R. Evid. 32(a)(6).

The third passage is simpler to address. There, the entire line of questioning addressed what John Cramer had written in an email. ECF No. 306 at 10. Mr. Bleck was not a proper witness to

11

testify about what Mr. Cramer had done or what he may have intended by the email. And, to the extent that ValveTech seeks to address authentication of the underlying email, a request to stipulate to authenticity would have been a far simpler means to an end than designating video from a witness who will be called at trial.

As to ValveTech's fourth and sixth passage, the questions presented related to contract termination. ECF No. 306 at 10-11. The parties have a live dispute regarding the meaning and legal effect of contract termination. *See* ECF No. 278-1 at 19 (requesting a jury instruction). Mr. Krochmalny and Mr. Little lacked the proper foundation to address whether contract "termination" occurred, or indeed, whether there was an existing commercial contract to terminate. As will be addressed at trial, the events on which both were questioned occurred after there were no more valves on order from ValveTech, and therefore, no further obligations to terminate. Moreover, because ValveTech possesses no claims for breach of the commercial agreements (*i.e.*, the purchase orders), this entire line of questioning is irrelevant. Regardless, the legal effect of Aerojet Rocketdyne's decision not to purchase additional valves from ValveTech was not within the personal knowledge of the witnesses. The objections, therefore, were proper.

The fifth passage cited by ValveTech is a clear example of a witness testifying without personal knowledge. In particular, Mr. Little stated "[w]e have to have been the ones who provided it. I don't see how ValveTech could have provided it." ECF No. 306 at 10. Mr. Little was not testifying as to actions he had taken, but instead, was positing on the likely circumstances leading to facts of which he learned during the deposition. Mr. Little could not have testified under oath as to how Boeing received the materials, and therefore, the objection was proper.

The seventh example provided was again one where ValveTech altered the designation during the unnecessary and disruptive second round of disclosures. ValveTech originally identified more than three continuous pages of Mr. Barber's testimony, with much of that testimony

encompassing his opinions on technical issues. And even as to the more truncated passage as now designated, the testimony is not based on personal knowledge. The question asked was whether "ValveTech OMAC iso valves were used in hot fire tests." ECF No. 306 at 11. Rather than testify regarding what happened, Mr. Barber testified regarding his understanding of someone else's "intention." *Id.* Indeed, in the very next question and answer, the witness denied involvement in the testing. ECF No. 307 at pdf pg. 10. There can be no valid reason to play video from a witness who testified that he was not involved or had no knowledge.

The eighth passage identified by ValveTech was testimony from Mr. Krochmalny on whether he viewed "ValveTech's proposal to provide the pilot valve as a viable alternative." ECF No. 306 at 11. ValveTech fails to explain why Mr. Krochmalny's personal opinion should be admissible at trial. Had ValveTech laid the proper foundation, *i.e.*, established that it was within Mr. Krockmalny's job responsibilities to determine viability, then the result might be different. Instead, ValveTech elicited an affirmative response from Mr. Krochmalny to the question "[a]t Aerojet, your role is not in engineering." Krochmalny Depo. Tr. at 20:6-8. Indeed, Mr. Krochmalny separately confirmed that ValveTech's potential involvement with the pilot procurement "wouldn't have been my decision." *Id.* at 119:22-120:1. His personal view on whether ValveTech presented a "viable alternative," therefore, is not admissible.

The ninth passage identified by ValveTech is a question and answer from the deposition of Aerojet Rocketdyne's in-house counsel Joel Landau, during which the witness carefully avoided divulging privileged and/or work-product information. ECF No. 307 at pdf pg. 74.

13

Q   With regard to your request for admission number 18, can you identify the information provided to and relied upon by you, whether through communications with individuals or reviewing documents, in answering this request for admission?

A   Al Little and Marty Bleck confirmed -- stated to me that Aerojet has no propellant loading operations.

The non-privileged communications were me sharing the request for admission with them.

