UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VALVETECH, INC.,

                                      Plaintiff,

v.

                                   Case # 17-CV-6788-FPG

                                   DECISION AND ORDER

AEROJET ROCKETDYNE, INC.,

                                     Defendant.

## INTRODUCTION

In advance of the jury trial scheduled to begin on November 6, 2023, the parties have raised several matters with the Court. The Court addresses these issues below.

## DISCUSSION

### I. Deposition Designations

The parties have submitted more than forty pages of deposition designations, along with associated objections. ECF No. 303-2; ECF No. 308. At the pretrial conference, the Court directed the parties to meet and confer regarding their objections. Thereafter, the parties notified the Court that they had been unable to resolve most of their disagreements. ECF Nos. 322, 323.

At this time, the Court declines to address any of the issues raised by the parties regarding their deposition designations, whether that be the applicability of Rule 32(a)(3), the relevance of the proposed testimony, hearsay objections, or any other issue raised by the parties in their briefing or at the pretrial conference. Any motions or requests related to deposition designations are therefore DENIED WITHOUT PREJUDICE. Instead, the following procedure will be employed:

1

- At least 72 hours before showing the video at trial, the party seeking to use video deposition at trial shall deliver a copy of the edited video to opposing counsel. Both parties shall meet and confer regarding **all** objections to the use of that video.

- If there remain any objections after the parties meet and confer, at least forty-eight hours before showing the video at trial, the parties shall file a **joint** submission to the Court that (a) identifies the designated deposition testimony, (b) includes a copy of the video, (c) summarizes the objections raised to the video,[1] and (d) summarizes the proponent's response to those objections.[2] Any objection, whether under the Rules of Evidence, Rules of Civil Procedure, the Local Rules, or otherwise, that is not included in the joint submission shall be deemed waived. Any response to said objections, whether under the Rules of Evidence, Rules of Civil Procedure, the Local Rules, or otherwise, that is not included in the joint submission shall be deemed waived.

- The Court will issue a definitive ruling on the objections thereafter. Once the Court has issued its ruling, neither party may raise any supplemental legal argument or objection to the video at trial.

## II. ValveTech's Request for Sanctions (ECF No. 306)

ValveTech's request for sanctions is DENIED.

## III. Timko's "Avoided Delay" Opinion

ValveTech intends to call Michael Timko, its technical expert, to testify on several matters pertinent to this litigation. Among other things, ValveTech intends to proffer Timko's opinion that Aerojet avoided additional production delays by misappropriating ValveTech's trade secrets. *See* ECF No. 201-15 at 225-39. In its prior order on the motions *in limine*, the Court concluded that Timko's estimates of production delays would be inadmissible to the extent they were "grounded in Timko's subjective view, rather than on an objective methodology or comparison,

---

[1] Instead of restating any arguments or legal authority already set forth in prior briefing, the parties need only cite their prior briefing.

[2] *See* note 1, *supra*.

like real-world delays." ECF No. 290 at 6. The Court did not preclude ValveTech from seeking to admit Timko's opinion at trial, if it was "able to present the necessary foundation." *Id.*

At the pretrial conference, ValveTech's counsel indicated that he believed ValveTech could provide the necessary foundation. Aerojet's counsel responded that it would be improper to present a new foundation for Timko's opinion that was not contained in his expert report. ValveTech's counsel replied that the foundation was contained within his report. Insofar as the parties' dispute potentially implicated ValveTech's discovery obligations, the Court asked the parties to address the issue in writing. *See* ECF No. 317. However, having reviewed ValveTech's supplemental memorandum, it is clear that ValveTech does not intend to proffer any previously unknown evidence as a foundation for Timko's production-delays opinion. *See* ECF No. 326 at 9-14. Therefore, the Court sees no need to further address potential discovery violations.[3]

However, some clarification regarding the Court's prior ruling is necessary. The Court concluded that it would only permit Timko's expert opinions on avoided delay to the extent that they were grounded "on an objective methodology or comparison, like real-world delays." ECF No. 290 at 6. Thus, to the extent Timko intends to estimate avoided production delays by reference to delays that actually occurred during the underlying events, he is permitted to do so. This would include opinions based on Lisa Peterson's testimony[4] or the testimony of other witnesses with personal knowledge of the production delays that occurred.

---

[3] Aerojet raises several issues of law in its supplemental brief that go beyond the limited scope of the ordered briefing. *See* ECF No. 330 at 10-14. The Court will not address those issues at this juncture.

