UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VALVETECH, INC.,                               :

                Plaintiff,          :

      v.                                      :     Case No. 6:17-cv-06788-FPG-MJP

AEROJET ROCKETDYNE, INC.,          :

             Defendant.          :

_____


## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF VALVETECH, INC.'S MOTION FOR PERMANENT INJUNCTION</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................................... 2

      A.    ValveTech invested years of manpower and tens of millions of dollars developing
            the OMAC isolation valve under strict NDA. ....................................................... 2

      B.    Aerojet used ValveTech's Proprietary Information to develop a competing valve. 4

            1.    Aerojet never had a license to ValveTech's Proprietary Information. ....... 5

            2.    In breach of the NDAs, Aerojet failed to return or promptly destroy
                  ValveTech's proprietary information. ....................................................... 5

            3.    Aerojet's obstruction continued throughout trial. ..................................... 7

            4.    Permanent injunction was anticipated as a remedy for ValveTech's breach
                  of contract claim, if ValveTech prevailed on the merits. ........................... 8

            5.    ValveTech prevailed at trial, but Aerojet will not return its proprietary
                  information absent Court intervention. ...................................................... 9

III.  LEGAL STANDARDS .............................................................................................. 10

IV.   ARGUMENTS ........................................................................................................... 11

      A.    ValveTech has already proven the elements of breach of contract given the jury's
            verdict and judgment against Aerojet for breach of the 2011 and 2017 NDAs. .... 11

      B.    Monetary damages are an inadequate remedy that cannot address the return of
            ValveTech's Proprietary Information. .................................................................. 12

            1.    The Court has discretion to fashion equitable relief to address the return of
                  ValveTech's Proprietary Information. ...................................................... 12

            2.    Without equitable relief, the harm to ValveTech will continue ................ 13

            3.    An injunction will prevent further litigation over the ValveTech
                  Proprietary Information that remains in Aerojet's possession. ................. 14

            4.    Any perceived burden of tracking down ValveTech's Proprietary
                  Information within Aerojet's files can be alleviated through forensic
                  discovery. ................................................................................................ 15

V.    CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

CASES

*Broadcast Music, Inc. v. Buffalo Wing Joint & Pub, LLC*,
  431 F.Supp.3d 147 (W.D.N.Y. 2019) ................................................................................... 14

*City of S. Pasadena v. Dept. of Transportation*,
  35 Cal. Rptr. 2d 113 (Cal. App. 3d Dist. 1994) .................................................................. 11

*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*,
  176 Cal. App. 4th 697 (2009) .............................................................................................. 10

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)............................................................................................................. 11

*Granite Music Corp. v. Ctr. St. Smoke House, Inc.*,
  786 F. Supp. 2d 716 (W.D.N.Y. 2011) ................................................................................ 14

*Haas Automation, Inc. v. Denny*, No. 2:12–CV–04779 (CBM) (PLAx), 2014 WL
  2966989, at *9 (C.D. Cal. Jul. 1, 2014)) ............................................................................. 10

*Monster Energy Co. v. Vital Pharma., Inc.*,
  No. EDCV 18-1882 .......................................................................................................10, 11

*Nomadix, Inc. v. Guest-Tek Interactive Ent., Ltd.*,
  No. 2:19-CV-04980-AB-FFM, 2020 WL 1939826 (C.D. Cal. Apr. 22, 2020),
  *aff'd*, No. 20-55439, 2021 WL 4027807 (9th Cir. Sept. 3, 2021)......................................... 10

*Peabody Holding Co. v. Costain Grp. PLC*,
  813 F. Supp. 1402 (E.D. Mo. 1993)..................................................................................... 14

*Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*,  No. 14-CV-277S(F), 2016 WL
  2640351, at *2 (W.D.N.Y. May 10, 2016) .......................................................................... 15

*Shapiro v. San Diego City Council*,
  96 Cal. App. 4th 904 (2002) ................................................................................................ 11

*Sullivan By and Through Sullivan v. Vallejo City Unified Sch. Dist.*,
  731 F. Supp 947 (E.D. Cal. 1990)........................................................................................ 10

STATUTES

Bus. & Prof. Code, § 17535 ........................................................................................................ 11

Cal. Civ. Code § 3422..........................................................................................................10, 15

Plaintiff ValveTech, Inc. ("ValveTech") seeks entry of a permanent injunction against Defendant Aerojet Rocketdyne, Inc., ("Aerojet" or "Defendant").

## I.    INTRODUCTION

After a multi-week trial, the jury unanimously determined that Aerojet breached the 2011 and 2017 Nondisclosure Agreements.  *See* ECF No. 376 (Jury Verdict) at 2, 4.  The jury specifically found that Aerojet (1) disclosed or used, and (2) failed to return or promptly destroy ValveTech's proprietary information.  *Id.* at 2a, 2b, 4a, 4b.  It awarded ValveTech monetary damages for the breaches.  *Id.*  But those damages cannot make ValveTech whole, as ValveTech's information undisputedly remains within Aerojet's possession.  This is precisely why, during trial, the Court advised that it "may fashion equitable relief, at the appropriate juncture, if Aerojet is found to have retained proprietary information in violation of the nondisclosure agreements."  ECF No. 360.  That juncture has now come.

