UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────

VALVETECH, INC.,

                                              Plaintiff,

                                                                                         Case # 17-CV-6788-FPG

v.

                                                                                         DECISION AND ORDER

AEROJET ROCKETDYNE, INC.,

                                              Defendant.
─────────────────────────────────────

## INTRODUCTION

In November 2023, the jury returned a verdict that was partially favorable to Plaintiff ValveTech, Inc. ECF No. 376. The jury found that Defendant Aerojet Rocketdyne, Inc. had breached the 2011 and 2017 nondisclosure agreements, *id.* at 1-3, but had not misappropriated ValveTech's trade secrets. *Id.* at 3. The jury assessed compensatory damages in the amount of $850,000. *Id.* at 4. Judgment was entered on November 29, 2023. ECF No. 381. Now before the Court are four matters: (1) ValveTech's motion for a permanent injunction (ECF No. 387); (2) ValveTech's motion for prejudgment interest (ECF No. 386); (3) ValveTech's bill of costs (ECF No. 389); and (4) ValveTech's motion for a preliminary injunction (ECF No. 383). The Court resolves these motions below.

## DISCUSSION

### I. Motion for Permanent Injunction (ECF No. 387)

In its motion for a permanent injunction, ValveTech requests that Aerojet (and various related individuals) be:

1

- "prevented from disclosing or using ValveTech Proprietary Information, including where its Proprietary Information has been copied, referenced, or incorporated into electronic or hardcopy files/documents";
- "prevented from using ValveTech Proprietary Information and/or derivatives thereof for purposes of qualification and sale of Aerojet's engine";
- "required to return all ValveTech Proprietary Information to ValveTech, including where its Proprietary Information has been copied, referenced, or incorporated into electronic or hardcopy files/documents";
- "required to delete of all ValveTech Proprietary Information shared with any outside entity, and provide identification and certification of deletion";
- "required to exercise all contractual rights to seek return of any ValveTech Proprietary Information disclosed to third parties."

ECF No. 387-4 at 2.  ValveTech also requests that Aerojet be ordered:

- "[to] identify and collect any property or information of ValveTech from all servers, email servers, computers, hard drives, devices, document management systems, files, and storage media (including, without limitation, USB drives, network-based storage, and cloud-based storage) in the possession, custody, or control of Aerojet, including, without limitation, any property or information in the possession, custody, or control of any employee of Aerojet who worked on the OMAC isolation valve. As part of such identification and collection, Aerojet shall identify all Enjoined Persons who at any time had access to information from ValveTech"; and
- to conduct forensic discovery, at its own cost, of the "locations of all ValveTech Proprietary Information within Aerojet's files and any third-party recipients of ValveTech Proprietary Information."

*Id.* at 2-3.  For the reasons discussed below, ValveTech's motion is denied.

Under California law,[1] a permanent injunction may not be granted to "prevent the breach of a contract the performance of which would not be specifically enforced." Cal. Civ. Code § 3423(e).  "To obtain specific performance after a breach of contract [under California law], a plaintiff must generally show: (1) [t]he inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality

---

[1] The parties debate whether California law or federal law applies to the determination of whether injunctive relief is appropriate.  ECF No. 387-1 at 13-14; ECF No. 395 at 11-12.  The dispute is immaterial because both standards require a showing of irreparable harm, which, for the reasons stated below, is absent in this case.  *See Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006); *Grail Semiconductor, Inc. v. Mitsubishi Elec. & Elecs. USA, Inc.*, 170 Cal. Rptr. 3d 581, 592-93 (Ct. App. 2014).