MR. ESTERHAY:  If the tech could please pull up Exhibit 85 again.  And go to page 3.

BY MR. ESTERHAY:

Q   Did you consider this document in responding to request for admission number 18?

A   I don't believe so.

Q   Do you believe that the response to request for admission number 18 remains correct?

A   I decline to answer.

It is unclear what relevance the testimony from lines 20 through 22 could have to the jury's resolution of whether Aerojet Rocketdyne breached a contract or misappropriated a trade secret. Indeed, as Aerojet Rocketdyne intends to raise at the upcoming pretrial conference, there can be no valid reason to present video testimony from an attorney who will be present at counsel table throughout trial. ValveTech asserts that Aerojet Rocketdyne's position is "laughable and hypocritical" (ECF No. 306 at 13), but fails to explain how Mr. Landau's testimony is relevant. Indeed, ValveTech concedes that his only involvement was testifying "about the interrogatory responses that he verified." *Id.* But the verifications themselves are not relevant evidence, and to the extent necessary, ValveTech may use the interrogatory responses themselves. As ValveTech's designations show, Mr. Landau is not a fact witness with relevant information as to any of the events complained of by ValveTech. The following are examples of the clearly irrelevant testimony from Mr. Landau that ValveTech proposes to use during trial:

Do you understand what I mean when I say "commercial crew program"?

A   No.

Q   Well, to the OMAC program.
A   I'm not familiar with what the OMAC program is.

Q   And just to confirm, you don't recall the name of the litigation counsel you spoke with about the subpoena?
A   That's correct.

Q   The tech has marked as Exhibit 2 a verification signed by you, dated December 23rd, 2019.
Do you recognize this document?
A   I don't recognize this document.
Q   Is that your signature?
A   That looks like my signature.

Q   This is a document entitled "Defendant Aerojet Rocketdyne's Responses to ValveTech, Inc.'s First Set of Interrogatories."
And at the bottom of the first paragraph, it says, "Nos. 1-11."
Do you see that?
A   I do.
Q   So did you verify this set of interrogatory responses?
A   I don't recall.

ECF No. 307 at pdf pgs. 64- 67. Rather than facts necessary to prove its case, ValveTech's intent

is clearly to imply to the jury that Aerojet Rocketdyne committed misconduct during discovery.

<u>That is not a proper issue to raise before the jury at trial</u>. The following sampling of recent cases

nationwide confirm the impropriety of raising discovery disputes before a jury. *United States v.*

*Jakits*, No. 2:22-CR-194, 2023 WL 3191567, at *3 (S.D. Ohio May 2, 2023) (precluding reference

to discovery disputes during trial); *Haddonfield Foods, Inc. v. S. Hens, Inc.,* No. 2:20-CV-84-KS-

MTP, 2023 WL 2355902, at *3 (S.D. Miss. Mar. 3, 2023) (same); *Perez v. Fla. Pop, LLC*, No. 20-

14214-CV, 2022 WL 18023483, at *2 (S.D. Fla. Sept. 9, 2022) (same); *United Servs. Auto. Ass'n*

*v. PNC Bank N.A.*, No. 2:21-CV-00246-JRG, 2022 WL 19227587, at *11 (E.D. Tex. Sept. 1, 2022)

(same); *Athena Cosms., Inc. v. AMN Distribution Inc.*, No. 220CV05526SVWSHK, 2021 WL

9839091, at *5 (C.D. Cal. Nov. 16, 2021) (same); *Wynn v. Henry Cnty. Sch. Dist.*, No. 1:18-CV-

15

2638-CAP, 2021 WL 4817815, at *6 (N.D. Ga. Mar. 25, 2021) (same); *NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2021 WL 1057312, at *6 (N.D. Ill. Mar. 18, 2021) (same); *Allen v. Richardson*, No. 16-CV-410-WMC, 2019 WL 438386, at *3 (W.D. Wis. Feb. 4, 2019) (same). If ValveTech requires certain <u>facts</u> that are only within Mr. Landau's <u>personal knowledge</u>, the parties should discuss stipulating to those facts. However, ValveTech should have raised its discovery disputes during discovery. Testimony about discovery, even if relevant, should be excluded as causing unfair prejudice, confusing the issues, misleading the jury, causing undue delay, and/or wasting time under Federal Rule of Evidence 403 as indicated in the above citations.