[4] Aerojet argues that Lisa Peterson's deposition testimony constitutes "inadmissible lay opinion" that cannot form the basis for Timko's estimates. ECF No. 330 at 15. While the Court agrees with Aerojet that her testimony is framed in terms of a "confusing hypothetical," *id.* at 10, the factual substance of her answers—when production on the test vehicles began, the timeline for that production, the delays that would arise if a new OMAC isolation valve had to be re-integrated into a vehicle—do not veer into the realm of impermissible opinion. *See generally United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013) (discussing circumstances in which hypothetical questions may be asked of lay witnesses).

By contrast, the Court will not permit Timko to testify regarding his estimates based on a "development iteration," which the Court previously intended to exclude for lack of an objective methodology. *Id.* ValveTech attempts to revive this aspect of Timko's opinion by pointing out that Timko has offered specific examples of his experience. *See* ECF No. 326 at 12-13. That is not the flaw in his opinion, however. It is clear that Timko has abundant experience in the technical areas in which he offers his opinions, and his expert report and deposition establish that experience in detail. *See* ECF No. 201-15 at 13-21; ECF No. 326-4 at 4. The flaw is that, notwithstanding his wealth of experience, Timko does not articulate an objective, reliable method for determining the length of a development iteration. "[A]n expert relying solely on his experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." ECF No. 290 at 5 (quoting another source). For example, Timko could have "identif[ied] [] similar projects or other objective data" and compared it to the development projects at issue here to "estimate" the length of a "full development iteration."[5] *Id.* Instead, Timko relied on his "own subjective 'sense' of how long [each] step[] in the design process could take." *Id.* For the reasons previously stated, this aspect of Timko's opinion will not be admitted at trial.

---

[5] During his deposition, Timko referenced a lengthy redesign process that was necessitated by a "life test failure." ECF No. 326-4 at 4. Although Timko relies on that experience to estimate a "development iteration" in this case, absent from his testimony is an objective method of comparison between the life test failure and the specific projects at issue here. Timko's testimony amounts to a claim that, because he had *that* experience with the life test failure, it gives him an informed "sense" of the potential project delays in this case. This is the sort of "black box" opinion that is inadmissible under the Federal Rules of Evidence. *See* ECF No. 290 at 4-5. Timko's line of reasoning can be contrasted with the objective method by which he estimates the Starliner's design life: he identifies a comparator to the Starliner that shares relevant design characteristics, and from that comparison estimates Starliner's potential life span.

### IV. Blok's "Avoided Penalty" Theory

One of the theories that Justin Blok, ValveTech's damages expert, proffers as a measure of Aerojet's unjust enrichment is what he calls "avoided penalties." ECF No. 192-39 at 40. Specifically, Blok calculates "the potential value of penalty payments due to Boeing that Aerojet has avoided due to its misappropriation of the ValveTech Trade Secrets." *Id.* Blok estimates the penalties that Aerojet "avoided" by reference to (a) an unsigned claim letter submitted by the Boeing Company to Aerojet in October 2020, and (b) Timko's opinion regarding the development delays that Aerojet averted by relying on ValveTech's trade secrets.

In the claim letter, Boeing alleged that Aerojet's delays in connection with the service-module project had caused it $94.3 million in costs and resulted in "at least 30 months" of delay to the Starliner program. ECF No. 258-1 at 20. Blok reduces these amounts to a "penalty per month" ratio of $3.1 million. ECF No. 192-39 at 43. Blok then multiplies that figure by the number of months that Timko believes Aerojet saved by misappropriation—10 to 16 months—to arrive at a valuation of approximately $31.4 million to $50.3 million in "penalties" that Aerojet avoided by misappropriating ValveTech's trade secrets. *Id.*

The Court did not substantively address Blok's theory at summary judgment, ECF No. 203, or in its prior order on the motions *in limine*.[6] ECF No. 290 at 13. However, as discussed in the October 16, 2023 text order, a "more formal" ruling is warranted under the circumstances. ECF No. 317; *see also* ECF No. 290 at 1 (notifying the parties that "[t]he trial court is not bound by an *in limine* ruling and can change its determination during the trial where sufficient facts have developed to warrant the change or even if nothing unexpected happens at trial"). The parties have

---

[6] Although the Court stated that Aerojet's objections to Blok's opinion went "to the weight, not the admissibility, of [his] testimony," ECF No. 290 at 13, it did not issue any formal ruling on Aerojet's objections because Blok's theory was inadmissible to the extent it relied on Timko's inadmissible production-delays opinion.

submitted supplemental memoranda. ECF Nos. 326, 330. Having reviewed those memoranda, as well as the prior briefing in this case, the Court concludes that Boeing's claim letter and Blok's avoided-penalty theory are inadmissible.