After prevailing at trial, ValveTech put Aerojet on notice to preserve ValveTech's information and maintain the status quo.  When Aerojet refused to comply, ValveTech brought a motion for preliminary injunction to maintain the status quo while this motion is decided, including preventing Aerojet from tampering with any of ValveTech's information in Aerojet's posession.  ECF No. 383.  It now follows up with its request for permanent equitable relief.  Specifically, ValveTech respectfully requests:

- An injunction preventing Aerojet from disclosing or using ValveTech Proprietary Information,[1] including where its Proprietary Information has been copied, referenced,

---

[1] During trial, the Court instructed the jury that the term "proprietary information" is "specifically defined" within the 2011 and 2017 NDAs and that the jury must apply the definition set forth therein.  *See* ECF No. 374 (Nov. 20, 2023 Trial Tr.) at 133:24-134:6; 143:22-144:3.  The NDAs define "Proprietary Information" as material that ValveTech "desires to protect against unrestricted disclosure and unauthorized use."  PTX-341; PTX-342.  As described in ValveTech's November 12, 2023 letter to the Court, this includes: ValveTech data packages; invoices (which includes ValveTech's pricing information); electronic correspondence with ValveTech; ValveTech drawings; ValveTech schematics; ValveTech parts lists; ValveTech material

or incorporated into electronic or hardcopy files/documents;

- An injunction enjoining the use ValveTech Proprietary Information and/or derivatives thereof for purposes of qualification and sale of Aerojet's engine;

- An order requiring Aerojet to return all ValveTech Proprietary Information to ValveTech, including where its Proprietary Information has been copied, referenced, or incorporated into electronic or hardcopy files/documents;

- An order requiring deletion of all ValveTech Proprietary Information shared with any outside entity, as well as the identification and certification of deletion, and an order that Aerojet exercise all contractual rights to have such information returned from that outside entity; and

- Forensic discovery into the locations of all ValveTech Proprietary Information within Aerojet's files and any third-party recipients of ValveTech Proprietary Information, and for Aerojet to bear all costs of such forensic discovery.

Each of these requests are reasonable and proportional here, where it is undisputed that

Aerojet still possesses ValveTech's Proprietary Information in breach of the 2011 and 2017 NDAs.

## II.    FACTUAL BACKGROUND

### A.    ValveTech invested years of manpower and tens of millions of dollars developing the OMAC isolation valve under strict NDA.

ValveTech devoted over 7,500 engineering hours and tens of millions of dollars to

developing its proprietary OMAC isolation valves.  ECF No. 345 (Nov. 7, 2023 Tr.) at 125:11-21;

ECF No. 368 (Nov. 9, 2023 Tr.) at 53:1-6, 55:3-23, 64:2-4.  This work was undertaken as a supplier

to Aerojet, which in turn provides engines to Boeing for the Starliner CST-100 spacecraft.

The aerospace industry is a high-sharing environment that only operates under strict

_____

documents; ValveTech analysis documents; ValveTech CAD drawings, files, including reproductions in whole or in part; ValveTech assembly documents and/or instructions for ValveTech propellant isolation valve and/or the OMAC program valve(s); ValveTech property provided to outside entities concerning Plaintiff's propellant isolation valve and/or the OMAC Program valve(s); ValveTech components and/or parts and/or valves; and test results concerning the ValveTech propellant isolation valve and/or the ValveTech OMAC program valve.  Ex. 1 (Nov. 12, 2023 letter to the Court regarding replevin).  A partial list of specific documents includes the trial exhibits identified in ValveTech's November 14, 2023 letter to the Court.  ECF No. 350 (Nov. 14, 2023 supplemental letter to the Court regarding replevin).

confidence. The parties accordingly entered two nondisclosure agreements guiderailing their relationship. The first non-disclosure agreement was entered on August 31, 2011. PTX-341 (the "2011 NDA").[2] The 2011 NDA has a five-year term with a ten-year protection period following the term's expiration. *Id.* In other words, the 2011 NDA's protection period is ongoing. As part of the 2011 NDA, Aerojet promised to protect "Proprietary Information" that ValveTech "desires to protect against unrestricted disclosure and unauthorized use." *Id.* The safeguarding provision forbids Aerojet from, amongst other things, disclosing, duplicating, or using ValveTech's Proprietary Information other than for the purposes of the 2011 NDA—*i.e.*, qualifying ValveTech's OMAC isolation valve:

> **Safeguarding** - A Party receiving Proprietary Information from the other agrees to treat such Proprietary Information as proprietary for the duration of the Protection Period, and will handle such Proprietary Information with the same degree of care, but no less than a reasonable degree of care, that it uses to handle its own proprietary information of like nature. **Such information shall not be disclosed, duplicated, or used in analysis, design, processes, production or otherwise, in whole or in part, other than for the purposes noted above or as otherwise contemplated by this Agreement**, and then only by those employees and agents of the Receiving Party who have a "need to know" and have been placed under a duty of confidentiality and limited use consistent with this Agreement. …

*Id.* (emphasis added).