2

of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract." *Bishay v. Icon Aircraft, Inc.*, No. 19-CV-178, 2022 WL 378837, at *3 (E.D. Cal. Feb. 8, 2022). The inadequacy of legal remedy is also known as irreparable harm—that is, "wrongs which occasion damages estimable only by conjecture and not by any accurate standard." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 97 Cal. Rptr. 3d 856, 876 (Ct. App. 2009). "Irreparable harm may be established where there is the fact of an injury, such as that arising from a breach of contract, but where there is an inability to ascertain the amount of damage." *Id.* Under California law, as under federal law, the Court acts as the "proper factfinder," *Hoopes v. Dolan*, 85 Cal. Rptr. 3d 337, 344 (Ct. App. 2008); *Heyman v. Kline*, 456 F.2d 123, 130 (2d Cir. 1972) , and the decision to grant or deny a permanent injunction "rests within the [its] sound discretion."[2] *Robin Singh Educ. Servs., Inc. v. Blueprint Test Preparation, LLC*, No. B204775, 2013 WL 240273, at *44 (Cal. Ct. App. Jan. 23, 2013) (unpublished op.); *Alpha Capital Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 338 (S.D.N.Y. 2020).

ValveTech has not demonstrated irreparable harm justifying permanent injunctive relief. To the extent ValveTech is alleging that it is or will be irreparably harmed by Aerojet's continued use, retention, and/or disclosure of its alleged proprietary information in connection with the Starliner program, the Court agrees with Aerojet that ValveTech has failed to establish that such harm is irreparable. *See* ECF No. 395 at 15-17. Through its experts, ValveTech was able to proffer

---

[2] It is true that "a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict." *Rocky Mtn. Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1240 (10th Cir. 2010); *see also Hoopes*, 85 Cal. Rptr. 3d at 345-46 (same under California law). But "[i]t is well established that a general jury verdict can give rise to collateral estoppel only if it is clear that the jury necessarily decided a particular issue in the course of reaching its verdict." *United Access Techs., LLC v. Centurytel Broadband Servs. LLC*, 778 F.3d 1327, 1331 (Fed. Cir. 2015). Where, as here, "there are several possible grounds on which a jury could have based its general verdict and the record does not make clear which ground the jury relied on, collateral estoppel does not attach to any of the possible theories." *Id.* Regardless, it is unnecessary for the Court to undertake exhaustive factfinding given the manner in which it resolves ValveTech's motion.

at trial a robust, detailed theory of the past *and* future damages it sustained or will sustain—and the unjust benefits Aerojet obtained or will obtain—as a result of Aerojet's use, disclosure, and/or retention of its proprietary information in connection with the Starliner program. *See generally* ECF No. 192-39. Indeed, ValveTech was able to calculate damages for the next sixty years of Aerojet's participation in the Starliner program. *See, e.g.*, *id.* at 45. In these circumstances, where the harm in question is the loss of a single project whose present and future value can be quantified, the harm is not fairly categorized as irreparable. *See, e.g.*, *Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 678 (9th Cir. 2011) (summary order) (concluding that plaintiff had not demonstrated irreparable harm where expert testimony established that plaintiff's damages "in the form of lost sales or lost customers could be calculated through the use of commonly-used, standard economic analyses"); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (no irreparable harm "[w]here the loss of a product with a sales record will not affect other aspects of a business," since "a plaintiff can generally prove damages on a basis other than speculation"); *True Organic Prods., Inc. v. California Organic Fertilizers, Inc.*, No. 18-CV-1278, 2019 WL 1023888, at *6 (E.D. Cal. Mar. 4, 2019) (collecting cases).

For the same reason, ValveTech has not shown irreparable harm based on the fact that Aerojet can now sell its "derivative valves" in connection with "any number of additional projects" without "compensating ValveTech." ECF No. 397 at 7. ValveTech's expert estimated that Aerojet avoided "10 to 16 months" in development time by relying on ValveTech's proprietary information to develop its valve. ECF No. 201-15 at 239. Since ValveTech was able to proffer a damages theory based on Aerojet's "avoided development costs," ECF No. 192-39 at 39-40, the damages caused by any allegedly unfair head start that Aerojet obtained through its reliance on ValveTech's proprietary information are ascertainable and, thus, not irreparable. Moreover, at this

point—years after the development of Aerojet's valve—an injunction would be inappropriate to remedy that particular injury.[3] *See, e.g.*, *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1266 (3d Cir. 1985) (discussing "lead time" injunctions, which last "only so long as is necessary to negate the advantage the misappropriator would otherwise obtain by foregoing independent development").