The final two excerpts ValveTech complains of are again examples where changes of the designation ranges from among the hundreds of passages caused difficulty. As to both passages from Mr. Peterson's deposition, the testimony provides no basis for his knowledge. Indeed, for the first passage, Mr. Peterson confirmed in his answer to the very next question that "I don't remember." ECF No. 307 at 128. And as to the final passage, the testimony as given in context confirms that Mr. Peterson was not testifying based on personal knowledge:

Q   What is the picture in the bottom right?
A   That is -- it looks like the AR valve in the shock test setup.
Q   Okay.  Are you sure that's the AR valve?
A   I'm having a little trouble looking at it.
Let me blow this up.  Just give me a second.  Make the picture bigger.
     Oh, no.  That looks like the ValveTech valve.
Q   Do you know why the ValveTech valve was part of a shock test depicted on 11149?
A   Because the ValveTech valve was used in the pad abort test, and the pad abort test subjected the entire system to a flight shock.
Q   Why was it important to include the ValveTech valve in a pad abort test?
     MR. EISENBERG:  Objection to form.
A   That's the way the contract ended up set -- being set up.  Beyond that, I really can't answer, in terms of --

In summary, the collection of excerpts provided by ValveTech (picked from among the hundreds of passages it designated) confirm that none are remotely relevant to whether Aerojet Rocketdyne breached a contractual obligation or misappropriated a trade secret. ValveTech's decision to designate vast swaths of irrelevant testimony and then change those designations to require further response is the sole cause for its complaints.

### E.   ValveTech's Complaints Regarding Aerojet Rocketdyne's Privilege Objections Is Misplaced

ValveTech's criticisms regarding Aerojet Rocketdyne's privilege objections represents a misunderstanding of trial procedure, which could have been resolved with the briefest of discussions. The substantive point is that it is improper to intentionally cause an opponent to invoke privilege in front of a jury. *United States v. Gallego*, 913 F. Supp. 209, 215 (S.D.N.Y. 1996), *aff'd*, 191 F.3d 156 (2d Cir. 1999) (holding that causing a witness to invoke a privilege before a jury would cause unfair prejudice); *In re Gen. Motors LLC Ignition Switch Litig*., No. 14-MD-2543, 2015 WL 8130449, at *3 (S.D.N.Y. Dec. 3, 2015) ("Purposefully asking a witness to disclose information that counsel knows to be privileged - and knows will elicit an objection or instruction not to answer - would be patently improper and would impede the efficiency of trial.") (emphasis added); *Yue v. Chordiant Software, Inc*., No. C 08-00019 JW, 2010 WL 11575579, at *4 (N.D. Cal. Apr. 22, 2010) ("The Court finds that any presentation of evidence or line of questioning designed to show Defendant's assertion of the attorney-client privilege would serve no relevant purpose and would unduly prejudice Defendant by allowing the jury to infer that Defendant was improperly withholding evidence.") (emphasis added); *McKesson Info. Solutions, Inc. v. Bridge Med., Inc*., 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006) ("McKesson is precluded, in all respects, from introducing evidence or testimony pertaining to Bridge's assertion of the attorney client privilege."); *Williams v. Sprint/United Mgt. Co*., 464 F. Supp. 2d 1100, 1108 (D. Kan. 2006)

17

(explaining that it is "inappropriate to . . . force defendant to either invoke the privilege in the jury's presence (creating the negative inference desired by plaintiffs) or waive the privilege by responding to the question"); *United States v. Tomaiolo*, 249 F.2d 683, 690 (2d Cir. 1957) ("By repeatedly asking these questions before the jury and attempting to place the defendant in a false light by compelling him to claim the husband-wife and the attorney-client privileges, the prosecutor deliberately and improperly prejudiced the defendant's position.").