As an initial matter, ValveTech has failed to articulate how Boeing's claim letter could be admitted substantively. The claim letter's "valuation" of Boeing's costs is hearsay if offered to prove the truth of that valuation.[7] *See, e.g.*, *Diamond v. Beltman N. Am. Van Lines*, 29 F. App'x 49, 50 (2d Cir. 2002) (summary order) (stating that appraisal report and other documents that described value of property were "properly excluded on hearsay grounds"); *Waddell v. C.I.R.*, 841 F.2d 264, 267 (9th Cir. 1988) (appraisal professionally prepared by appraiser inadmissible as hearsay); *Cole v. Rescia*, No. 21-CV-1130, 2022 WL 4536830, at *7 (D. Conn. Sept. 28, 2022) (document appraising value of antiques inventory inadmissible "to prove the truth of the matter asserted by the author, i.e., his valuation estimates" (internal brackets and quotation marks omitted)).

ValveTech responds that the claim letter would be admissible under Rule 803(6) as a business record. *See* ECF No. 326 at 22. But, on its face, the claim letter makes clear it was prepared and furnished in anticipation of litigation and/or claim negotiation. *See, e.g.*, ECF No. 258-1 at 3 (stating that Boeing "looks forward to discussing these issues, and Aerojet's own asserted claims, to resolve them on a mutually agreeable basis that is fair to both parties"); *id.* at 20 ("We welcome discussion between Boeing and Aerojet business leadership as appropriate next

---

[7] ValveTech has suggested that the significance of the letter is not "whether the claim is true and valid" but merely "that Boeing made a claim that put a value on the delay for this project." ECF No. 257 at 12 (emphasis added). If ValveTech were seeking to admit the claim letter solely to prove, say, Aerojet's motive to misappropriate in order to avoid further liability, ValveTech may well have a point. Similarly, if ValveTech were merely seeking to admit the letter as evidence that there existed a process by which Boeing could take legal action against Aerojet for its delays, the Court's analysis may be different. But ValveTech does not propose to admit the claim letter for such limited purposes.

steps for resolving these issues on a commercial and mutually agreeable basis."). Boeing's letter is not a dispassionate, neutral appraisal of its incurred costs or a routine record prepared in the ordinary course of business. The purpose for which the letter was prepared indicates a lack of trustworthiness that renders the letter inadmissible under Rule 803(6).[8] *See United States v. Feliz*, 467 F.3d 227, 234 (2d Cir. 2006) (quoting another source for the well-established proposition that "documents made in anticipation of litigation are inadmissible under the business records exception"); *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000) ("The absence of trustworthiness is clear . . . when a report is prepared in the anticipation of litigation because the document is not for the systematic conduct and operations of the enterprise but for the primary purpose of litigating."). The fact that Boeing is not a party to this litigation is, contrary to ValveTech's argument, immaterial. *See* ECF No. 326 at 23. "The primary motive for preparing the report in the first place is a better indicator of trustworthiness than the form of the investigation or the identity of the investigator." *Sinkovich*, 232 F.3d at 205. Boeing had an obvious motive to write the claim letter in a manner favorable to its own interests. For that reason, Boeing's claim letter cannot be admitted as a business record. Because ValveTech offers no other path for the letter's admission, the Boeing claim letter must be deemed inadmissible.[9]

ValveTech contends that, regardless of the underlying admissibility of the claim letter, Blok may still testify regarding the avoided penalties theory pursuant to Rule 703:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would

---

[8] ValveTech notes that, under 803(6)(E), it is Aerojet's burden to prove untrustworthiness. The advisory committee notes are directly responsive to ValveTech's argument: "The opponent, in meeting its burden, is not necessarily required to introduce affirmative evidence of untrustworthiness. For example, the opponent might argue that a record was prepared in anticipation of litigation and is favorable to the preparing party without needing to introduce evidence on the point." Fed. R. Ev. 803 advisory committee notes.

[9] ValveTech emphasizes that the claim letter can be properly authenticated. *See* ECF No. 326 at 19-22. But "[a]uthentication and hearsay are two separate requirements." *Zafer Taahhut Insaat ve Ticaret A.S. v. United States*, 833 F.3d 1356, 1365 (Fed. Cir. 2016).

7

> reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

The Court is not convinced that Blok's testimony is admissible on this basis. Although Rule 703 "permit[s] experts some leeway with respect to hearsay evidence, a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (internal quotation marks and citation omitted). "Instead, the expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials. Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that allows the [proponent] to circumvent the rules prohibiting hearsay." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *see also Williams v. Illinois*, 567 US 50, 80 (2012) ("[T]rial courts can screen out experts who would act as conduits for hearsay by strictly enforcing the requirement that experts display genuine scientific, technical, or other specialized knowledge that will help the trier of fact understand the evidence or determine a fact at issue." (internal quotation marks and brackets omitted)).