Finally, the control provision requires Aerojet to return or promptly destroy ValveTech's Proprietary Information at ValveTech's request:

> **Control** - All Proprietary Information furnished hereunder (including copies or abstracts thereof) shell remain the property of the disclosing Party, and shall be returned to it or promptly destroyed by the receiving Party at the disclosing Party's request, except that the receiving Party may keep one copy in the files of its Internal Legal Department (or, if the receiving Party has no such department staffed by one or more attorneys, in the files of its outside attorneys) to be used solely for purposes of documenting compliance with the terms of this Agreement.

---

[2] It is ValveTech's understanding that the Court has copies of the trial exhibits, which are not re-enclosed here. ValveTech is happy to submit copies of the exhibits should the Court require and would do so under seal.

*Id.* Aerojet agreed to all of this.

The second non-disclosure agreement was entered on May 17, 2017. PTX-342 (the "2017 NDA"). The 2017 NDA has a ten-year term with a twenty-year protection period following the term's expiration. *Id.* Like the 2011 NDA, the 2017 NDA's protection period remains ongoing. In entering the 2017 NDA, Aerojet again agreed to safeguard ValveTech's Proprietary Information and promised to return or promptly destroy that Proprietary Information at ValveTech's request. *Id.*

### B. Aerojet used ValveTech's Proprietary Information to develop a competing valve.

The parties' relationship stopped short of qualifying ValveTech's OMAC isolation valves for use in Aerojet's engine on the Starliner. As it turns out, Aerojet covertly came up with a separate scheme: in violation of the NDAs, Aerojet engineers Al Little and Martin Bleck—each of whom had constant access to ValveTech's Proprietary Information—developed a competing OMAC isolation valve. *See, e.g.*, PTX 376 (Martin Bleck's February 2, 2021 deposition testimony) at 92:21-94:03. As Bleck confirmed, he and Little had access to ValveTech's OMAC isolation valve design in "2015, 2016, 2017, 2018, and so on." *Id.* That access was happening even as of Bleck's deposition in 2021. *Id.* This alone was a breach of both the 2011 and 2017 NDAs, which only allows independent development "by an employee of [Aerojet] who ***did not have access*** to [ValveTech's] information or materials derived therefrom[.]" *See, e.g.*, PTX 341 at 2.

While Aerojet was designing a derivate valve, it used ValveTech's valve for rigorous testing. ValveTech's design was used for Boeing's pad abort and hot fire tests, both of which it passed with flying colors. *See, e.g.,* ECF No. 371 (Nov. 15, 2023 Tr.) at 198:9-12, 203:22-25; ECF No. 372 (Nov. 16, 2023 Tr.) at 37:24-38:7, 42:15-44:1, 135:8-136:12. But when it came time

to qualify a valve for use in the Starliner engine, Aerojet swapped ValveTech's design for its spin-off. *See, e.g.*, PTX-008; PTX-013; PTX-048; PTX-375 (Little Dep. Tr.) at 162:21-163:1; PTX-376 (Bleck Dep. Tr.) at 112:10-112:15. ValveTech was kept in the dark. *See, e.g.*, ECF No. 369 (Nov. 13, 2023 Tr.) at 36:12-21.

In other words, although the plain language of the 2011 and 2017 NDAs prohibit Aerojet's use of ValveTech's Proprietary Information in the analysis, design, process or production, in whole or in part, for Aerojet's competing valve, that is precisely what Aerojet did. *See, e.g.*, PTX-375 (Little Dep. Tr.) at 258:05 - 258:11:

> "They provide us -- just like we provide analyses and results to Boeing and NASA for them to critique and review, so they supply those analyses to us - - ValveTech would supply those analyses to us to critique. **I doubt they anticipated that it would be used in comparing their valve with an alternative valve**, **but their nonperformance left us no choice**." (emphasis added).

### 1. Aerojet never had a license to ValveTech's Proprietary Information.

Aerojet never entered into a license with ValveTech for the right to use ValveTech's Proprietary Information. *See, e.g.,* ECF No. 345 (Nov. 7, 2023 Tr.) at 135:7-137:21; ECF No. 372 (Nov. 16, 2023 Tr.) at 97:10-19; *see also* PTX 341 (the NDA conveyed no license); PTX 342 (same). Nonetheless, Aerojet continued using and sending ValveTech's Proprietary Information to third parties. Aerojet also transfixed its own name and part number onto ValveTech's OMAC isolation valve. ECF No. 372 (Nov. 16, 2023 Tr.) at 28:24-29:7.