More broadly, ValveTech contends that injunctive relief is warranted because it simply cannot know how Aerojet "is using (or will use) its Proprietary Information [] in the future." ECF No. 397 at 8. That bare concern cannot justify injunctive relief. *See Connerly v. Schwarzenegger*, 53 Cal. Rptr. 3d 203, 212 (Ct. App. 2007) ("[I]njunctions cannot be predicated on the proponent's fear of something that may happen in the future."). The factual record establishes that, to the extent Aerojet has used, disclosed, or retained any of ValveTech's proprietary information in violation of the NDAs, it did so (and continues to do so) in service of its contractual obligations to Boeing and NASA for the Starliner program, however wrongly in ValveTech's view. Even assuming that those activities have violated and will violate the NDAs in a manner causing cognizable injuries to ValveTech, past and future breaches related to the Starliner program are adequately compensated through money damages, as stated above.

ValveTech's residual fear that, separate and apart from the Starliner program, Aerojet might take other wrongful actions in relation to its proprietary information is speculative. In its

---

[3] That said, there is a distinction between Aerojet's alleged *reliance* on ValveTech's proprietary information to develop its own valve, and Aerojet's alleged *incorporation* of ValveTech proprietary technology into its own valve. The former, as stated above, is not the appropriate subject of injunctive relief. The latter might be: in that scenario, the sale of Aerojet's valve would, in effect, cause the disclosure of ValveTech's proprietary information. *Cf. Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009) (noting the distinction between the use of a trade secret and its disclosure). On this issue, the Court will simply say that, based on the testimony of Martin Bleck and Alan Minick, the Court is not persuaded that Aerojet's valves *incorporate* ValveTech's proprietary information. Therefore, the sale of Aerojet valves would not cause the dissemination of ValveTech proprietary information, and no injunction is necessary to alleviate that risk.

briefing, ValveTech cites no evidence to support that notion.[4] *See generally* ECF Nos. 387-1, 397. Without persuasive evidence that Aerojet has used or will use ValveTech's proprietary information outside the Starliner program, the Court declines to issue permanent injunctive relief. *Cf. Faiveley*, 559 F.3d at 118-19 ("Where a misappropriator seeks only to use [trade] secrets—without further dissemination or irreparable impairment of value—in pursuit of profit, no [presumption of irreparable harm] is warranted because an award of damages will often provide a complete remedy for such an injury. Indeed, once a trade secret is misappropriated, the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge.").

Finally, ValveTech contends that a permanent injunction is warranted to avoid future litigation. ECF No. 387-1 at 17-18. California law provides that a permanent injunction may be warranted for breach of contract "[w]here the restraint is necessary to prevent a multiplicity of judicial proceedings." Cal. Civ. Code § 3422(3). This argument necessarily assumes that Aerojet will use or disclose proprietary information outside of the Starliner program in the future. Because that assumption is not warranted, injunctive relief is not appropriate on that basis.

Accordingly, for the reasons stated herein, the Court concludes that ValveTech is not entitled to a permanent injunction. Its motion is denied.

## II. Motion for Prejudgment Interest (ECF No. 386)

ValveTech requests that the judgment be modified to include prejudgment interest, pursuant to California Civil Code § 3287(b).[5] ECF No. 386. Aerojet opposes the motion. Having

---

[4] The only conduct that ValveTech identifies to support its fear of future harm unrelated to the Starliner program is Aerojet's allegedly wrongful litigation conduct. *See* ECF No. 387-1 at 4, 8-11, 12, 16-17; ECF No. 397 at 4, 11-12. The Court does not find persuasive the link that ValveTech attempts to draw between Aerojet's litigation conduct and its future behavior outside the litigation. The acrimony and incivility displayed in this matter by both sides does not, in the Court's view, supply a plausible basis to forecast either company's future business decisions.