ValveTech seeks to violate this long-standing practice rule by designating testimony during which the privilege was invoked. ValveTech's reference to a "clawback," thus entirely misses the point. It is the impropriety of causing a party (or even a third party) to invoke the privilege, not the underlying information, that is the basis for the objections. ValveTech should not be permitted to suggest impropriety from ordinary litigation conduct.

ValveTech's confusing rhetoric regarding Mr. Little's testimony is equally misplaced. According to ValveTech, "Aerojet objects to Al Little's failure to know anything about Aerojet's affirmative defenses under privilege . . ., but Al Little was *Aerojet's 30(b)(6) witness on affirmative defenses*. His failure to know anything about them is indicative of the fact that Aerojet has no factual basis for those purported defenses, not an indication of a privilege." ECF No. 306 at 12-13 (emphasis in original). Percipient witnesses address facts of which they are themselves aware. It is the attorneys that prepare and present defenses on their client's behalf. The line of questioning from which ValveTech seeks to submit testimony from Mr. Little began with an instruction from counsel to "be careful here not to divulge communications you have had with counsel. To the extent you have an understanding of the facts supporting this affirmative defense separate and apart from conversations you have had with counsel, then you may answer the question." ECF No. 307 at pdf pg. 86. Any fair understanding of litigation procedure would lead to the conclusion that Mr. Little's understanding of the defenses (*i.e.*, how facts of which he was

18

aware relate to defenses that Aerojet Rocketdyne may present at trial), represents a difficult distinction for any lay witness to parse. ValveTech's intent to leverage the invocation of privilege to suggest to the jury that the defenses cannot exist is highly improper. Indeed, ValveTech intends to present testimony from Mr. Little after a similar instruction that "I'm not going to answer because I won't – I'm not sure I understand, in the legal community, what this means. I think it – it's possible it means things that I don't understand." ECF No. 307 at pdf pg. 86. The Court should reject ValveTech's desire to litigate based on inuendo rather than substantive merit.

F.   **ValveTech's Complaints Regarding Aerojet Rocketdyne's Reliance on its Motion *in Limine* No. 2 Is Mistaken.**

With respect to ValveTech's complaints regarding Aerojet Rocketdyne's motion *in limine* number 2, once again the issue is quite simple. If the sole relevance of testimony designated by ValveTech is for its potential use by Mr. Blok in rendering an opinion, then the exclusion of a corresponding opinion would obviate the relevance of the testimony. Facts are not free-standing things that are flung at a jury, but instead must have a "tendency to make a fact more or less probable than it would be without the evidence" and be "of consequence in determining the action." Fed. R. Evid. 401. Aerojet Rocketdyne objected to certain opinions by Mr. Blok, and based on what occurs at trial, intends to renew or seek post-trial relief based on those opinions. Thus, Aerojet Rocketdyne seeks to preserve its objections to testimony that is relevant solely based on its use by Mr. Blok. Such preservation hardly seems controversial.

G.   **ValveTech's Complaints Regarding Aerojet Rocketdyne's Reliance on its Motion *in Limine* No. 4 Is Mistaken.**

With respect to Aerojet Rocketdyne's reliance on its motion *in limine* number 4, ValveTech complains that 18 passages were objected to. The proposed testimony as understood by the undersigned counsel was intended to elicit testimony regarding the legal rights and obligations of the parties. As with testimony in general, it is difficult to fully understand how that testimony may

be presented in the context of trial. Indeed, the difficulty of interposing objections (especially to hundreds of designations having little if any relevance to the remaining disputes) was not an easy task. And those objections not made are waived, requiring caution on by the undersigned counsel.