As his report and deposition testimony demonstrate, Blok did not meaningfully employ his independent expertise to formulate or apply his avoided penalty theory. Indeed, it may be misleading to frame his theory as one related to "penalties" at all. A "penalty" brings to mind a definite fine or sanction for a violation. If Boeing's contract expressly allowed it to assess $3.1 million for every month of delay caused by Aerojet, one might reasonably call such an assessment a "penalty." Here, however, Boeing did not allege a distinct "penalty" that is proportional to, or automatically triggered by, Aerojet's delay; rather, Boeing is seeking to recoup the costs it incurred for Aerojet's alleged breach of, and substandard performance under, their contract. *See* ECF No. 258-1 at 6-18 (discussing relevant terms of contract and alleges breaches thereof); *id.* at 19-20

8

(describing the "substantial damages" that Boeing incurred "as a direct result of Aerojet's breaches," including costs related to project sequencing, repair and reinstallation costs, shipping costs, and testing costs) (emphasis and capitalization omitted)). Blok's theory is not so much about avoided penalties as it is about avoided contractual liability.

This distinction is important, because it helps to bring into starker relief the deficiencies in Blok's opinion. Unlike the application of a discrete monthly "penalty" for nonperformance, an appraisal of the potential contractual liability that Aerojet faced for another 10-16 months of delay would seem to require a far more complex, multi-factored assessment. *Cf. Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) ("Estimating the maximum potential value of unliquidated damage claims is an inexact science at best."). Several questions immediately come to mind. What is the likelihood that Boeing's claim for additional costs would have been reduced to a liquidated, enforceable amount, either by judgment or settlement, such that Aerojet would be held formally liable for Boeing's costs?[10] How would Aerojet's potential liability be impacted, if at all, by the terms of Boeing's contract with Aerojet, which included a $60 million limitation of liability except in cases of "gross negligence, intentional misconduct, including intentional breach of contract, or fraud"?[11] ECF No. 258-1 at 8. How strong are Boeing's original claims that Aerojet caused at

---

[10] This is not an insignificant question. Boeing's claim letter, which it did not submit to Aerojet until October 2020, encompasses costs and delays that occurred between 2016 through 2019. It has now been pending for three years, and there is no evidence that Boeing has sought to pursue its claim more formally against Aerojet. Lisa Peterson, Boeing's representative, testified at her deposition that Boeing has no timeline as to when the claim will be resolved. Peterson Dep. at 234. At this point, there is nothing to suggest that Aerojet has sustained, or will sustain, any contractual liability for the costs identified in Boeing's claim letter.

Given this history, one would presume that any additional delays associated with the OMAC isolation valve in 2017 would likewise have been incorporated into the claim letter and would likewise remain pending and unliquidated. Blok does not attempt to account for any of these contingencies; he seems to assume, for unexplained reasons, that Aerojet would have immediately been held liable for the additional delays in 2017. *See* Blok Dep. at 66, 68.

[11] Instead of undertaking any analysis of the risk that this clause posed to Boeing's recovery of additional costs, Blok disregards it. Blok Dep. at 64. Again, he seems to do so solely on the basis that Aerojet would have obtained the "benefit" of avoided penalties in 2017. *Id.* at 66. But if, as Boeing's actual course of conduct suggests, those additional costs would have been incorporated into the $94.3 million claim, the liability limit presents at least a potential risk to

least thirty months of delay and $94.3 million in costs to Boeing?[12] Even assuming the accuracy of Boeing's claim letter, how comparable are those original claims to the potential claim arising from additional delays solely due to the OMAC isolation valve?[13]

Blok does not undertake a meaningful analysis of the variety of considerations that would bear on the questions of whether, and to what extent, Boeing would have recouped additional costs against Aerojet had Aerojet further delayed the Starliner program when developing its own OMAC isolation valve, or how such additional costs should best be calculated in light of these various

---

be considered in evaluating the potential value of Boeing's unliquidated claim against Aerojet for further isolation-valve delays. Furthermore, the Court is not convinced by ValveTech's suggestion that it can prove Aerojet's misappropriation, and therefore the inapplicability of the limit, at trial. ECF No. 236 at 19. That runs directly counter to the basic premise of Blok's theory, which is a hypothetical world in which Aerojet did *not* misappropriate ValveTech's trade secrets. *See* ECF No. 192-39 at 42-43.