### 2. In breach of the NDAs, Aerojet failed to return or promptly destroy ValveTech's proprietary information.

After the parties' relationship soured, ValveTech sued Aerojet seeking the return of its Proprietary Information. ValveTech sought, amongst other remedies:

> Enjoining Defendant, as well as its officers, directors, owners, shareholders, independent contractors, subsidiaries, affiliates, or anyone acting in concert with Defendant or on Defendant's behalf, from using, disclosing, or otherwise exploiting ValveTech's Proprietary Information,

> including derivatives thereof, for any purpose and from using any
> imitation or derivation of ValveTech's Proprietary Information; and
> requiring Defendant to return to ValveTech or destroy all Proprietary
> Information that Defendant has retained to date relating in any way to the
> propellant isolation valve or to the OMAC Program;

ECF No. 106 (Second Amended Complaint), p. 22.

ValveTech initially obtained a temporary restraining order to prevent Aerojet from further disseminating, using, or otherwise altering its Proprietary Information. ECF No. 8 (order issuing a TRO). But as an alternative to the temporary restraining order, the parties ultimately agreed to a protective order that required Aerojet to provide ValveTech's Proprietary Information to a third-party escrow. ECF No. 19-1 (the 2017 "Protective Order") at § 8. The escrow account was designed to prevent Aerojet from accessing the information absent ValveTech's consent or a court order. *Id.* Furthermore, Aerojet was obliged to "request that its relevant engineers, officers, and employees that worked on analysis, integration, and testing of VTI valves on the CCiCap or CCtCap programs delete the files from their local computer hard disks and emails folders." *Id.*

Aerojet did not comply. As described above, Aerojet's engineers continued studying the ValveTech design long after it assured ValveTech that the Proprietary Information was secured in escrow. PTX 376 (Martin Bleck's February 2, 2021 deposition testimony) at 92:21-94:03 (confirming the access was ongoing even as of 2021). Documents produced by Aerojet during discovery reveal multiple file paths that still contain the same. *See, e.g.*, PTX 118 (listing file path "R:\NASA Exploration Systems\Boeing Commercial Crew Program\11000 CCiCap CDR NRE-7R\11100 Press & 11200 Prop System\Supplier information\Valvetech"); *see also, e.g.,* ECF No. 372 (Nov. 16, 2023 Trial Tr.) at 31:16-329 (discussing PTX 41 at slide 53); AERO-0082306[3]

---

[3] AERO-0082306 is an Aerojet-produced email thread that was subject to the Protective Order but not a trial exhibit. ValveTech has not attached AERO-0082306 because this is a publicly filed brief. However, ValveTech is happy to provide the Court with a copy at its request.

(email indicating ValveTech information for the OMAC valve is available on Defendant's servers at several filepaths, including: S:\NASA Exploration Systems\BCCP\3000 CCtCap\3 FS\Supplier Information\ValveTech).

During the trial, it also came to light that Aerojet cut open ValveTech's valve. ECF No. 344 (Nov. 6, 2023 Tr.) at 153:24-154:2 (Aerojet revealing during opening arguments that it cut open a ValveTech valve—"It's taken apart. It's in pieces."). It was then discovered that Aerojet invited its retained expert, David Crisalli—who was ***not*** under the protective order—to disassemble ValveTech's design, without asking ValveTech's permission. ECF No. 373 (Nov. 17, 2023 Tr.) at 100:4-7, 108:17-25. ValveTech promptly sought disclosure of what information was recorded from the valve(s) and identification of the photographs taken, along with their metadata. ECF No. 350 (Nov. 14, 2023 letter). As the Court acknowledged, the physical valve is a manifestation of the idea behind it. ECF No. 374 (Nov. 20, 2023 Tr.) at 3:6-8. Accordingly, the information derived from the teardown constitutes Proprietary Information.

### 3.   Aerojet's obstruction continued throughout trial.

The issue of Aerojet maintaining ValveTech's Proprietary Information outside of escrow persists today. Aerojet does not deny that it failed to return ValveTech's Proprietary Information, but repeatedly ***conceded*** that it possesses and/or gave it away. In an ironic twist, Aerojet argued that its improper behavior was so prolific, that it has now become nearly impossible to backtrack. *See, e.g.*:

- ECF No. 367 (Nov. 8, 2023 Tr.) at 7:15-23: "If we [Aerojet] incorporated something of [ValveTech's] into our document, that's not their property. They can ask that we delete that portion of the document… They can't get it back from us."

- ECF No. 369 (Nov. 13, 2023 Tr.) at 145:12-152:22: "Your Honor, my -- the defendant here is a large corporation. Um, there is no possibility of me ever signing a document that I can guaranty that in some drawer in some server somewhere on a backup tape in the warehouse that there's not some piece of information. I can't do that. I would

love to. It just is not possible. … We can't hand over everything that ever touched them. That's not possible. …[T]his is part of the difficulty with this case is their outline of their valve as it was incorporated into the pad abort test and the launch abort engine test included a wire frame model and its requirements and its flow and a bunch of other things because we needed to incorporate that into ours[.]"