[5] ValveTech also invokes Section 3287(a), which grants prejudgment interest to a litigant "who is entitled to recover damages certain, or capable of being made certain by calculation." Cal. Civ. Code § 3287(a). As the Second Circuit

considered the parties' arguments, the Court denies ValveTech's motion. The parties agree that California law governs. *See* ECF No. 386-1 at 2; ECF No. 394 at 7. In California, "interest traditionally has been denied on unliquidated claims because of the general equitable principle that a person who does not know what sum is owed cannot be in default for failure to pay." *Chesapeake Indus., Inc. v. Togova Enters., Inc.*, 197 Cal. Rptr. 348, 351 (Ct. App. 1983). "Thus no prejudgment penalty is assessed against a litigant for failing to pay a sum which is unascertainable prior to judgment." *Id.*

California Civil Code § 3287(b) "create[s] a limited exception to [that] prevailing general rule." *Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch. Dist.*, 108 Cal. Rptr. 2d 715, 718 (Ct. App. 2001). It reads: "Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed." Cal. Civ. Code § 3287(b). In other words, "[a]n award of prejudgment interest is not automatic" under Section 3287(b). *Clovis*, 108 Cal. Rptr. 2d at 718; *Snooks v. SRS Techs.*, 134 F.3d 379 (9th Cir. 1998) (table op.) ("Under subsection (b), a court's award of prejudgment interest is discretionary where the damages are unliquidated at the time the right to such damages vested."). "By allowing an award of prejudgment interest, but only for a limited time period and only if the trial court finds it reasonable in light of the factual circumstances of a particular case, [Section 3287(b)] seeks to balance the concern for fairness to

---

has explained, "Section 3287(a) applies where the dispute is over liability rather than the amount of damages." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 148 (2d Cir. 2008). Subsection (a) "does not authorize prejudgment interest where the amount of damage . . . depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor." *Wisper Corp. v. Cal. Commerce Bank*, 57 Cal. Rptr. 2d 141, 145 (Ct. App. 1996) (internal quotation marks omitted). Because ValveTech's damages depended on the resolution of conflicting evidence, it is not entitled to prejudgment interest under Section 3287(a). *Accord Fresno Rock Taco, LLC v. Nat'l Sur. Ins. Corp.*, No. 11-CV-845, 2015 WL 135720, at *26 (E.D. Cal. Jan. 9, 2015) (where lost profits were "a subject of dispute among the parties' experts," prejudgment interest under Section 3287(a) did "not apply").

7

the debtor against the concern for full compensation to the wronged party." *Clovis*, 108 Cal. Rptr. 2d at 718.

"Courts may consider a variety of factors in determining an award of prejudgment interest under Section 3287(b), including (1) whether the party seeking interest was at fault for any delay in resolution of the case; (2) whether interest penalizes the defendant for litigating a bona fide dispute; and (3) whether the defendant refused a definite demand for settlement at the outset." *Fresno Rock*, 2015 WL 135720, at *27.

After considering these factors, the Court declines to award prejudgment interest to ValveTech. With respect to the first factor, and contrary to ValveTech's argument, Aerojet is not solely at fault for any delays in this case. *See* ECF No. 386-1 at 5-6; ECF No. 396 at 6. As the Court has observed repeatedly, *both* sides have engaged in uncivil behavior as well as extended and sometimes unnecessary motion practice. That mutual acrimony existed throughout this litigation as well as at the time the parties' business relationship originally deteriorated. ValveTech's attempt to cast Aerojet as the only litigant interested in engaging in a "scorched-earth war" is unpersuasive. ECF No. 396 at 6; *see, e.g.*, ECF No. 367 at 54-56 (testimony of Erin Faville) (agreeing that things became "a bit personal" on both sides by April 2017). As to the third factor, while both parties allude to settlement offers and negotiations, *see* ECF No. 386-1 at 6-8; ECF No. 394 at 17; ECF No. 396 at 10-11, neither side provides evidence that establishes a comprehensive picture of the settlement history of this matter. The Court does not find the first or third factors particularly weighty under the circumstances.