Moving on to the underlying testimony, ValveTech first identifies testimony from Mr. Little regarding the existence of an express or implied license. ECF No. 306 at 15. Mr. Little was not involved in negotiating contracts with ValveTech, nor does he have a proper foundation to testify regarding Aerojet Rocketdyne legal rights and obligations. Moreover, the point ValveTech seeks to raise is Mr. Little's lack of knowledge regarding those legal rights and obligations. <u>Again, that is not relevant.</u> Rather than the merits of its <u>claims</u>, what ValveTech seeks is to distract and impugn. The Court should forcefully reject this misdirection.

As to Ms. Putz's testimony, ValveTech characterizes the testimony as related to "performance-based payments." ECF No. 306 at 1. The difficulty here is that there is no apparent relevance to any testimony designated from Ms. Putz unless ValveTech is suggesting that Aerojet Rocketdyne somehow breached a performance-based payments obligation. Again, trying to foresee how ValveTech may seek to misuse testimony for which there is no link to any claim or defense in this litigation has been an incredibly difficult task. The mere preservation of objections under this circumstance should not be unexpected.

### H. ValveTech's Mischaracterizes the Substance of Aerojet Rocketdyne's Motion *in Limine* No. 5

According to ValveTech, "it is entirely unclear how the[] designations would fall within MIL 5's purview, given that this testimony is about how much *NASA* would pay ***Boeing*** under a contract, ***not*** about ***Aerojet's*** wealth or size." ECF No. 306 at 16 (emphasis in original). ValveTech's argument pointedly ignores the relief request by Aerojet Rocketdyne's motion:

20

> The amount of money that was to pass between NASA, Boeing, and Aerojet Rocketdyne, however, has no relevance to ValveTech's claims, and therefore, should be redacted from those documents for use at trial.

ECF No. 271 at 2. Indeed, Aerojet Rocketdyne argued that reference to outsized numbers, including "[t]he payments called for in the contract between NASA and Boeing[, which] exceeded a billion dollars" could "only 'skew the damages horizon for the jury' and 'make a [plaintiff's] proffered damages amount appear modest by comparison.'" *Id.* (citing cases). Aerojet Rocketdyne, therefore, maintains its objection.

### I.    ValveTech's Complaints Regarding Aerojet Rocketdyne's Reliance on its Motion *in Limine* No. 6 Is Mistaken

With respect to Aerojet Rocketdyne's reliance on its motion *in limine* number 6, ValveTech analysis is procedurally flawed. ValveTech asserts that Aerojet Rocketdyne's motion "**was denied**." ECF No. 306 at 17 (emphasis in original). The Court's opinion, however, emphasized that the rulings were "preliminary." ECF No. 290 at 1; *see also id.* ("The trial court is not bound by an *in limine* ruling and can change its determination during the trial where sufficient facts have developed to warrant the change or even if nothing unexpected happens at trial.") (emphasis added). That description is consistent with Federal Rule of Civil Procedure 54: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." There can be no fair argument that it was improper to preserve issues related to the Court's interlocutory order.

### J.    The Court Should Ignore ValveTech's Complaints Regarding Aerojet Rocketdyne's Mention of ValveTech Adding Additional Designations

While going through the many changes made by ValveTech to its designations, the undersigned counsel identified instances where material was added rather than deleted. Those

21

changes were noted where appropriate. Aerojet Rocketdyne did not assert that it would oppose use at trial on that basis. And ValveTech never asked whether Aerojet Rocketdyne intended to oppose use on that basis. ValveTech's discussion, therefore, is much ado about nothing. It is indicative, however, of a level of anger and incivility that is unwarranted.

**K.      ValveTech's Criticism of Aerojet Rocketdyne's "legal conclusion" Objections Is Baseless**

With respect to this issue, ValveTech complains that Aerojet Rocketdyne should not be permitted to raise objections that it believes call for legal conclusions. ValveTech's very first example addresses whether "Aerojet . . . terminated ValveTech on the OMAC valve." ECF No. 306 at 19. As explained above, the meaning of termination in this context is a legal issue, and indeed, Aerojet Rocketdyne has sought a jury instruction to address that legal issue. Moreover, the rights and obligations of the parties under contract, both before and after the purported "termination," is an issue of law for the Court. ECF No. 290 at 10.