[12] Blok candidly admits that he undertook no independent analysis of Boeing's claims. Blok Dep. at 78, 81. He admits that he did not have access to any internal Boeing documents that disclose how Boeing estimated its damages, so the claim letter itself was "all [he had] to work with that's been produced in this case." *Id.* at 82. As Lisa Peterson noted during her deposition, the claim letter only offers a "[t]op-level summary total dollar amount" of Boeing's claim. Peterson Dep. at 226. Boeing has not disclosed the "details on the [] claim content" to Aerojet, *id.* at 225, and she was unable to furnish specifics as to what costs were attributable to what delays and deficiencies. *Id.* at 227-29. Thus, even if the claim letter can be said to be the best evidence of Boeing's costs, it is far from good evidence. ValveTech's understandable frustration with the evidentiary record does not justify relieving it from the Rules of Evidence. *Cf. Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) (agreeing with plaintiffs that it was "highly likely" that contamination caused by defendants "would make the market value" of their property fall, but affirming dismissal of the case where plaintiffs failed to offer admissible evidence of diminished market value).

Blok also suggests that he could adopt Boeing's estimates because Aerojet had not produced any documentation suggesting that it had disputed Boeing's estimates. Blok Dep. at 81, 82. The assumption that Aerojet has, in some respect, conceded liability is contrary to the record evidence. Lisa Peterson testified that Aerojet has neither made payments, nor agreed to make payments, on Boeing's claim. Lisa Peterson Dep. at 236-39. To the extent ValveTech argues that Aerojet's silence has some sort of estoppel effect or amounts to a binding admission, it fails to marshal any legal authority to support such an argument. *See* ECF No. 326 at 17.

[13] Boeing's $94.3 million claim arises from three years of hardware deficiencies for a variety of critical subassemblies and components for which Aerojet was responsible. *See* ECF No. 258-1 at 6-18. Those deficiencies resulted in serious delays and failed milestones. Blok does not articulate a reasoned basis for assuming that Boeing's damages for these overlapping deficiencies and delays, which related to multiple subassemblies and project milestones, would be the exact same as one month of delay for the OMAC isolation valve alone. As a general matter, development of Boeing's Starliner proceeded in phases, with each phase consisting of "many thousands of tasks and sub-tasks." *Id.* at 5. A one-month delay during one phase, or with respect to one component, would not necessarily cause the same exact impact as a one-month delay during another phase, or with respect to another component. *Cf. Fassberg Constr. Co. v. Housing Auth. of City of Los Angeles*, 152 Cal. App. 4th 720, 755 (Ct. App. 2007) (noting that "[t]he effect of [] delays on the cost of performance could depend on many factors"). On its face, Blok's theory suggests an "apples and oranges comparison," which is properly excluded. *Boucher v. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

uncertainties. Believing that Boeing's claim letter was the best information that he had available, Blok merely assumed the accuracy of Boeing's claims, reduced those claims into a simple "penalty" ratio, and multiplied that figure by Timko's delay estimate. The Court fails to see how Blok brought his "expertise to bear in any [] way" in constructing this formula or performing this straightforward arithmetic. *Kirby*, 726 F.3d at 136.

Of course, it may be that, despite all of the potential considerations in play, Blok's formula is a reasonable method to estimate the potential contractual liability Aerojet faced absent its alleged misappropriation. The problem is not Blok's theory *per se*, but the fact that Blok does not provide a reasoned basis for calculating Aerojet's avoided contractual liability in the manner that he did, let alone for disregarding all the relevant considerations that might bear on calculating Aerojet's potential liability. That the evidentiary record was insufficient, which made Boeing's claim letter the best proxy by default, is not a reliable basis to use the letter to determine Aerojet's potential contractual liability for additional delays.

Under the circumstances, the Court is compelled to conclude that Blok's avoided "penalty" theory fails to meet the strictures of Rule 702 and 703, and operates as a mere conduit to introduce Boeing's inadmissible damages claim.[14] Accordingly, Blok will be precluded from proffering his avoided "penalty" theory at trial.

---

[14] Even if Blok's opinion could pass muster under Rules 702 and 703, it would be a strong candidate for exclusion under Rule 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharmas. Inc.*, 509 U.S. 579, 595 (1993) (quoting another source). It would be difficult to imagine how the jury could be expected to assess the reliability of Boeing's claim given the paucity of available evidence concerning its content.

## CONCLUSION

For the reasons discussed above, the Court resolves the pending matters as stated herein.

IT IS SO ORDERED.

Dated: November 2, 2023
       Rochester, New York

                                                _____
                                                HON. FRANK P. GERACI, JR.
                                                United States District Judge
                                                Western District of New York