During trial, the Court thus instructed Aerojet to identify everywhere on its servers likely to contain ValveTech's proprietary information.  ECF No. 369 (Nov. 13, 2023 Trial Tr.) at 152:8-22.  Shortly thereafter, Aerojet promised:

Defendant will review the contents [of location "S:\NASA Exploration Systems\BCCP\3000 CCtCap\3 FS\Supplier Information\ValveTech."] to determine whether any materials overlapped with the documents previously submitted to escrow, and will confirm, to the extent accurate, that none of those documents were found. Defendant will also discuss with ValveTech whether other locations should be similarly searched.

ECF No. 353 at 2.

But Aerojet never did so during trial.  It still has not done so today.

### 4. Permanent injunction was anticipated as a remedy for ValveTech's breach of contract claim, if ValveTech prevailed on the merits.

The Court further acknowledged this issue when it subsumed ValveTech's claim for replevin within its breach of contract claims.  ECF No. 373, (Nov. 17, 2023 Trial Tr.) at p. 185. (the permanent injunction is subsumed in the breach of contract matter).  In its text order, the Court held, in relevant part, as follows:

"Notwithstanding this disposition, ValveTech may still pursue compensatory damages and **equitable relief for the allegedly wrongful retention of its property**.  ValveTech alleges two distinct breaches of the nondisclosure agreements: first, Aerojet's alleged wrongful use of proprietary information, and second, Aerojet's alleged wrongful retention of proprietary information.  The Court will instruct the jury on both alleged breaches, and, should the jury find Aerojet liable, it may award compensatory damages for Aerojet's wrongful retention of ValveTech's proprietary information.  Furthermore, injunctive relief is available for breach of contract under California law. Therefore, **the Court may fashion equitable relief, at the appropriate juncture,**

8

**if Aerojet is found to have retained proprietary information in violation of the nondisclosure agreements**."

ECF No. 360 (emphasis added).

### 5. ValveTech prevailed at trial, but Aerojet will not return its proprietary information absent Court intervention.

At the close of trial, the jury unanimously found that Aerojet breached the two contracts with ValveTech. *See* ECF No. 376 (Jury Verdict) at 2, 4. That verdict included explicit findings that Aerojet both disclosed or used and failed to return or promptly destroy ValveTech's proprietary information. *Id.* at 2a, 2b, 4a, 4b. The Court entered judgment in favor of ValveTech on November 29, 2023. ECF No. 381.

ValveTech subsequently sent Aerojet a Written Notice of Legal Hold "demanding that Aerojet Rocketdyne, Inc., an L3Harris Technologies Company take immediate steps to preserve (and not alter or destroy) all documents and electronically stored information that may be related to the allegations set forth in the lawsuit." *See* ECF 383-3 (Legal Hold). ValveTech requested that Aerojet "confirm in writing [its] compliance with this litigation hold." *Id.* Simply put, after prevailing at trial, ValveTech put Aerojet on notice to preserve ValveTech's information so that the parties may begin a process of Aerojet returning ValveTech's information that is undisputedly still within Aerojet's possession.

Aerojet rejected ValveTech's reasonable request to preserve evidence and maintain the status quo. It stated that such preservation "seems improper" and failed to confirm that it would preserve evidence in this ongoing litigation. Aerojet stated that it required a specific list of documents that met a self-given definition before it took any action to preserve. *See* ECF No. 383-4 (Nov. 28, 2023 email from counsel for Defendant).

## III.    LEGAL STANDARDS

Because ValveTech "seeks a permanent injunction to enforce its meritorious California breach of contract claim, California law governs whether a permanent injunction should issue." *Nomadix, Inc. v. Guest-Tek Interactive Ent., Ltd.*, No. 2:19-CV-04980-AB-FFM, 2020 WL 1939826, at *1 (C.D. Cal. Apr. 22, 2020), *aff'd*, No. 20-55439, 2021 WL 4027807 (9th Cir. Sept. 3, 2021); *see also Sullivan By and Through Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp 947, 956 (E.D. Cal. 1990) ("Where federal courts are called upon to adjudicate a claim predicated on state law, under either its diversity or pendent claim jurisdiction, there appears to be no question that the ultimate issue of whether injunctive relief may issue must be decided under applicable state law.") (citing 7 Moore's Federal Practice, Pt. 2, ¶ 65.18[1]).

Under California law, a permanent injunction is equitable relief available to make a prevailing plaintiff whole.  *See DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 721 (2009) ("A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action...against a defendant and that equitable relief is appropriate.") (citations omitted).  The California statute specifically states that "a final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant [w]here pecuniary compensation would not afford adequate relief."  Cal. Civ. Code § 3422 (further stating that a final injunction may be granted, amongst other reasons, to prevent a multiplicity of judicial proceedings).