By contrast, the second factor weighs decisively in Aerojet's favor. This case involved bitter, hotly contested disputes over liability and damages. ValveTech sought tens of millions of dollars in damages on multiple claims for liability, *see, e.g.*, ECF No. 264-3 at 2-3, which were

premised on disputed understandings of terms like "proprietary information" and "trade secrets" as applied in the context of the highly complex areas of aerospace manufacturing and government contracting. Throughout this litigation, Aerojet succeeded in paring down the viable claims and damages, including ValveTech's largest category of damages—"avoided penalties" of between $31 million and $50 million. *See, e.g.*, *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, No. 17-CV-6788, 2022 WL 4562352, at *3-4 (W.D.N.Y. Sept. 29, 2022) (dismissing claims premised on unpled agreements); ECF No. 334 at 5-12. At trial, Aerojet prevailed in significant respects when the jury found that (1) it had not misappropriated any of ValveTech's alleged trade secrets and (2) ValveTech was entitled to only $850,000 in compensatory damages on the breach-of-contract claims, far less than what ValveTech requested. *See* ECF No. 376.

Given the contested nature of ValveTech's claims and damages, as well as the results of the litigation, Aerojet cannot be faulted for litigating this matter to verdict, even though it succeeded only in part. To award prejudgment interest under these circumstances "would unfairly penalize [Aerojet] for litigating a bona fide dispute." *Workplace Techs. Research, Inc. v. Project Mgmt. Inst., Inc.*, 664 F. Supp. 3d 1142, 1157 (S.D. Cal. 2023); *see also Forouzan v. BMW of N. Am., LLC*, No. 17-CV-3875, 2019 WL 856395, at *9 (C.D. Cal. Jan. 11, 2019) (denying prejudgement interest where "the parties litigated the case to verdict in a trial involving multiple legitimately contested issues"). For these reasons, the Court concludes that an award of prejudgment interest is unwarranted under Section 3287(b), and therefore ValveTech's motion is denied.

### III. Bill of Costs (ECF No. 389)

ValveTech has filed a bill of costs in the amount of $234,330.70. ECF No. 389 at 1. In opposition, Aerojet argues that ValveTech is not entitled to costs in light of the mixed verdict. ECF No. 391 at 2. The Court agrees.

Under Rule 54(d), "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "The decision to award costs pursuant to Rule 54(d)(1) . . . rests within the sound discretion of the district court." *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 100 (2d Cir. 2006). Given the number of claims on which Aerojet prevailed during this litigation, and the mixed jury verdict at trial, the Court declines to award costs to ValveTech. *Accord ARP Films, Inc. v. Marvel Ent. Grp., Inc.*, 952 F.2d 643, 651 (2d Cir. 1991); *JA Apparel Corp. v. Abboud*, No. 07-CV-7787, 2010 WL 148809, at *4 (S.D.N.Y. Apr. 13, 2010) (collecting cases). The parties shall bear their own costs.

## CONCLUSION

For the reasons discussed above, ValveTech's motions for a permanent injunction (ECF No. 387), and for prejudgment interest (ECF No. 386), are DENIED. The Clerk of Court shall not tax any of the costs listed in ECF No. 389. ValveTech's motion for a preliminary injunction (ECF No. 383) is DENIED AS MOOT. The Clerk of Court shall amend the final judgment to reflect that no injunctive relief, costs, or prejudgment interest is awarded to ValveTech. Because these proceedings are now complete, the Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated: May 6, 2024
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York