Next, as to Mr. Peterson's testimony, the designated passage asked why specific tests were performed for valves to be sent to Boeing. ECF No. 307 at pdf pg. 129. The undersigned counsel believed then (and maintains now) that the obligations discussed were imposed under contract between Aerojet Rocketdyne and Boeing. *See*, *e.g.*, 463 at pdf pg. 202-03. Mr. Peterson's testimony, which did not address the contractual obligation, and instead his personal view of the technical reasons for such testing, is irrelevant and inadmissible.

**L.      ValveTech's Criticisms of Aerojet Rocketdyne's Remaining Objections Are Baseless**

ValveTech asserts that deposition testimony cannot "assume facts not in evidence" because "the testimony itself is evidence." ECF No. 306 at 19. That is similar to saying testimony given at trial cannot be improperly based on hearsay because the testimony itself is given at trial. The issue raised in both circumstances is not the way the evidence itself is presented, but instead an

22

underlying flaw that renders the testimony inadmissible. Thus, if a question includes a predicate assumption that was not established, an objection is proper.

Next, ValveTech complains that Aerojet Rocketdyne objected to a compound question. Because the passage was also objected to for additional reasons including irrelevance, lack of personal knowledge, calling for an opinion, calling for a legal conclusion, and assuming facts not in evidence, resolving the confusing nature of the question itself is probably unnecessary. The question asked Mr. Ramos to speculate about ValveTech's motivations, ignored ValveTech's contractual obligations, and was responded to with the answer "I don't know." ECF No. 306 at 20. ValveTech's assertion that such testimony should be admissible at trial is baseless. In addition, ValveTech's assertion that, if a witness answers (ECF No. 306 at 20), then objections are waived is unsupportable. That would negate the entire purpose of preserving objections.

Similarly, with respect to Lisa Peterson's (a Boeing employee) testimony, ValveTech asked her opinion on Aerojet Rocketdyne's motivations. Plainly, Ms. Peterson is not a competent witness to testify on Aerojet Rocketdyne's motivations. Moreover, Ms. Peterson gave her personal view of facts that the undersigned counsel believes are inconsistent with the evidence in the record. The objection, therefore, is maintained.

### M.    Counsel's Statement

Because ValveTech's motion includes a request for sanctions against the undersigned counsel, I write briefly to address this controversy. Over the course of my career, my involvement with sanctions motions either as a requester or as a recipient has been exceedingly rare. In my practice I seek to litigate cases on the merits rather than through satellite litigation directed at opponents or their counsel. There was a point in this case during at which seeking sanctions against ValveTech and its counsel was considered. The circumstance leading to that consideration was the under-oath testimony from two of ValveTech's witnesses (including its CEO) refusing to

acknowledge that ValveTech had sold valves to Aerojet Rocketdyne. *See*, *e.g.*, Mullally Depo. Tr. at 175:9-176:14; 187:13-188:6; 215:7-216:21; 217:4-218:7. Indeed, ValveTech's CEO testified that counsel "directed" her testimony. *Id.* at 218:2-16. And to this very day, ValveTech still refuses to admit that sales occurred. Trial Ex. 600 at 7. While Aerojet Rocketdyne reserves the right to seek relief at the close of this case, its focus to date remains on the dubious merits of ValveTech's claims rather than the distraction of sanctions motions. It is in this context that the Court should consider ValveTech's motion, which seeks to impose punishment for the routine preservation of objections to deposition designations.

## III.    CONCLUSION

For the reasons explained above, the Court should reject ValveTech's motion.


Date: October 10, 2023

By*/s/ Michael B. Eisenberg*
Michael B. Eisenberg
STEVENS & LEE
485 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (646) 254-6381
Email: michael.eisenberg@stevenslee.com
Attorney for Aerojet Rocketdyne, Inc.