An injunction is warranted under California law where plaintiff has proven "(1) the elements of a cause of action involving the wrongful act sought to be enjoined and (2) the grounds for equitable relief, such as, inadequacy of the remedy at law."  *Monster Energy Co. v. Vital Pharma., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2023 WL 8168854, at *13 (N.D. Cal. Oct. 6, 2023) (citing *Haas Automation, Inc. v. Denny*, No. 2:12–CV–04779 (CBM) (PLAx), 2014 WL

2966989, at *9 (C.D. Cal. Jul. 1, 2014)); *see also City of S. Pasadena v. Dept. of Transportation*, 35 Cal. Rptr. 2d 113, 120 (Cal. App. 3d Dist. 1994) ("To qualify for a permanent injunction, the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined and (2) the grounds for equitable relief, such as, inadequacy of the remedy at law.") (citing 5 Witkin, Cal.Procedure (3d ed. 1985) Pleading, § 774, p. 218).[4]

The Court's decision to grant a permanent injunction rests within its "sound discretion." *See Shapiro v. San Diego City Council*, 96 Cal. App. 4th 904, 912 (2002); *see also* Bus. & Prof. Code, § 17535.

## IV. ARGUMENTS

### A. ValveTech has already proven the elements of breach of contract given the jury's verdict and judgment against Aerojet for breach of the 2011 and 2017 NDAs.

There is no question that ValveTech has proven all elements of the cause of action underlying its request for a permanent injunction. *See Monster Energy Co.*, 2023 WL 8168854, at *13. The jury already reached a verdict: Aerojet breached the 2011 NDA, and Aerojet breached the 2017 NDA. ECF No. 376. The Court subsequently entered judgment. ECF No. 381. The only remaining question is whether equitable relief is necessary to make ValveTech whole.

Here, where the breaches include that Aerojet **disclosed or used** and **failed to return or promptly destroy** ValveTech's Proprietary Information (ECF 376)—and those breaches still persist past judgment against Aerojet—a permanent injunction is absolutely necessary to protect ValveTech's rights and prevent duplicative proceedings.

---

[4] This differs from the federal law standard, which looks to four factors: (1) the plaintiff must suffer irreparable injury; (2) legal remedies, such as money damages, are inadequate; (3) an equitable remedy is warranted in light of the balance of hardships between the parties; and (4) a permanent injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Even if the federal standard applied, it would be readily met here. *See generally, e.g.*, ECF No. 383 (Mot. for Preliminary Injunction).

**B.    Monetary damages are an inadequate remedy that cannot address the return of ValveTech's Proprietary Information.**

The damages that the jury awarded for the past breaches by Aerojet do not compensate ValveTech for Aerojet's ongoing (and/or future) breaches, rendering equitable relief necessary to make ValveTech whole.  *See* ECF 376 (awarding ValveTech damages).  ValveTech's Proprietary Information is in Aerojet's files *to this day*.  In other words, Aerojet remains in breach of both the 2011 and 2017 NDAs.  *See* PTX 341 (requiring Aerojet to return or promptly destroy ValveTech's Proprietary Information at ValveTech's request); PTX 342 (same).  The remaining questions are where and in what form ValveTech's Proprietary Information exists in Aerojet's possession.

**1.    The Court has discretion to fashion equitable relief to address the return of ValveTech's Proprietary Information.**

As the Court appreciates, it "may fashion equitable relief, at the appropriate juncture, if Aerojet is found to have retained proprietary information in violation of the nondisclosure agreements."  ECF No. 360 (noting that dismissal of the replevin claim did not impede ValveTech's ability to obtain equitable relief for the wrongful retention of its property).

The jury's verdict included specific findings regarding Aerojet's breaches.  For both the 2011 NDA and the 2017 NDA, the jury determined by a preponderance of the evidence that (a) Aerojet "disclosed or used" ValveTech's proprietary information in violation of the nondisclosure agreement; and (b) Aerojet "failed to return or promptly destroy" ValveTech's proprietary information at ValveTech's request, in violation of the nondisclosure agreement.  ECF No. 376 at 2a, 2b, 4a, 4b.  Thus, Aerojet is found to have retained proprietary information in violation of the nondisclosure agreements.  This makes ValveTech's request for equitable relief ripe.

Equitable relief is not foreclosed by the award of damages.  The Court previously acknowledged this in noting that "ValveTech  may  still pursue compensatory damages *and* equitable relief for the allegedly wrongful retention of its property. …[S]hould the  jury  find

Aerojet liable, it may award compensatory damages for Aerojet's wrongful retention of ValveTech's proprietary information. *Furthermore*, injunctive relief is available for breach of contract under California law." ECF No. 360 (emphasis added). This makes sense: as discussed below, the damages do not address any *future* breaches by Aerojet.

### 2. Without equitable relief, the harm to ValveTech will continue.

ValveTech will be irreparably harmed absent an injunction because a monetary award does not address the fact that its Proprietary Information remains with Aerojet (and/or third parties to whom Aerojet sent its Proprietary Information), in breach of the 2011 and 2017 NDAs. By every indication, Aerojet will not voluntarily return or promptly delete ValveTech's Proprietary Information upon ValveTech's request, as the NDAs require. PTX 341; PTX 342.

First, as discussed above, Aerojet flouted the 2017 escrow agreement that was meant to protect ValveTech's Proprietary Information. ECF No. 19-1 (the 2017 "Protective Order") at § 8. Aerojet was obliged to "request that its relevant engineers, officers, and employees that worked on analysis, integration, and testing of VTI valves on the CCiCap or CCtCap programs delete the files from their local computer hard disks and emails folders." *Id.* But instead, Aerojet provided Martin Bleck and Al Little with unfettered access to ValveTech's OMAC isolation valve designs as they created a competing valve. PTX 376 (Martin Bleck's February 2, 2021 deposition testimony) at 92:21-94:03. That access appears to persist today. *See, e.g.,* ECF No. 372 (Nov. 16, 2023 Trial Tr.) at 31:16-329 (discussing Aerojet filepaths containing ValveTech Proprietary Information).

Even today, Aerojet refused to comply with ValveTech's simple and reasonable request that Aerojet preserve evidence until this case is closed. ValveTech sent Aerojet a Written Notice of Legal Hold "demanding that Aerojet Rocketdyne, Inc., an L3Harris Technologies Company take immediate steps to preserve (and not alter or destroy) all documents and electronically stored information that may be related to the allegations set forth in the lawsuit." *See* ECF 383-3 (Legal

Hold). ValveTech requested that Aerojet "confirm in writing [its] compliance with this litigation hold." *Id*. Aerojet refused. It stated that such preservation "seems improper" and failed to confirm that it would preserve evidence in this ongoing matter. Aerojet stated that it required a specific list of documents that met a self-given definition before it took any action to preserve. *See* ECF No. 383-4 (Nov. 28, 2023 email from counsel for Defendant).

Combined with Aerojet ignoring the Court's direction to identify all locations where ValveTech's proprietary information is stored (ECF No. 369 (Nov. 13, 2023 Trial Tr.) at 152:8-22), all signs indicate that Aerojet will not return or promptly destroy ValveTech's Proprietary Information without Court intervention. ValveTech devoted 7,500 engineering hours and tens of millions of dollars to developing its proprietary OMAC isolation valves. ECF No. 345 (Nov. 7, 2023 Tr.) at 125:11-21; ECF No. 368 (Nov. 9, 2023 Tr.) at 53:1-6, 55:3-23, 64:2-4. Small companies like ValveTech simply cannot survive if goliaths like Aerojet are allowed to abscond with their proprietary information in violation of the contracts to which they voluntarily agreed.

**3.  An injunction will prevent further litigation over the ValveTech Proprietary Information that remains in Aerojet's possession.**

The public interest will be served by the Court ordering Aerojet to abide by its contractual obligations. *See e.g., Peabody Holding Co. v. Costain Grp. PLC*, 813 F. Supp. 1402, 1422 (E.D. Mo. 1993) ("There is no public policy to uphold breaches of such a contract.")

An injunction would further serve the public interest by eradicating the need for future litigation that may otherwise arise if ValveTech's Proprietary Information remains within Aerojet's use or possession. *See, e.g., Broadcast Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F.Supp.3d 147, 157 (W.D.N.Y. 2019) (granting an injunction and noting that "requiring plaintiffs to commence litigation for each future violation would be an extreme hardship") (internal citations omitted); *see also, e.g., Granite Music Corp. v. Ctr. St. Smoke House, Inc.*, 786 F. Supp.

2d 716, 730 (W.D.N.Y. 2011) ("a permanent injunction should be preferable to Defendants than being repeatedly subject to litigation for future violations, and [] the public interest would not be disserved by enjoining Defendants from future conduct infringing on Plaintiffs'" rights.).  This reduction of multiple proceedings is one of the reasons the California statute specifically allows for the grant of an injunction.  Cal. Civ. Code § 3422.

> **4.** **Any perceived burden of tracking down ValveTech's Proprietary Information within Aerojet's files can be alleviated through forensic discovery.**

Aerojet contends that it disseminated ValveTech's Proprietary Information so widely—including through integration into other documents and materials—that it would be impossible to locate everything now.  *See, e.g.,* ECF No. 367 (Nov. 8, 2023 Tr.) at 7:15-23 ("They can't get it back from us."); ECF No. 369 (Nov. 13, 2023 Tr.) at 145:12-152:22 ("We can't hand over everything that ever touched them. That's not possible.").

To the extent Aerojet complains about burden of tracking everything down, use of a forensic specialist would assuage any such burdens or concerns.  For just one example, in *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, the defendant claimed to have reviewed all relevant computer files and produced all responsive documents and e-mails.  No. 14-CV-277S(F), 2016 WL 2640351, at *2 (W.D.N.Y. May 10, 2016).  A forensic electronic discovery expert, however, was able to locate a significant volume of additional emails.  *Id.*

Although Aerojet contends that its counsel can be "involved more heavily" this time to make sure ValveTech's Proprietary Information is tracked down in Aerojet's files, ValveTech respectfully posits that such representation is inadequate.  *See* ECF No. 373 (Nov. 17, 2023 Tr.) at 189:1-17.  What Aerojet did "in the past" cannot have been sufficient, given its breaches of the escrow agreement, including through Aerojet's engineers' continued access to ValveTech's Proprietary Information at least as of 2021.  PTX 376 (Martin Bleck's February 2, 2021 deposition

testimony) at 92:21-94:03. Furthermore, Aerojet apparently continues to make derivatives of ValveTech's Proprietary Information, including to the extent it is recording information from its destruction of ValveTech's valve, which is a "manifestation of the idea behind it." *See* ECF No. 344 (Nov. 6, 2023 Tr.) at 153:24-154:2 (Aerojet revealing during opening arguments that it cut open a ValveTech valve); ECF No. 374 (Nov. 20, 2023 Tr.) at 3:6-8. Aerojet's counsel also cannot necessarily be involved in the search for and return/destruction of ValveTech Proprietary Information in the possession of third-party recipients. To the extent Aerojet sent ValveTech's Proprietary Information or derivatives thereof to third parties, a forensic investigation would be proper (in addition to Aerojet exercising all rights to request return of ValveTech's Proprietary Information from any third party).

Aerojet impeded ValveTech's investigation at every step. Given its past lack of good faith, having an independent forensic specialist spearheading the search can assure ValveTech, Aerojet, and the Court that the Proprietary Information is located correctly and completely. This will effectuate enforcement of any equitable relief, and further the goal of avoiding future litigation. Aerojet should also be required to bear the costs for such forensic discovery, especially in light of its breach of the escrow agreement and the jury's verdict that it breached the 2011 and 2017 NDAs.

Finally, as explained in ValveTech's Motion for Preliminary Injunction, Aerojet's conduct means providing a simple list of documents to return is not an option here. *See* ECF 383. ValveTech's proprietary information was sent to others and copied into other files on Aerojet's storage system. *See* ECF No. 368 (Nov. 9, 2023 Trial Tr.) at p. 187 (the Court stating, "I know this is a lot more complicated than [Aerojet's counsel] are making it because there's claims that things are in other servers and sent to other parties. There's copies of things that need to be returned, so that's going to be a full hearing I think if we ever get to that point"). Aerojet has sole

access to its internal storage system and promised ValveTech information concerning where its proprietary information was/is stored and who had/has access to it. *See id.* at p. 187 (Aerojet's counsel stating, "My proffer was I'm going to try, as I said before, to identify before we have that hearing, I think this is a reasonable request, where things likely would have been. I will talk with the people who would have had access to them and I will report to Your Honor in the best I can do where those documents are likely to have gone and confirm whether there's something there or not and if there's something there that we deleted it."). To date, Aerojet has provided no such information.

ValveTech's requests are all reasonable and proportional. ValveTech is simply asking that Aerojet comply with the 2011 NDA and the 2017 NDA *that Aerojet agreed to* and return ValveTech's property to its rightful owner.

## V. CONCLUSION

For the foregoing reasons, ValveTech respectfully requests permanent equitable relief be entered, including:

- An injunction preventing Aerojet from disclosing or using ValveTech Proprietary Information, including where its Proprietary Information has been copied, referenced, or incorporated into electronic or hardcopy files/documents;

- An injunction enjoining the use ValveTech Proprietary Information and/or derivatives thereof for purposes of qualification and sale of Aerojet's engine;

- An order requiring Aerojet to return all ValveTech Proprietary Information to ValveTech, including where its Proprietary Information has been copied, referenced, or incorporated into electronic or hardcopy files/documents;

- An order requiring deletion of all ValveTech Proprietary Information shared with any outside entity, as well as the identification and certification of deletion, and an order that Aerojet exercise all contractual rights to have such information returned from that outside entity;

- Forensic discovery into the locations of all ValveTech Proprietary Information within Aerojet's files and any third-party recipients of ValveTech Proprietary Information,

and for Aerojet to bear all costs of such forensic discovery; and

- Any and all further relief as may be just and proper.

December 27, 2023

By: */s/ John D. Esterhay*
Laurie A. Vahey
Vahey Law Offices PLLC
144 Exchange Blvd., Suite 400
Rochester, New York 14614
Tel: 585-262-5130
lvahey@vaheylaw.com

Kevin J. Patariu
John D. Esterhay
Miguel J. Bombach
Abigail A. Gardner
Perkins Coie LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
Telephone: (858) 720-5700
Fax: (858)720-5799
KPatariu@perkinscoie.com
JEsterhay@perkinscoie.com
MBombach@perkinscoie.com
AGardner@perkinscoie.com

Attorneys for Plaintiff
VALVETECH, INC.